1

2          **IN THE UNITED STATES DISTRICT COURT**

3          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

4

5  KAREN CRANE-MCNAB, LLC, et al.,              CASE NO. CV F 08-1218 LJO SMS

6              Plaintiffs,                       **ORDER ON DEFENDANT'S SUMMARY JUDGMENT MOTION** (Doc. 83)

7

8  COUNTY OF MERCED,              vs.

9              Defendant.

10 _____/

11                          **INTRODUCTION**

12        Plaintiffs[1] initiated this action against defendant County of Merced ("County"), asserting federal

13 and state law causes of action based on the following groups of allegations: (1) County's landfill has

14 released, and continues to release, hazardous chemicals onto the Plaintiffs' adjacent property; (2)

15 County's operation of the landfill has caused harm to Plaintiffs' properties in a number of ways; and (3)

16 County's operation of the Edendale Creek and Canal Creek waterways has left, and continues to leave,

17 garbage and debris on Plaintiffs' property.  County moves for summary judgment in its favor , pursuant

18 to Fed. R. Civ. P. 56, on all of Plaintiffs ten causes of action.  Plaintiffs oppose the motion, arguing that

19 questions of fact remain on all causes of action.  For the following reasons, this Court GRANTS in part

20 and DENIES in part County's motion.

21

22                          **BACKGROUND**

23        Plaintiffs initiated this action on June 26, 2008, in the State of California, County of Merced

24 Superior Court.  Plaintiffs proceed on their third amended complaint ("TAC"), as amended by this

25 Court's Order on Defendants' Partial Motion to Dismiss TAC (Doc. 53), to assert the following ten

26 causes of action against County:

27 _____

28        [1] Plaintiffs are Karen Crane-McNab, LLC, Bert Crane Orchards, LP, Mary Crane Couchman Trust, and Mary Crane Couchman Family Partnership, LP.

                                    1

1. Inverse Condemnation under U.S. Constitution, Fifth Amendment and California Constitution, Art. 1, sec. 19;
2. Trespass;
3. Nuisance;
4. Fraud and Decide by Concealment and Suppression of Fact;
5. Negligence;
6. Negligence–Failure to Warn;
7. Due Process Clause of the Fourteen Amendment, U.S. Constitution and 42 U.S.C. §1983
8. Strict Liability;
9. Due Process Clause of the California Constitution, Art. 1, sec. 7; and
10. Declaratory Relief.

Plaintiffs' allegations relate to the alleged damage to their properties located in two areas: (1) near a landfill located at 6040 N. Highway 59 in Merced County, California ("Highway 59 Landfill" or "Landfill"); and (2) near and along Castle Dam, Canal Creek and Edendale Creek. The Court considers these allegations, and the evidence regarding those allegations, separately below.

**Highway 59 Landfill Allegations**

Plaintiffs own real property located  within one-half mile of, and bordering, the Highway 59 Landfill.   The properties owned by Plaintiffs in the area are more particularly described as:

a. Lot 1, APN: 052-150-013
b. Lot 2, APN: 052-150-012
c. Lot 3, APN: 052-150-010
d. Lot 17, APN: 052-150-009
e. Lot 18, APN: 052-150-011
f. Lot 59, APN: 052-070-013
g. Lot 60, APN: 052-070-011

Plaintiffs do not own the lots collectively or jointly.  Rather, each lot is owned wholly by one plaintiff.

Plaintiffs allege that County owns and operates the Highway 59 Landfill, and assert claims based on County's allegedly negligent operation of, and efforts to expand, the Landfill.  Plaintiffs allege that through the operation of the Highway 59 Landfill, County has discharged pollutants into the soil, water, and air that caused property damage, extreme and imminent peril, injury and fright to Plaintiffs.  Plaintiffs assert that County deliberately and fraudulently releases volatile organic compounds ("VOCs"), including, but not limited to dichlorodifluoromethane, trachloroethane, trichlorofluoromethane, benzene, ethylbenzene, toluene, vinyl chloride, zylenes, and MTBE.   Plaintiffs contend that the wind carries debris, garbage, and rubbish from the Landfill onto Plaintiffs' property, causing a continuous source of odor and windblown refuse.  Plaintiffs aver that the County has altered the natural drainage patterns and re-directed surface waters.  In addition, Plaintiffs allege that County's agents and employees enter onto

1  Plaintiffs' property from the Landfill, without Plaintiffs' permission or authorization but with County's

2  full knowledge and consent.  The Court addresses the evidence related to each factual allegation

3  challenged in its argument below.

4  **Edendale and Canal Creek Allegations**

5  The Edendale and Canal Creeks run through Plaintiffs' properties.  Plaintiffs claim that through

6  negligent creek maintenance, County placed on the Plaintiffs' lands numerous piles of debris, dead-fall,

7  and garbage without authorization and despite Plaintiffs' repeated requests to discontinue the practice.

8  Plaintiffs contend that the debris caused excessive amounts of flooding and water retention and killed

9  portions of Plaintiffs' almond orchards.  Plaintiffs assert that the County refuses to maintain adequate

10 security measures which has caused third parties to enter Plaintiffs' property from the waterway.

11 **Procedural History and Summary of Arguments**

12 Plaintiffs proceed on their TAC, which was amended by this Court's March 24, 2009.  The

13 parties have raised several discovery disputes with the Court, resulting in some sanctions granted by the

14 United States Magistrate Judge on September 3, 2010.[2]

15 On September 7, 2010, County moved for summary judgment on all of Plaintiffs' claims.

16 County argues that Plaintiffs' have no evidence of contamination of their land near the Highway 59

17 Landfill and failed to demonstrate damages to the land.  County further argues that it does not own the

18 Landfill and is the wrong defendant in this action.  County contends that only one plaintiff has standing

19 to assert the claims, and even that plaintiff has failed to establish any element of her claims.  County

20 contends that there is no evidence of negligence or harm.  County characterizes the TAC as a "work of

21 fiction."   As to the Edendale and Canal Creek allegations, County argues that Plaintiffs were

22 compensated for any alleged harm in a prior condemnation action between Plaintiffs' predecessor

23 landowners and the United States.

24 On September 29, 2010, Plaintiffs opposed the instant motion.  Plaintiffs conceded some claims

25 and some factual allegations.  Plaintiffs oppose the majority of County's arguments, however, arguing

26

27  [2]The magistrate judge ruled from the bench and directed the parties to file a joint order memorializing her sanctions

28  ruling. Five weeks later, the parties are still unable to agree on the clear language of her ruling. This Court adopts the hearing transcript (Doc. 82) as the sanctions order of the Court.

1   that material questions of fact exists as to whether the Landfill has contaminated the soil of Plaintiffs'

2   properties and whether trash and debris are harming their land near the Landfill and the Edendale and

3   Canal Creeks.  Plaintiffs objected to several of County's exhibits attached to support this motion.

4        On October 6, 2010, County replied to Plaintiffs' opposition.  County contends that Plaintiffs

5   attempt to create issues of fact with sham declarations and previously undisclosed evidence.  County

6   continues to challenge Plaintiffs' allegations of soil contamination, trash, negligence, and constitutional

7   violations.  County maintains that Plaintiffs have failed to demonstrate any damages for their claims.

8        Having considered the parties' arguments and exhibits attached thereto, this Court found this

9   motion suitable for a decision without a hearing.  Accordingly, this Court vacated the October 13, 2010

10  hearing pursuant to Local Rule 230(g) and issues the following order.

11  <center>**STANDARD OF REVIEW**</center>

12       On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to

13  any material fact."  Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

14  (1970).  A party seeking summary judgment/adjudication bears the initial burden of establishing the

15  absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

16  moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential

17  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make

18  a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and

19  on which the non-moving party bears the burden of proof at trial.  *Id.* at 322.  "The judgment sought

20  should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits

21  show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

22  as a matter of law." Fed. R. Civ. P. 56(c).  "If the party moving for summary judgment meets its initial

23  burden of identifying for the court those portions of the material on file that it believes demonstrates the

24  absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party

25  must set forth "specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv., Inc. v.*

26  *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

27       To establish the existence of a factual dispute, the opposing party need not establish a material

28  issue of fact conclusively in its favor, but "must do more than simply show that there is some

<center>4</center>

metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co*., 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631.  The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial."  "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

With these standards in mind, the Court turns to the parties' arguments.

### DISCUSSION

### Conceded Claims

In opposition to the summary judgment motion, Plaintiffs dismiss the fourth cause of action for fraud and deceit by suppression of fact, "in light of new information learned during the discovery process."  In addition, Plaintiffs dismiss their ninth cause of action for violation of the Due Process Clause of the California Constitution "in light of the Court's prior rulings."  Accordingly, Plaintiffs' fourth and ninth causes of action are dismissed.

### Edendale and Canal Creek Allegations Related to Flooding

Some of Plaintiffs' Edendale and Canal Creek claims stem from allegations related to a 2006 flood that allegedly destroyed an orchard that was planted on one of the Plaintiffs' land.  In this action, *inter alia*, Plaintiffs seek compensation for the crop loss.  County argues that Plaintiffs have already been compensated for this loss, because they were paid more than one million dollars in permanent and occasional flood easements in prior litigation related to the land.  This Court agrees, and for the following reasons, grants summary adjudication in County's favor on Plaintiffs' allegations related to the 2006 flood in the Edendale and Canal Creek area.

The construction of Castle Dam and Reservoir Unit was authorized, *inter alia*, by the Flood Control Act of 1970.  The United States Congress appropriated funds to build the dam on August 15,

1  1985 (P.L. 99-88).  To build the dam and reservoir, the United States took certain land from the Cranes

2  by fee and through easements.

3        On March 16, 1993, the United States filed an amended complaint in a condemnation action in

4  this Court (case number CV-F-89-582-MDC).  This action was consolidated with another action to cover

5  both the land for the permanent takings to build dam and reservoir as well as the permanent and

6  occasional flood easements.  The amended complaint named Bert Crane, Karen Crane, and Mary Crane

7  Couchman as defendants (collectively "the Cranes"), each defendant claiming a 1/3 undivided interest

8  in the property described in Schedule BB of the complaint.[3]  An Amendment to Declaration of Taking

9  broadened the area of the taking.  Schedule A to the complaint alleged the purpose of the acquisition was

10  for "local flood control projects" and a general comprehensive plan for "flood control in the drainage

11  basin" between the Merced and Chowchilla Rivers.  Specifically, the land was necessary for flood

12  control in the Canal Creek and Edendale Creek Basins for the "construction, establishment, and

13  operation of the Castle Dam and Reservoir and for such other uses as may be authorized by Congress

14  or Executive Order."

15        The taking of the Cranes' land involved a fee taking of the area of the dam, a permanent

16  mitigation area, a permanent flood easement defined as "permanently to overflow, flood, and submerge

17  the land flying below elevation 193.5..."  The United States also took an occasional flood easement

18  defined as "occasionally to overflow, flood and submerge the land laying above elevation 193.5."  The

19  parties stipulated to the total acreage and interests required, but litigated the amount the United States

20  would pay the Cranes.  A jury verdict awarded the plaintiffs $1,030,000 for 1,261.21 acres and $175,000

21  for 294.10 acres.

22        The tracts of land described in the condemnation action are the same tracts of land at issue in this

23  action.  These tracts in the condemnation action are described in the schedules, in the amended

24  complaint, and in the Amendment to Declaration of Taking.  The tracts of land in this action are

25  described in the TAC.  The land on which allegedly orchard was planted was covered in the prior

26  litigation.  The United States government was granted a flood easement on that land, and the plaintiffs

27

28
     [3] This Court previously dismissed Bert Crane, Karen Crane, and Mary Crane Couchman from this action for failure to exhaust administrative remedies.  These plaintiffs are the predecessor landowners to the properties at issue in this action.

were compensated for future floods that might occur on that land.

The prior litigation precludes Plaintiffs' claims for damage caused by flood.  A jury verdict and final judgment of this Court granted flood easements on the property and compensated Plaintiffs' preceding property owners for damage caused by future floods.  Plaintiffs' claims related to the flood on flood easement property falls within the doctrine of res judicata, which precludes "parties from contesting matters that they have had a full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  The flooding may be a taking, however, the United States has already paid for that through the condemnation action in which it paid for the flooding easements.  As the United States Supreme Court explained over a century ago in *United States v. Lynah*, 188 U.S. 445, 470-71(1903):

> [W]here the government by the construction of a dam or other public works so floods lands belonging to an individual as to substantially destroy their value there is a taking within the scope of the 5th Amendment. While the government does not directly proceed to appropriate the title, yet it takes away the use and value; when that is done it is of little consequence in whom the fee may be vested. Of course, it results from this that the proceeding must be regarded as an actual appropriation of the land, including the possession, the right of possession, and the fee; and when the amount awarded as compensation is paid, the title, the fee, with whatever rights may attach thereto-in this case those at least which belong to a riparian proprietor-pass to the government and it becomes  henceforth the full owner.

*See also, United States v Dickinson*, 331 US 745, 748 (1947) ("Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time.").  Moreover, Plaintiffs claims related to flooding are barred by the prior litigation even if they were not the named-parties, because Plaintiffs are succeeding owners of the property at issue in the prior litigation. *Taylor*, 553 U.S. at 894. Accordingly, Plaintiffs cannot pursue claims against County for the allegations related to the 2006 flood, as these claims are precluded as a matter of law.

### Allegations of Groundwater Contamination

Plaintiffs allege that the Landfill has contaminated the groundwater underneath their lots near the Highway 59 Landfill.  County points out that Plaintiffs' expert testified "there is nothing in the groundwater...at the point we tested it, so it's hard to come to a conclusion that something was affecting ground water at that point because there was nothing there." Deposition of Philip Ross, 38:6-12.

1   Plaintiffs do not challenge this assertion, and concede that their expert witness found no contamination

2   in the groundwater samples collected.  In their separate statement of facts, Plaintiffs "do not contest that

3   the groundwater beneath their property is currently not contaminated" and further concede the evidence

4   of damages to the property values is "due to the contaminated soil gas.  Not the groundwater."

5   Accordingly, this Court grants summary adjudication in favor of County and against Plaintiffs on all

6   claims related to groundwater contamination.

7   **Trespass of County Employees**

8   Plaintiffs further concede their claims based on the allegations that County employees entered

9   their properties without permission.  Plaintiffs do not dispute County's contention that Plaintiffs have

10   no evidence to support these claims.  Accordingly, this Court grants summary adjudication in favor of

11   County and against Plaintiffs on claims related to the trespass of County employees on Plaintiffs' lands.

12   **Inverse Condemnation**

13   In their first cause of action, Plaintiffs assert an inverse condemnation claim in violation of the

14   Fifth Amendment to the United States Constitution, and Article 1 section 19 of the California

15   Constitution.  The Fifth Amendment of the United States Constitution provides, in pertinent part: "nor

16   shall private property be taken for public use without just compensation."  The Takings Clause is

17   applicable to the states through the Fourteenth Amendment. *Dolan v. City of Tigard*, 512 U.S. 374, 383

18   (1994).  Physical possession of the property is unnecessary to violate the Takings Clause.  "A taking can

19   occur simply when the Government by its action deprives the owner of all or most of his interest in his

20   property...it is the loss to the owner of the property and not the accretion to the Government which is

21   controlling in fifth amendment cases." *United States v. Causby*, 328 U.S. 256, 261 (1946).

22   Article 1 section 19 of the California Constitution provides: "Private property may be taken or

23   damaged for public use only when just compensation, ascertained by a jury unless waived, as first been

24   paid to, or into court for, the owner."  Inverse condemnation is a constitutional remedy permitting

25   recovery of consequential damages arising from public projects.  Foreseeability is not required. *Albers*

26   *v County of Los Angeles*, 62 Cal 2.d 250, 263-264 (1965), and tort concepts like fault or negligence are

27   not applicable. *Bunch v Coachella Valley Water Dist*, 15 Cal 4th 432, 436 (1997).  Instead, the

28   government is strictly liable for any physical injury to property substantially caused by a public

1  improvement as deliberately designed and constructed.  *Bunch*, 15 Cal. 4th at 440; *Pacific Bell v City*

2  *of San Diego*, 81 Cal. App 4th 596, 602 (2000).  *See also, Marshall v Department of Water & Power*,

3  219 Cal. App. 3d. 1124, 1139 (1990) ("[A] governmental entity may be held strictly liable, irrespective

4  of fault, where a public improvement constitutes a substantial cause of the plaintiff's damages even if

5  only one of several concurrent causes.").  Plaintiffs must prove four elements to establish liability for

6  inverse condemnation under the *Albers* strict liability standard here: "First, that she has an interest in real

7  or personal property; Second, the City substantially participated in the planning, approval, construction

8  or operation of a public project  or public improvement; Third, Yamagiwa's property suffered damage;

9  and Fourth, the City's project, act or omission was a substantial cause of the damage." *Yamagiwa v. City*

10  *of Half Moon Bay*, 523 F. Supp. 2d 1036, 1088 (N.D. Cal. 2007 ) (citations omitted).

11  <div align="center">**Landfill Allegations**</div>

12        In their first cause of action, Plaintiffs allege that County's negligent maintenance of the Landfill

13  constitutes an unconstitutional governmental taking without compensation.  Plaintiffs allege:

14        Pollutants discharged from Defendants' Highway 59 Landfill have damaged the
      Plaintiffs' property.  Odors and wind-blown refuse emanating from the Highway 59

15        Landfill continually invade Plaintiffs' property, and Defendants' [sic] have allowed such
      invasion and pollution to occur by failing to take reasonable precautions and reasonable

16        control over their land.  Defendants' pollution and trespassory invasions...of Plaintiffs
      property has [sic] resulted in a substantial interference with property.

17

18  TAC, ¶39.  Plaintiffs specify that the factual allegations related to this cause of action as: "Defendants'

19  continuous trespassing onto Plaintiffs' property, the dumping of debris and pollutants onto Plaintiffs'

20  property, and the release of toxic substances and volatile organic compounds onto and into the soil and

21  groundwater of Plaintiffs' property."  TAC, ¶42.  Plaintiffs claim damages in lost rental value of the

22  property and necessary costs to remediate the contamination to allow agricultural and/or other

23  commercially-productive uses of the property. TAC, ¶40.

24        County presents four challenges to Plaintiffs' inverse condemnation cause of action: (1) only

25  plaintiff Karen Crane-McNab LLC has standing to pursue this claim; (2) the County cannot be liable for

26  a constitutional taking claim because it does not own the Landfill, (3) there was no taking, because there

27  are no contaminants or pollutants, and any contaminants did not come from the Landfill; and (4)

28  Plaintiffs have failed to demonstrate any damages.  The Court considers each argument below.

*Standing*

County argues that only plaintiff Karen Crane-McNab, LLC has standing to assert the inverse condemnation claim related to VOC contamination of the its land near the Highway 59 Landfill. County contends that in order for each plaintiff to assert an unconstitutional taking, based on the alleged migration of VOCs, each plaintiff must be able to prove the requisite taking of its property. County points out that the only soil samples were taken from Lot 1, APN: 052-150-013. Lot 1 is owned by Karen Crane-McNab, LLC. The sampling was at the southern portion of the southernmost property. Country asserts that Plaintiffs' expert witness testified that the sample area only reflects a sampling within a 50-100 foot area, and that anything beyond that area would be speculation. Because the only soil sampled and tested came from Karen-Crane-McNab, LLC's land, County concludes that only that plaintiff has standing to assert contamination claims.

Each plaintiff must have standing to raise their constitutional claims. *Serena v. Mock*, 547 F.3d 1051, 1053 (9th Cir. 2010). A plaintiff has standing to challenge allegedly unconstitutional if: (1) he or she has 'suffered an injury in fact'; (2) there is a a 'causal connection between the injury and the conduct complained of'; and (3) it is likely 'the injury will be redressed in a favorable decision.'" *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

County cites no law to support its standing argument. In addition, County fails to provide meaningful analysis to its standing argument beyond its assertion because that the presence of VOCs beyond the 50-100 foot area of influence on Lot 1 would be speculative, only Karen Crane-McNab, LLC could claim damages from migration, if any. Based on this argument, the Court presumes that County is arguing that the plaintiffs other than Karen Crane-McNab, LLC lack standing because they cannot establish an injury in fact.

The "injury in fact" requirement has two components. First, the injury must be "concrete and particularized." *Lujan*, 504 U.S. at 560. Second, the injury must be "actual or imminent, not conjectural or hypothetical." *Id*. Plaintiffs bear the burden of establishing these elements. *Id*. at 561. "In response to summary judgment...the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be

10

1    taken to be true." *Id*. (quoting Fed. R. Civ. P. 56) (internal citation and quotations omitted).

2         County contends that the presence of VOCs outside of the 50-100 foot area on Lot 1 would be

3    speculative.  In opposition, Plaintiffs assert that although their expert only tested the soil gas of Lot 1,

4    the area of influence is larger than the single point tested, and it is very likely that the other lots contain

5    VOCs also.  For support, Plaintiffs cite to a declaration of Timothy G. Souther ("Mr. Souther"), attached

6    as Exhibit 1 to Plaintiffs' opposition to this motion.  Mr. Souther is Plaintiffs' expert witness on the

7    issue of soil contamination.  Mr. Souther writes in his declaration:

8         The 2008 and 2010 soil gas sampling were [sic] conducted in one location on Plaintiffs'
          property.  The area of influence from which the extraction wells detected the VOC's was
9         likely 50 to 100 feet radius.  However, given that the one area tested on Plaintiffs'
          property detected the presence of these VOC's, it is likely that they are also on other
10        areas of Plaintiffs' property.  I understand that County contends that there is no evidence,
          and that it is speculation, that the VOC's are located anywhere on Plaintiffs' property
11        other than the area of the test wells.  I disagree with this contention.  Given that the test
          well was a non-zero point (i.e. VOC's were detected), it is likely that the presence of
12        VOC's extend outward in all directions from that point due to diffusion.  Furthermore,
          the County's contention could be stated conversely–i.e., it should be sheer speculation
13        that VOC's are *not* located on other areas of Plaintiffs' property, and sheer speculation
          that it was just a fortuitous coincidence that the one area tested came up positive for
14        VOC's.

15   Souther Decl., ¶10 (emphasis in original).  County challenges and objects to Mr. Souther's declaration.

16        Plaintiffs have no direct or circumstantial evidence that VOCs migrated to contaminate the soil

17   of any lot beyond Lot 1.  It is undisputed that Plaintiffs only tested Lot 1.  In his deposition, Mr. Souther

18   testified that the area of influence of that testing area was 50-100 feet.  Mr. Souther responded that he

19   did not know where else on the Crane property contained VOCs beyond the area that he tested.  Souther

20   Depo., 86:6-8.  He further admitted that the area of influence was "speculation." Souther Dep., 87:1-2.

21   Mr. Souther's declaration provides no "concrete" evidence that VOCs were found on any of the lots that

22   were not tested.  Mr. Souther's statement that it would be "sheer speculation that the VOC's are *not*

23   located on other" lots is not evidence–circumstantial or otherwise–that there were VOCs on the untested

24   lots.  Rather, the declaration statement provides a "conjectural or hypothetical" speculation that VOCs

25   might be on the other lots.  This statement does not satisfy Article III's "injury in fact" standing

26   requirement for any of the lots except Lot 1.  Because only Karen Crane-McNab, LLC is the only

27   plaintiff who owns Lot 1, only plaintiff Karen Crane-McNab, LLC has standing to assert the claims

28   related to the VOC migration from the Landfill through soil gas.

1    Alternatively, and equally as fatal to Plaintiffs' Landfill claims, Plaintiffs who own Lots 2, 3, 17,

2    18, 59, and 60 failed to set forth specific facts to establish an essential element of their inverse

3    condemnation cause of action as it relates to the soil gas contamination by migrating VOCs.  It is

4    undisputed that each lot is owned by an individual plaintiff; Plaintiffs do not own the lots collectively

5    or jointly.  Thus, each plaintiff is required to set forth some evidence which, if taken as true for purposes

6    of this motion, establish that County's actions constituted a taking.  For the reasons explained below,

7    only Karen Crane-McNab has set forth facts to support an inverse condemnation cause of action as to

8    Plaintiffs' Landfill allegations.

9    As set forth above, to establish liability for an inverse condemnation pursuant to the Article 1

10   section 19 of the California Constitution, each plaintiff must set forth facts to prove four elements: (1)

11   the plaintiff has an interest in real or personal property; (2) the County "substantially participated in the

12   planning, approval, construction, or operation of a public project or public improvement; (3) the

13   plaintiff's property suffered damage; and (3) the County's project, act, or omission was a substantial

14   cause of the damage. *Yamagiwa*, 523 F. Supp. 2d 1036 at 1088.  Similarly, each plaintiff must establish

15   harm to the property that plaintiff owns to recover under the Takings Clause.  *See Id.* at 1100.  Here,

16   Karen Crane-McNab, LLC is the only plaintiff that has evidence to support her allegations that soil gas

17   contamination has damaged her property, as Karen Crane-McNab, LLC is the property owner of Lot 1

18   and Plaintiffs' expert conducted the soil gas testing on Lot 1.  There is no evidence of VOCs on any of

19   the other lots.  Accordingly, all plaintiffs except Karen Crane-McNab, LLC have failed to establish an

20   essential element of their cause of action related to the VOC migration from the Landfill.  Summary

21   adjudication is granted in favor of County on this issue against these plaintiffs.

22                                        *Ownership*

23   County presents evidence that the County does not own the Landfill.  Instead, a Joint Powers

24   Authority ("JPA"), named the Merced County Regional Waste Management Authority, owns the

25   Landfill.  The JPA is made up of the County  and the Cities of Los Banos, Atwater, Livingston, Dos

26   Palos, and Gustine.  These entities entered into a joint powers agreement in April 1972 to create the

27   Landfill.  Although it does not own it, County manages the Landfill pursuant to a contract with the JPA,

28   dated June 26, 2007.

1   County argues that because it does not own the Landfill, it cannot be liable for a taking and is

2   not a proper defendant.  It is undisputed that County does not own the Landfill.  Rather, the Landfill is

3   owned by the JPA, made up of County and several city entities.  It is further undisputed that County

4   operates and manages the Landfill pursuant to a contract between County and the JPA.

5   County is a proper defendant as a party to the JPA.  "Whenever any public entities enter into an

6   agreement, they are jointly and severally liable upon any liability which is imposed by any law other than

7   this chapter upon any one of the entities or upon any entity created by the agreement for injury caused

8   by a negligent or wrongful act or omission occurring in the performance of such agreement." Cal. Gov.

9   Code §895.2; *Authority for California Cities Excess Liability v. City of Los Altos*, 136 Cal. App. 4th

10  1207, 1212-13 (2006) ("Sections 895.2 and 895.6 provide for the liability of a public entity that has

11  entered into an 'agreement' within the meaning of section 895.").  Because County has entered into the

12  JPA agreement, County is liable jointly and severally for the alleged negligent or wrongful acts of the

13  JPA.

14  Moreover, County is a proper defendant because County operates the Landfill.  County is the sole

15  entity responsible for the operation of the Landfill pursuant to the agreement between County and the

16  JPA.  To be a proper defendant, County need not own the Landfill.  Rather, Plaintiffs need only establish

17  that County "substantially participated in the planning, approval, construction, or operation of the public

18  project or public improvement." *Yamagiwa*, 523 F. Supp. 2d at 1088.  Here, it is undisputed that County

19  substantially participates in the operation of the Landfill.  Accordingly, County is a proper defendant.

20                                                         *Taking*

21  County argues that there was no unconstitutional taking of Plaintiffs' lands.  County argues that

22  there is no evidence of groundwater contamination, trash has not blown on the land for 3-4 years, and

23  the wind blows away from the Plaintiffs' properties, not towards them.  As to the soil contamination,

24  County concedes that low level VOCs were found, but argue that those VOCs are typical of gasoline and

25  solvent and were unlikely to come from the Landfill.

26  This Court has already granted summary adjudication in favor of County and against Plaintiffs

27  on Plaintiffs' allegations of groundwater contamination.  In addition, this Court has found that only

28  Karen Crane-McNab, LLC has evidence to support Plaintiffs' allegations of soil gas contamination.

1    Accordingly, this Court will address the remainder of County's arguments related to the inverse

2    condemnation cause of action.

3         Questions of fact remain as to whether the soil gas test results support an unconstitutional taking

4    on Karen Crane-McNab, LLC's land. This Court has already found that Plaintiffs have failed to set forth

5    evidence to support a soil contamination cause of action as to any lot other than Lot 1. As to Lot 1,

6    County impermissibly argues that the weight of the evidence supports its position in both its

7    memorandum and its reply, but County fails to point to a lack of evidence to support Plaintiffs'

8    allegations. County concedes that low level VOCs were found on Lot 1, by both Plaintiffs' and County's

9    experts. County argues, however, that those VOCs did not come from the Landfill, because those VOCs

10   are typical of gasoline and solvent, and are not typical of the Landfill. County argues that the VOCs

11   found in the soil sample are unlikely to have come from the Landfill, because they were not freon,

12   methane, carbon dioxide or other VOCs that are typically found near a landfill. County points out that

13   according to its expert witness, Mr. Sullivan, the fingerprint of the substances found do not match the

14   fingerprint of the substances of the Landfill or the area south of the Landfill, to support its argument that

15   no VOCs have migrated to the plaintiff's land. In addition, County suggests that the contamination

16   could have come from other sources. County concludes that no taking occurred, because based on the

17   opinion of its experts, the VOCs found on Lot 1 are consistent with farming and transportation, not the

18   Landfill. Plaintiffs counter that according to their expert, Mr. Souther, all but one of the VOCs found

19   on Lot 1 are also found on the Landfill and that the evidence suggests that VOC migration to Lot 1 soil

20   has occurred. County's reply and objections to Plaintiffs' expert witnesses do not preclude this

21   Plaintiffs' expert witness opinions raise genuine issues of material fact as to whether soil contamination

22   on Lot 1 has been caused by the Landfill. County impermissibly argues the weight of the evidence to

23   defeat its motion.

24        In addition, questions of fact remain on the issue of whether blowing trash on the Plaintiffs'

25   properties adjacent to the Highway 59 Landfill constitutes an unconstitutional taking without

26   compensation. It is undisputed that the wind blows away from the Crane properties and toward the

27   Landfill the majority of the time, except with the occasional storm. In addition, it is undisputed that Mr.

28   Crane gave County personnel a key to his property and permission to enter his land to recover any trash

that might blow onto his land.  Notwithstanding these undisputed facts, questions of fact exist as to whether trash has blown onto the land consistently, and whether it constitutes a taking.  County asserts that there is no taking because trash has not blown on the land for 3-4 years.  To support this assertion, County points to the deposition of Bert Crane ("Mr. Crane").  Plaintiffs points out that County's characterization of Mr. Crane's testimony is misleading, as he did not testify that trash has not blown onto his property for 3-4 years.  Rather, Mr. Crane was explaining one example of trash blowing onto his property that happened 3-4 years ago.  Thus, the evidence cited does not support fully County's factual assertion.  Accordingly, County's summary adjudication motion on this issue is denied.

Although questions of fact remain, this Court points out that Plaintiffs rely on an inadmissible declaration of John McGill ("Mr. McGill"), who declares:

> For the past five years, I have leased approximately 3,300 [acres] of land from the Crane Family (i.e. all of the Crane Family entities that are Plaintiffs in this action) on which to graze my cattle.  This includes all of the property located west of the Highway 59 Landfill that is the subject of this action.  During the time I have leased the Crane Property, I have consistently seen garbage blown over from the Landfill onto the Crane Family's land located west of the Landfill.  This garbage has been deposited from the southern-most parcel (next to the vineyards) all the way up to the northern-most parcel (where Bert Crane has his almonds).  The garbage consists of paper and plastic bags.  I have also seen garbage, from the garbage trucks servicing the Landfill, blowing onto the Crane's property.
> In fact, I have lost several cattle due to such garbage.  That is, the cattle eat the plastic and it becomes lodged in their throat or tied around their tongues, resulting in their death.

McGill Decl., ¶¶ 2-3.  County challenges Mr. McGill's declaration, because Plaintiffs failed to disclose Mr. McGill in any of the witness disclosures previously submitted.  This Court agrees, and excludes Mr. McGill's statement pursuant to Fed. R. Civ. P. 26 and 37.[4]

*Damages*

County argues that even if there was a taking, such a taking is not permanent or substantial to be compensable under the Fifth Amendment.  In an inverse condemnation action under California law, Plaintiffs must establish damages by demonstrating that the market value of their land was depreciated.

---

[4] County's memorandum, devoid of legal citation or analysis, baldly asserts that the blowing trash allegations fail to establish a taking.  Indeed, County's memorandum fails to include a single legal citation to support its assertions that none of the evidence supports a taking based on soil contamination, groundwater contamination, or the blowing trash.  Although this Court finds a question of fact, County's motion also fails to sustain its burden in this motion because its argument is unsupported by legal citation or analysis.

*Albers*, 62 Cal. 2d at 260. "Any definitely physical injury to land or an invasion of it cognizable to the senses, depreciating its market value, is damage in the constitutional sense." *Yamagiwa*, 523 F. Supp. 2d at 1090 (citing *Albers*, 62 Cal. 2d at 260). "Damage from invasions of water or other liquid effluents often provides the basis for inverse liability." *Varjabedian v. City of Madera*, 20 Cal. 3d 285, 297 (1977). Although physical injury to land is cognizable, it is not a prerequisite to compensation. *Varjabedian*, 20 Cal. 3d at 296 (odors emanating from sewage treatment plant sufficient for inverse condemnation injury). For a federal takings action, "damages under [a plaintiff's] federal inverse condemnation claim are the same as under [the] state inverse condemnation claim–the difference between the fair market value of the Property before and after the taking." *Yamagiwa*, 523 F. Supp. 2d at 1100 (citing *Bassett v. United States*, 55 Fed. Cl. 63, 69 (Fed. Cl. 2002)).

County presents the following undisputed evidence to support its claim that there are no damages to Plaintiffs' properties near the Landfill: No one currently lives on any of the land involved in this action. Lots 1 through 3 are a wetland preserve created by virtue of the approval of a final subdivision map recorded in August 2002. The limitations of the wetlands preserve include prohibitions of agricultural activity involving deep tilling within 50 feet of the wetland preserve, plowing, cultivation, leveling, grading, or landscaping. The final map prohibits residential development within one-half mile of the Landfill. Cattle have grazed on the area across from the Landfill since 1924 without a breaking in renting. No significant health risks have been assessed on the property.

County also asserts that there has been no diminution of the value of the properties west of the Landfill and no evidence of illness or problems with cattle. Moreover, County argues that no remediation is necessary because the JPA is instituting a remediation system for VOC migration to the south of the Landfill. A remediation system on the Plaintiffs' property would vacuum from the Landfill to the Plaintiffs' properties to take out the gases in the soil.

Plaintiffs dispute County's latter assertions. Plaintiffs point to their expert testimony of Jeffrey Lien ("Mr. Lien") that the value of all of the Plaintiffs' properties adjacent to the Highway 59 Landfill has diminished by $322,304. In addition, Plaintiffs rely on the declaration of Mr. McGill, plaintiffs' renter, who declared, *inter alia*, that his cows have suffered harm and have died. Plaintiff further argue that the County's remediation efforts will not eliminate Plaintiffs' damages.

County objects to Plaintiffs' evidence on several grounds. County reiterates that Mr. McGill was not disclosed as a witness, and his declaration is inadmissible. This Court agrees, and excludes Mr. McGill's declaration. County further objects to Mr. Lien's appraisal. The Court agrees with County that Mr. Lien's supplemental report was deemed inadmissible by the United States Magistrate Judge in her sanctions ruling, and will not be considered by this Court for any purpose; however, Mr. Lien's first appraisal is admissible and contradicts County's contentions that there are no damages. The bulk of County's objections regard the weight and reliability of the evidence, not its admissibility. County argues that the appraisal lacks foundation and tested an area far away from where the soil sample was taken. In addition, County argues that Mr. Lien lacks expertise in the area of remediation. County may raises these issues at trial, but they are improper arguments in a summary judgment motion.

For these reasons, the Court denies in part County's summary adjudication motion related to whether Plaintiffs have raised a genuine issue of fact as to damages on their Highway 59 Landfill properties claims. As to the Landfill allegations, Plaintiffs have raised genuine issues of material fact regarding the soil migration of VOCs onto Karen Crane-McNab, LLC's Lot 1 and the blowing trash. Plaintiffs have also offered evidence of damages. Accordingly, Plaintiffs maintain an inverse condemnation cause of action as to these issues.

**Edendale and Canal Creek Allegations**

In its summary judgment motion, County submits that Plaintiffs' inverse condemnation claim is related only to the Highway 59 Landfill allegations, and Plaintiffs do not assert an inverse condemnation claim based on the Edendale and Canal Creek allegations. In opposition, Plaintiffs argue, *inter alia*, that County's arguments fail to consider that Plaintiffs have standing to assert an inverse condemnation cause of action based on County's "maintenance (or lack thereof) of the Canal Creek and Edendale Creek areas." In its reply, County fails to address Plaintiffs' argument. Having failed to oppose Plaintiffs' argument that all Plaintiffs have standing to assert an inverse condemnation claim based on the Edendale and Canal Creek allegations, County's motion fails on this issue.

**<u>Trespass</u>**

Plaintiffs argue that their trespass (second) cause of action is based on the discharge of pollutants from the Highway 59 Landfill into the Plaintiffs' soil, the continuous depositing of windblown refuse

17

1    and debris from the Landfill's operation onto the Plaintiffs' property, and the County's "placement of

2    numerous piles of debris, dead-fall, and garbage it has collected from its operations of the Canal Creek

3    and Edendale Creek waterways and possible other locations, all without the Plaintiffs' consent."

4    Plaintiffs had also based their trespass cause of action on allegations of physical trespass by County

5    individuals onto Plaintiffs' land without authority; however, Plaintiffs withdrew those allegations in this

6    motion, as noted above.  Accordingly, the Court considers Plaintiffs' trespass cause of action as to their

7    allegations of soil contamination, wind blown trash, and debris, dead-fall, and garbage in the Edendale

8    and Canal Creek area.

9         To establish a claim for trespass, Plaintiffs must plead and prove the following: (1) the plaintiff

10   owned the property; (2) County intentionally, recklessly, or negligently entered the plaintiff's property

11   or caused the contaminants, or debris to enter the plaintiff's property; (3) the plaintiff did not give

12   County permission for the entry; (4) the plaintiff was harmed; (5) County's conduct was a substantial

13   factor in causing that harm. *See, Cassinos v. Union Oil. Co.*, 14 Cal. App. 4th 1770, 1778 (1993).  "A

14   trespass may be on the surface of the land, above it, or below it.  The migration of pollutants from one

15   property to another may constitute a trespass[.]" *Martin Murietta Corp. v. Ins. Co. of N. America*, 40 Cal.

16   App. 4th 1113, 1132 (1995).

17        County argues that there is no evidence of trespass.  County submits that the following facts

18   support a finding that Plaintiffs' trespass claim is unsupported: (1) there was no migration from the

19   Landfill; (2) there is no groundwater contamination; (3) there is no dumping by County personnel into

20   the Edendale and Canal Creeks; (4) Mr. Crane consented to County employees' entry onto his land; (5)

21   Plaintiffs' admitted that the public improperly dumps on land in rural areas; and (6) entrance to the dam

22   is not exclusive; (7) there is no indication that the County was negligent with regards to trash; (8)

23   Plaintiffs cannot prove that the debris has caused a trespass; and (9) trespass may not be based on non-

24   damaging odor intrusion.

25        Of all of County's assertions, Plaintiffs only dispute the first.  That is, Plaintiffs challenge that

26   there was no VOC migration on Plaintiffs' land.  As set forth above, this Court finds that questions of

27   fact remain as to whether VOCs migrated from the Landfill to Lot 1.  For the reasons discussed above,

28   this Court finds that questions of fact remain as to whether Karen Crane-McNab, LLC can establish a

18

1  trespass claim based on the disputed VOC migration.  As to the other factual allegations, however,

2  Plaintiffs fail to oppose the evidence set forth by County.  Accordingly, this Court grants summary

3  adjudication in favor of County and against Plaintiffs on these factual issues to find that Plaintiffs have

4  only raised a question of fact regarding whether the soil contamination on Lot 1 has caused a trespass.

5      Moreover, disputed questions of fact remain as to whether County operated the Landfill

6  negligently.  To recover on the trespass claim, Plaintiffs must establish that the trespass was "intentional,

7  reckless, negligent, or the result of extra-hazardous activity." *Staples v. Hoefke*, 189 Cal. App. 1397,

8  1406 (1987).  County argues that even if there were VOC migration, Plaintiffs' trespass claim fails

9  because there is no evidence that the County acted intentionally or negligently.  To support this

10 argument, County sets forth facts that the Landfill is run according to industry standards, and that

11 County's existing and proposed remedial efforts preclude a finding that County's operation of the

12 Landfill has been negligent.  A brief summary of facts pertaining to the Landfill and its operations

13 provides background to County's arguments.

14     The Highway 59 Landfill began taking waste in September 1973.  The Highway 59 Landfill was

15 constructed in accordance with all of the applicable laws in effect at the time.  The original Landfill

16 consisted of four unlined cells.  In December 2002, construction began on the expansion of the solid

17 waste facility.  The expansion created, *inter alia*, a fifth cell that is lined, but it is non operational (Phase

18 5).  The cell closest to Highway 59, Phase 5, was not used from July 2009 to April 2010.

19     The Landfill disposes of non-hazardous waste (municipal solid waste) and has a class II

20 hazardous waste surface impoundment for the storage of landfill leachate.  It has a permit to store the

21 leachate.  Improperly disposed of hazardous waste finds its way to the land despite County's best efforts

22 to prevent this.

23     The Landfill is regulated by the California Regional Water Control Board ("CRWCB").

24 Numerous reports are sent to CRWCB and other agencies regarding landfill management, and gas and

25 water monitoring.  Monitoring wells are located at numerous locations around the Landfill.

26     As to the County's efforts to control blowing trash, County offers the following undisputed

27 evidence:  There is a permanent, twelve-foot tall litter barrier along the western side of Phase 5 that was

28 constructed in 1999.  The landfill also uses temporary litter barriers to control blowing paper and plastic.

Personell also water down dust and litter to inhibit migration of litter.  During a rare storm, Landfill personnel erect additional temporary litter barriers.  The Landfill began participation in the CalTrans Adopt-A-Highway program in 1999.  The Landfill staff collects litter along approximately 7 miles of Highway 59.  The Landfill received an award from CalTrans Adopt-A-Highway program in 2004 for volunteer of the year.  The Landfill has requirements that prohibit uncovered loads from moving to its facility.  A surcharge can be imposed for violations of those requirements.

The Highway 59 Landfill has had a groundwater monitoring network in place since it was first required by the State of California in 1988.  The monitoring well network has evolved since that time. The monitoring well network is in compliance with CRWQCB requirements and is similar to monitoring well networks at other operating landfills.

Landfill gases (VOCs) have migrated from the Highway 59 Landfill to adjacent properties, and the Landfill has leaked leachate to the south of the Landfill.  The groundwater plume has migrated over a thousand feet to the south of the Landfill boundaries, with the exact boundaries undetermined. County's Waste Authority is working with the California Regional Water Quality Control Board to come up with a plan to install additional groundwater wells to better define the plume.  In addition, County is installing a landfill gas system to remediate or take corrective action to collect the gas within the Landfill and to prevent further migration to the south.  The additional system will be installed between May and December 2010.

An extraction system was installed on the southern boundary of the Landfill in 2002.  That system was installed because, according to County's expert witness, the Landfill had 5% methane in the soil probes "on the southern part of the property, and that was a violation of the standard at that time." Since that system was installed, gas continues to move to the south.  That system was required to remedy the Landfill's impacts to groundwater by the gas that violates landfill regulations.  The impacts to the groundwater have not stopped after the installation of the 2002 extraction system.

County presents expert testimony that the municipal solid waste containment systems at the Highway 59 Landfill meet all of the local, state, and federal regulations and are consistent with the historic state of industry practice at the time the Landfill phases were developed.  The facility was constructed with high quality and has performed its intended purposes.  Phases 1 through 4 are unlined,

however, such a system was not required when these phases were built.  Phase 5 has a modern California Code of Regulations title 27 liner system.

Plaintiffs dispute County's expert testimony to the extend that the expert opines that the Highway 59 Landfill meets all local, state, and federal regulations.  Plaintiffs' point out that County's other expert admitted that the Landfill exceeded regulation standards for soil gases to the south to conclude that the Landfill did not meet all regulations.  Plaintiffs argue that whether the County operated the Landfill negligently is a question of fact.  In addition, Plaintiffs point out that the County's expert admitted that the Landfill has leached soil gas at least one thousand feet south of the Landfill, resulting in regulatory violations that required the County to install a landfill gas extraction system on Landfill's southern border.

Plaintiffs successfully argue that it remains a disputed question of fact as to whether County operated the Landfill negligently and whether such as system could have prevented migration onto the plaintiff's land has it been installed earlier.  Accordingly, this Court denies County's summary adjudication motion on this claim.[5]

County also argues that Plaintiffs failed to establish damages.  As set forth above, Plaintiffs have established a question of fact as to damages.  Accordingly, Plaintiffs' trespass claim survives summary adjudication as to whether VOCs migrated onto Lot 1 and whether that migration constituted a trespass.

### Nuisance

Plaintiffs' third cause of action is nuisance.  "[P]rivate nuisance is a civil wrong based on disturbance of rights in land." *Koll-Irvine Center Property Owners Assn. v. County of Orange*, 24 Cal. App. 4th 1036, 1041 (1994).  California Civil Code section 3479 defines a nuisance as "[anything] which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property[.]"  "The statutory definition of nuisance appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property." *Stoiber v. Honeycheck*, 101 Cal. App. 3d

---

[5] Plaintiffs argue that even if the absence of negligence, County would be liable for trespass of the toxic substances on County's land that migrated to Plaintiffs' land.  Because this Court finds questions of fact on negligence, this Court does not reach this issue.

909, 909 (1980).  "So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to a normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance." *Koll-Irvine*, 24 Cal. App. 4th at 1041.  "[T]he migration of pollutants from one property to another may constitute a trespass, a nuisance, or both." *Marietta*, 40 Cal. App. 4th at 1132.   "Failure to clean up contamination causing ongoing damage to property has been held to constitute such a nuisance." *Resolution Trust Corp. v. Rossmoor Corp*., 34 Cal. App. 4th 93, 99 (1995).  "An interference need not directly damage the land or prevent its use to constitute a nuisance; private plaintiffs have successfully maintained nuisance actions against airports for interferences caused by noise, smoke, and vibrations from flights over their homes and against a sewage treatment plant for interference cause by noxious orders." *Koll-Irvine*, 24 Cal. App. 4th at 1041; *see also, Varjabedian*, 20 Cal. 3d at 285.

County argues that there is no nuisance because: (1) there is no migration of VOCs from the Landfill; (2) there was no dumping; (3) there was no unauthorized accumulation on Plaintiffs' properties; (4) there is no health risk; (5) there is no interference on the property because it is used for grazing; (6) no on lives on the property; (7) wind typically blows in the opposite direction; (8) Plaintiffs cannot establish that rodents are caused by the existence of the Landfill; and (9) Plaintiffs cannot establish that dumping has not resulted from the public.  In addition, County argues that there has been no harm to the land, and that no reasonable person could be annoyed with the conditions of Plaintiffs' properties adjacent to the Highway 59 Landfill.  County further argues that the seriousness of the harm does not outweigh the public benefit of the Landfill.

This Court has addressed County's arguments above related to the migration of VOCs.  The Court refers to the discussion above to deny County's motion on these grounds.

In addition, Plaintiffs have raised material questions of fact on their nuisance claim related to VOCs,  trash, and odors.  Plaintiffs set forth testimony of Plaintiffs that they have found VOCs, trash and odors offensive and to inter with their property rights.  County's arguments relate to the weight of the evidence, but fail to establish that there is no genuine issue of material fact as to these allegations.  Accordingly, summary adjudication on this claim is denied.

**Negligence**

1      Plaintiffs base their fifth (negligence) causes of action on Cal. Health & Safety Code §§25359.4

2 and 25359.5.  Cal. Health & Safety Code §25359.4 imposes a mandatory duty that County "shall not

3 release, or allow or cause a release of, a reportable quantity of a hazardous substance into the

4 environment." Cal. Health & Safety Code §25359.5 requires a county health officer to order a site to be

5 secured after a preliminary determination is made that there has been a release of hazardous materials.

6 This Court held that Plaintiffs' fifth and sixth causes of action state a claim to the extent they rely on Cal.

7 Health & Safety Code §§25359.4 and 25359.5, as those statutory sections impose a mandatory duty on

8 County, the breach of which gives rise to a private right of action pursuant to Cal. Gov. Code §815.6.

9      County argues that no statutory authority is cited regarding County's liability for the Edendale

10 and Canal Creek allegations.  Plaintiffs argue that the above-cited statutes relate to those allegations.

11 The statutes upon which Plaintiffs' rely, however, relate only to the release of hazardous substances.

12 None of the Edendale and Canal Creek allegations relates to the release of hazardous substances.

13 Accordingly, summary adjudication is granted on this claim as to these allegations.

14      As to the Landfill allegations, County argues that there is no soil contamination.  This Court has

15 already disposed of County's arguments related to the soil contamination above.

16      County further argues that there was no negligence in County's operation of the Landfill.  County

17 argues that there is no evidence of a lack of ordinary care in the management of the Landfill.  To support

18 this assertion, County points to evidence that the facility is run in accordance with the industry standards.

19 In addition, County argues that it has implemented remediation efforts that will resolve where there is

20 migration to the south of the Landfill and anywhere else.  County further argues that it takes significant

21 precautions to prevent floating litter, and that County's actions to control garbage are "at least consistent

22 with the industry standard."

23      Because the operation of a landfill is a specialized area, the standard of care in operating the

24 Highway 59 Landfill requires expert testimony.  "Ordinarily, where a professional person is accused of

25 negligence in failing to adhere to accepted standards within his profession the accepted standards must

26 be established only by qualified expert testimony unless the standard is a matter of common knowledge.

27 However when the matter in issue is within the knowledge of experts only and not within common

28 knowledge, expert evidence is conclusive and cannot be disregarded." *Osborn v. Irwin Memorial Blood*

*Bank*, 5 Cal. App. 4th 234, 277 (1992) (quoting *Huber, Hunt & Nicols, Inc. v. Moore*, 67 Cal App. 3d 278, 313 (1977). Thus, the parties must establish by expert testimony the ordinary custom and practice in operating a landfill, and whether County adhered to the ordinary custom and practice in its operation of the Highway 59 Landfill.

As set forth more fully above, County relies on expert testimony that the Highway 59 Landfill, and its operation thereof, are consistent with local, state, and federal regulations, and the custom and practice of landfill operations. While County's experts establish the appropriate custom and practice related to the operation of landfills, Plaintiffs call into question whether County's maintenance of the Landfill complied with the custom and practice. Plaintiffs continue to point out that expert testimony calls into question whether County's operation of the Landfill complied with regulations, since the leachate in the groundwater to the south and the migration of gases to the south exceeded regulations. In addition, Plaintiffs argue that the migration of the VOCs into their soil demonstrates that County did not operate the Landfill with the appropriate standard of care. As explained more fully above, this Court finds that questions of fact remain on this issue. Accordingly, summary adjudication on this negligence cause of action is denied.

Moreover, the Court denies summary adjudication of Plaintiffs' negligence per se arguments. County fails to sustain its burden on this issue, because its argument is unsupported by legal citation or analysis. In its memorandum, County makes sweeping legal statements without citation or support and fails to connect its factual contentions with legal analysis. In addition, County relies on arguments this Court has disposed of above (i.e., no soil migration, County is inappropriate party, etc.). Accordingly, County's summary adjudication motion of Plaintiffs' negligence per se claim is denied.

///

### **Negligence–Failure to Warn**

As to Plaintiffs' failure to warn (sixth) cause of action, County argues that Plaintiffs have failed to rely on a specific statute. County ignores Plaintiffs citation to California Heath & Safety Code §25359.4, which requires the County to warn Plaintiffs of any release of "reportable quantities" of toxic substances from the Landfill. "Reportable quantities" include any amount sufficient to pose a threat to human health or risk to the environment. Plaintiffs' expert evidence supports Plaintiffs' position that

the pollution under Lot 1 exceeds target thresholds and is therefore a risk to human health and the environment. Plaintiffs' evidence establishes genuine issues of material fact as to whether County is liable for failure to warn Karen Crane-McNab, LLC about its release of VOCs into the soil. Accordingly, County's summary adjudication on this cause of action is denied.

### Due Process

In their seventh cause of action, Plaintiffs assert a violation of the Due Process Clause of the Fourteenth Amendment of the United States, through 42 U.S.C. §1983. After quoting the language of 42 U.S.C. §1983, County's entire argument related to the due process claim is:

> In short, Plaintiffs again allege an unconstitutional taking. However, in the case at hand, there was no taking as there was no migration, no loss of rent, negligible health risk from whatever is on Lot 1, and no affect on the properties, which largely consists of wetland preserves.

County has failed to establish that Plaintiffs' due process claim fails. County fails to set forth any law or analysis related to the Due Process Clause of the Fourteenth Amendment. In addition, County relies on factual assertions that are disputed. For the reasons explained more fully above, County's motion as to the due process claim is denied.

### Strict Liability

County argues that Plaintiffs' (eighth) strict liability statute fails because it does not rely on a statute. County points out that pursuant to Cal. Gov. Code §815, a "public entity is not liable for an injury" except "as otherwise provided by statute." This section "abolishes common law tort liability for public entities" except for such liability as may be required by state or federal constitute, e.g., inverse condemnation, or by statute. *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 899 (2008). In addition, County argues that Plaintiffs' eighth cause of action is based on allegations that surface waters flowed from the Landfill to Plaintiffs' properties, but that the undisputed evidence is that no storm water flows from the Landfill's operation areas to Plaintiffs' properties. In opposition, Plaintiffs fail to address County's legal or factual arguments. Accordingly, this Court grants County's summary adjudication motion on the strict liability claim on both legal and factual grounds.

### Declaratory Relief

Plaintiffs' tenth cause of action is titled "declaratory relief." As to this claim, County argues,

1   in its entirety:

> Plaintiffs do not state a cause of action. There is no dispute, other than the lack of liability and damages. Such is the situation in any lawsuit. This does not render a ripe and justiciable dispute requiring a declaration from this court. A plaintiff must seek a declaration of the rights and duties between the parties. (Cal. Code Civ. Proc. 1060). A declaratory relief action cannot be used to create issues of fact to defeat a summary judgment motion nor does it provide a way to litigation that which is in other causes of action. Hood v. Superior Court, 33 Cal. App. 4th 391, 324 (1995).

County's argument fails for a number of reasons. First, County impermissibly relies on California law. Second, County implies that Plaintiffs have not sought the declaration of rights and duties between the parties; however, Plaintiffs request judicial "determination as to the existence of ownership, title, and other rights, in the subject property and a declaration as to the parties' rights relating thereto." Compl., ¶104, Prayer, ¶4. Third, County erroneously implies that this is a declaratory relief action that was filed to defeat summary adjudication. This implication is unsupported by the facts and procedural history of this action. Accordingly, County's motion on this cause of action is denied.

### Evidentiary Objections

The parties have included a number of evidentiary objections in opposition and reply to this motion. This Court has considered these objections to the extent necessary to rule on this Fed. R. Civ. P. 56 motion. To the extent those objections were directed at the weight of the evidence, however, this Court did not rule on these evidentiary objections. Counsel may re-raise these objections in motions in limine, during trial, or on cross-examination.

### Remaining Factual Allegations

A number of factual allegations raised in the complaint are unaddressed in this motion or are left unresolved. As to the Landfill allegations, Plaintiffs allege damage based on the additional allegations of air pollution, altered natural drainage patterns, and vermin. While County raises some facts that relate to these allegations, County does not articulate how the causes of action fail as they relate to these allegations. Accordingly, this Court makes no decision on these remaining factual issues unless otherwise specified in this Court's memorandum and order.

As to the Edendale and Canal Creek allegations, Plaintiffs allege damages related to debris, deadfall, garbage, and lack of security. Questions of fact related to these issues remain, unless otherwise specified in this memorandum and order. County failed to articulate in its order why these allegations

1   fail as to each cause of action.  In addition, this Court finds that although allegations related to flooding

2   are precluded by the prior litigation, questions of fact remain as Plaintiffs' allegations related to the

3   County's maintenance of the creeks.  This Court questions whether debris was included in the scope of

4   the prior litigation, and County fails to establish that fact as a matter of law.  In addition, Plaintiffs raise

5   issues of fact as to whether County's performance of its duties in maintaining the waterways (or lack

6   thereof) was negligent or foreseeable to be precluded by the prior litigation.  Accordingly, this Court

7   finds that questions of fact remain on these issues.

8                                   CONCLUSION AND ORDER

9        For the foregoing reasons, this Court:

10  1.      DISMISSES Plaintiffs' fourth (fraud) and ninth (California due process) causes of action;

11  2.      GRANTS summary adjudication in favor of County and against Plaintiffs on the

12          following factual issues:

13      a.      Plaintiffs cannot recover for any alleged damage in the Edendale and Canal Creek

14              area caused by floods;

15      b.      Plaintiffs cannot recover for any alleged groundwater contamination, as there was

16              no groundwater contamination in Highway 59 Landfill area;

17      c.      Plaintiffs cannot recover for any alleged unauthorized entry by County personnel,

18              as there was no unauthorized entry by County employees on any of Plaintiffs'

19              lands; and

20      d.      Plaintiffs cannot recover based on allegation of County personnel dumping, as

21              there is no evidence to support the allegation that County personnel dumped

22              debris or garbage into the Edendale and Canal Creeks;

23

24  3.      GRANTS summary adjudication in favor of County and against Plaintiffs on the

25          following legal issues:

26      a.      Plaintiffs Bert Crane Orchards, LP, Mary Crane Couchman Trust, and Mary

27              Crane Couchman Family Partnership, LP lack standing and have failed to set

28              forth facts to support that the soil on their lands near the Highway 59 Landfill has

27

1   been contaminated by the migration of VOCs;

2       b.   Plaintiffs' trespass claim is limited to soil contamination allegations;

3       c.   Plaintiffs' negligence claim is limited to soil contamination allegations;

4       d.   Plaintiffs' eighth (strict liability) cause of action; and

5   4.   DENIES summary adjudication on the following factual issues:

6       a.   Whether there is soil contamination on Karen Crane-McNab, LLC's Lot 1, near

7   Highway 59 Landfill;

8       b.   Whether trash and refuse blows on Plaintiffs' Highway 59 Landfill lands;

9       c.   Whether Plaintiffs suffered damages related to the Highway 59 Landfill lands;

10       d.   Whether County has maintained the Edendale and Canal Creek waterways

11   negligently to harm Plaintiffs and their properties; and

12       e.   Whether County's maintenance of the Edendale and Canal Creek waterways have

13   harmed Plaintiffs; and

14   5.   DENIES summary adjudication on the following legal issues:

15       a.   Plaintiffs' first (inverse condemnation action) based on VOC migration, trash,

16   Edendale and Canal Creek allegations,

17       b.   Plaintiffs' second (trespass) cause of action related to VOC migration;

18       c.   Plaintiffs third (nuisance) cause of action related to VOCs migration,  trash, and

19   odors;

20       d.   Plaintiffs' fifth (negligence) cause of action related to VOC migration;

21       e.   Plaintiffs' sixth (negligence–failure to warn) cause of action related to VOC

22   migration;

23       f.   Plaintiffs' seventh (Due Process Clause of Fourteenth Amendment) cause of

24   action;

25       g.   Plaintiffs' tenth (Declaratory Relief) cause of action.

26   IT IS SO ORDERED.

27   **Dated:   October 13, 2010**          /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE

28