1

2

3

4

5

6

7

8

9

10

11                    **IN THE UNITED STATES DISTRICT COURT**

12                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

13

14   KAREN CRANE-McNAB, LLC, et al.,          CASE NO. CV F 08-1218 LJO SMS

15              Plaintiffs,                    **PRETRIAL ORDER**

16      vs.                                    Motions in Limine
                                               Filing Deadline:     November 24, 2010
17   COUNTY OF MERCED,

18              Defendant.                     Motions in Limine
                                               Response Deadline:   December 14, 2010

19                                             Motions in Limine
                                               Hearing:             At time of trial due to
20                                                                  reassignment to U.S.
                                                                    District Judge William B.
21                                                                  Shubb

22   _____/        Court Trial:         Date:  January 24, 2011
                                               (7 days. est.)       Time:  8:30 a.m.
23                                                                  Dept.: 6 (WBS)

24
            This Court conducted a November 15, 2010 pretrial conference.  Plaintiffs Karen Crane-McNab,
25
     LLC, Bert Crane Orchards, L.P., Mary Crane Couchman Trust, and Mary Crane Couchman Family
26
     Partnership, L.P. (collectively "Plaintiffs") appeared by counsel Thomas Campagne.  Defendant County
27
     of Merced ("County" or "Defendant")) appeared by counsel Roger Matzkind.  Pursuant to F.R.Civ.P.
28

                                                  1

16(e), the Court issues this final pretrial order.

**A.      Jurisdiction and Venue**

The parties agree that this Court has original jurisdiction over the parties' disputes pursuant to 28 U.S.C. § 1331 over Plaintiffs' claims arising under the federal constitution, and pendant and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' remaining claims.

The parties agree that venue is proper in this Court pursuant to 28 U.S.C. § 1391 based on the fact that all parties reside in this judicial district, as that term is used in § 1391, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

**B.      Court Trial**

Based on the parties' stipulation at the pretrial conference, this is a court trial.

**C.      Estimated Length of Trial**

The parties estimate trial will be seven days.

**D.      Reassignment to U.S. District Judge William B. Shubb and Trial Date**

Due to numerous trial conflicts on the calendar of United States District Judge Lawrence J. O'Neill, trial and all further matters are reassigned to United States District Judge William B. Shubb. Trial will be **January 24, 2010 at 8:30 a.m.** in Department 6 (WBS) of this Court before United States District Judge William B. Shubb.

**E.      Nature Of Action**

*Plaintiffs' Recitation of Procedural History*

Plaintiffs initiated this action on June 26, 2008, in the State of California, County of Merced Superior Court.  The County removed the action to this District Court based on this Court's original jurisdiction (28 U.S.C. § 1331) over Plaintiffs' claims arising under the federal constitution, and pendant and supplemental jurisdiction (28 U.S.C. § 1367) over Plaintiffs' remaining claims.  Plaintiffs are proceeding on their Third Amended Complaint ("TAC"), as amended by this Court's Order on Defendant's Partial Motion to Dismiss the TAC (Doc. 53), and this Court's Order on Defendant's Summary Judgment Motion (Doc. 153).  In response to the County's summary judgment motion, and in light of information revealed in discovery, Plaintiffs voluntarily dismissed their Fourth Cause of Action for "Fraud and Deceit by Concealment and Suppression of Fact," and Ninth Cause of Action for

"Violation of Due Process Clause of the California Constitution, Art. 1, sec. 7."  This Court's Order on the summary judgment motion accordingly dismissed those two claims.  Furthermore, the Court granted the summary judgment for the County on Plaintiff's Eighth Cause of Action for "Strict Liability."  Thus, Plaintiffs are now proceeding on the following seven causes of action:

1.     Inverse Condemnation under U.S. Constitution, Fifth Amendment and California Constitution, Art. 1, sec. 19;

2.     Trespass;

3.     Nuisance;

4.     Negligence;

5.     Negligence-Failure to Warn;

6.     Violation of Due Process Clause of the Fourteenth Amendment, U.S. Constitution and 42 U.S.C. § 1983; and,

7.     Declaratory Relief.

On April 3, 2009, the County filed its Answer to Plaintiffs' TAC, denying the majority of the allegations contained therein, and setting forth sixteen Affirmative Defenses styled as:

1.     Failure to state a sufficient cause of action;

2.     County's acts or omissions were the result of exercise of discretion vested in it, or its agents and employees;

3.     The acts complained of were the acts or omissions of others, not the County;

4.     County acted win accordance with the California and federal constitutions, and its agents and employees acted within the scope of their employment;

5.     County acted in good faith and with a reasonable belief that is actions were lawful, and did not directly or indirectly breach a duty owed to Plaintiffs;

6.     County is immune pursuant to Government Code §§ 815, 815.2, 815.6, 818, 820.2, 820.4, 820.6, 820.9, 821.6, 830.6, 835, 844.6, and 845.6;

7.     Facts alleged in the TAC do not involve any custom, practice, procedure or regulation of County which caused a violation of a constitutional right, pursuant to Monell v. New York Dept. of Social Services (1978) 436 U.S. 658;

8.  Plaintiffs' claims barred by the statute of limitations;

9.  Plaintiffs' Failure to mitigate damages;

10.  Plaintiffs' Failure to comply with Government Torts Act, Gov. Code § 900 et seq.;

11.  First, Seventh, and Ninth Causes of Action do not support any constitutional tort;

12.  Seventh Cause of Action is barred as occurring more than two years prior to the date of filing this action;

13.  Claims are barred to the extent they rely on Merced County Resolutions 2007-57 and 2008-112, pursuant to Case Document 28;

14.  "Discretionary act immunity" regarding standards "determined to apply and contain landfill operations regarding solid waste, recycling and odor control and containment";

15.  Individual defendants are barred from pursuing any cause of action based on failure to file claim pursuant to the Government Tort Claims Act with respect to the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Causes of Action; and

16.  "Qualified immunity" in connection with the Seventh Cause of Action for violation of 42 U.S.C. § 1983.

***Plaintiffs' Summary Of Allegations***

The Plaintiffs own agricultural property located within one-half mile of the County's Highway 59 Landfill.  The Landfill consists of approximately 609 acres and is comprised of four (4) unlined waste containment unites of known as Units 1 through 4, one lined area known as Unit 5, a leachate retention pond, and three storm water retention ponds.  The facility is approximately six (6) miles north of the City of Merced and receives over 550 tons of solid waste per day.  Plaintiffs' property borders the Landfill (separated only by Highway 59).

The properties owned by Plaintiffs in the area relevant to this action are more particularly described as follows:

Highway 59 Landfill Area:

1.  Lot 1, APN: 052-150-013

2.  Lot 2, APN: 052-150-012

3.  Lot 3, APN: 052-150-010

4

4.       Lot 17, APN: 052-150-009

5.       Lot 18, APN: 052-150-011

6.       Lot 59, APN: 052-070-013

7.       Lot 60, APN: 052-070-011

Edendale and Canal Creek Waterway Areas:

1.       Lot 23, APN 052-080-008

2.       Lot 24, APN 052-080-007

3.       Lot 25, APN 052-080-006

4.       Lot 26, APN 052-080-015

5.       Lot 27, APN 052-080-014

6.       Lot 28, APN 052-080-013

7.       Lot 29, APN 052-080-012

8.       Lot 30, APN 052-050-030

9.       Lot 30, APN 052-080-011

10.     Lot 31, APN 052-080-009

11.     Lot 39, APN 052-040-080

12.     Lot 39, APN 052-090-036

13.     Lot 40, APN 052-040-084

14.     Lot 40, APN 052-090-037

15.     Lot 43, APN 052-040-078

16.     Lot 44, APN 052-050-031

17.     Lot 44, APN 052-040-079

18.     Lot 48, APN 052-050-026

19.     Lot 47, APN 052-050-027

20.     Lot 47, APN 052-080-016

21.     Lot 48, APN 052-050-026

22.     Lot 49, APN 052-050-025

23.     Lot 50, APN 052-050-032

| 1 | 24. | Lot 51, APN 052-050-024 |
|---|-----|-------------------------|
| 2 | 25. | Lot 52, APN 052-050-023 |
| 3 | 26. | Lot 53, APN 052-050-022 |
| 4 | 27. | Lot 55, APN 052-050-021 |
| 5 | 28. | Lot 56, APN 052-050-033 |
| 6 | 29. | Lot 56, APN 052-080-019 |
| 7 | 30. | Lot 57, APN 052-080-020 |
| 8 | 31. | Lot 57, APN 052-050-034 |
| 9 | 32. | Lot 58, APN 052-060-015 |
| 10 | 33. | Lot 58, APN 052-080-021 |
| 11 | 34. | Lot 58, APN 052-070-012 |
| 12 | 35. | Lot 58, APN 052-050-035 |

13   Plaintiffs do not own the lots collectively or jointly.  Rather, each lot is owned wholly by one

14 Plaintiff.  The parties agree to stipulate prior to trial as to the various ownerships among the Plaintiff

15 Entities of these above lots, and to jointly refer to them on a map for the Court's convenience and to ease

16 matters at trial.

17                                        ***Highway 59 Landfill Allegations***

18   Plaintiff alleges that the County operates the Highway 59 Landfill, and asserts claims based on

19 the County's negligent operation of, and efforts to expand, the Landfill.  Plaintiffs allege that through

20 operation of the Landfill, the County has discharged pollutants into the soil that have migrated onto and

21 under Plaintiffs' adjacent property, causing damage to the property and rendering it economically

22 worthless and unsalable.  Plaintiffs allege that expert testing conducted by Plaintiffs in 2008 and 2010

23 has demonstrated that toxic and hazardous substances have migrated from Defendant's Landfill through

24 soil gas onto and under Plaintiffs' property.  Plaintiffs content that this polluted soil gas has rendered the

25 affected property unsalable, with $0 market value.

26   Plaintiffs also contend that the wind carries debris, garbage, and rubbish from the Landfill onto

27 Plaintiffs' property, causing a continuous source of odor and windblown refuse.  Plaintiffs allege that

28 polluted surface waters drain from the Landfill onto Plaintiffs' property.

*Edendale and Canal Creek Allegations*

The Edendale and Canal Creeks run through Plaintiffs' properties.  Plaintiffs claim that through negligent creek maintenance, the County has caused damage to Plaintiffs' adjacent properties, including the accumulation of piles of deadfall, garbage and debris on Plaintiffs' property.

*Legal And Factual Issues Summarily Adjudicated*

Pursuant to the County's motion for summary judgment, the Court has granted the County summary adjudication as to several legal and factual issues.  Plaintiffs' claims, as set forth in the TAC, will be limited as follows:

1.     Plaintiffs cannot recover from any alleged damage in the Edendale and Canal Creek area caused by floods;

2.     Plaintiffs cannot recover for any alleged current groundwater contamination in Highway 59 Landfill area; as there is no current groundwater contamination;

3.     Plaintiffs cannot recover from any alleged unauthorized entry by County personnel, as there was no unauthorized entry by County employees on any of Plaintiffs' lands;

4.     Plaintiffs cannot recover based on allegations of County personnel dumping, as there is no evidence to support the allegation that County personnel dumped debris or garbage into the Edendale and Canal Creeks;

5.     Plaintiffs Bert Crane Orchards, LP, Mary Crane Couchman Trust, and Mary Crane Couchman Family Partnership, LP lack standing to assert claims based upon migration of soil contaminants onto their lands from the Highway 59 Landfill; any claims asserted by these Plaintiffs must be based upon the remaining factual allegations, if applicable;

6.     Karen Crane-McNab, LLC's trespass claim is limited to soil contamination allegations;

7.     Plaintiffs' negligence claim regarding operation of the Highway 59 Landfill is limited to soil contamination allegations;

8.     Plaintiffs' eighth (strict liability) cause of action has been dismissed as an independent cause of action, and summary adjudication as to that cause of action granted for Defendant.

**F.     Undisputed Facts**

The following facts are undisputed and require no proof at trial:

7

1.     Plaintiff Karen Crane-McNab, LLC is a California limited liability company, existing under the laws of the State of California, and doing business in the County of Merced.

2.     Plaintiff Bert Crane Orchards, L.P. is a California limited partnership, existing under the laws of the State of California, and doing business in the County of Merced.

3.     Plaintiff Mary Crane-Couchman Family Partnership, L.P. is a California limited partnership, existing under the laws of the State of California, and doing business in the County of Merced.

4.     Plaintiffs are, and at all relevant times were, the owners of property located in Merced County, CA.  The parcels relevant to this action are more particularly described by the Lot Numbers and Assessor's Parcel Numbers (APN) set forth in Section I(B) supra.  The parties agree to stipulate prior to trial as to the various ownerships among the Plaintiff Entities of these above lots, and to jointly refer to them on a map for the Court's convenience and to ease matters at trial.

5.     Defendant is a County duly organized under the laws of the State of California, and maintains and operates a municipal Landfill, known as the Highway 59 Landfill, located at 6040 N. Highway 59 in Merced County, which borders property owned by Plaintiffs.  This Landfill consists of four (4) unlined waste retention units known as Units 1 through 4, one lined area known as Unit 5, a leachate retention pond, and three storm water detention ponds. The Landfill is approximately six miles north of the City of Merced and received over 550 tons of solid waste per day.

6.     In the Court's Scheduling Conference Order (Doc. 57, at 4:25-6:21), the Court stated that the following is an admitted fact, which is "deemed proven without further proceedings": Defendant operates and maintains waterways commonly known as Canal Creek and Edendale Creek, which flow through or border property owned by Plaintiffs.  (Defendant now disagrees that this statement set forth in the Scheduling Conference Order is factually accurate.)

7.     Plaintiffs have never given Defendant permission or authorization to release hazardous materials, or any other pollutants, onto any parcel of real property owned by Plaintiffs.

8.     In the Court's Scheduling Conference Order (Doc. 57, at 4:25-6:21), the Court stated that the following is an admitted fact, which is "deemed proven without further proceedings": Defendant has never provided Plaintiffs with any release report, made pursuant to the California Civil Code, or any

other statute, regarding the release or potential release of hazardous materials onto or around Plaintiffs' property. (Defendant now disagrees that this statement set forth in the Scheduling Conference Order is factually accurate.)

9.     On or about April 17, 2008, Plaintiffs submitted a claim to Defendant County pursuant to the Tort Claims Act, setting forth substantially the same factual contentions and claims against the Defendant as set forth in the TAC.  Defendant denied Plaintiffs' claim.

10.     Plaintiffs cannot recover for any alleged damage in the Edendale and Canal Creek area caused by the 2006 flood.

11.     There is no groundwater contamination in Highway 59 Landfill area (Doc. 153, p. 27, lns. 15-16); therefore Plaintiffs cannot recover for any alleged groundwater conamination.

12.     Plaintiffs cannot recover for any alleged unauthorized entry by County personnel, as there was no unauthorized entry by County employees on any of Plaintiffs' lands.

13.     Plaintiffs cannot recover based on allegations of County personnel dumping, as there is no evidence to support the allegation that County personnel dumped debris or garbage into the Edendale and Canal Creeks.

14.     The highest and best use of Plaintiffs' properties alleged to be contaminated or damaged by the Landfill is grazing.

15.     Defendant manages the Highway 59 Landfill for its owner, the Merced County Regional Waste Management Authority (JPA).  The JPA members are the County of Merced, and the cities of Los Banos, Atwater, Livingston, Dos Palos and Gustine.

16.     In April 1972, The County of Merced and the Cities of Los Banos, Atwater, Livingston, Dos Palos and Gustine entered into a joint powers agreement, amended and restated in 1995, 2000, and 2007.  [SS # 1.]

17.     The purpose of the joint powers agreement pertaining to the Highway 59 Solid Waste Facility was to regulate solid waste recyclable material and plant material collection in areas under their jurisdiction and award franchises for collection all in order to and in the interest of the health and safety of the citizens of the area.  [SS # 2.]

18.     In the recitals of the joint powers agreement for the Merced County Regional Waste

Management Authority state that the agencies "…are responsible for the health and safety of their citizens and to the end regulate Solid Waste, Recyclable Material, and Plant Material Collection in areas under their jurisdiction and ward franchises for Collection…." It is an essential part of Merced County's solid waste management. [SS # 3.]

19.     The Highway 59 Landfill began taking waste in September 1973. [SS # 4.]

20.     In December 2002, construction began on the "expansion" of the solid waste facility, though this additional cell is not yet operational. [SS # 5.]

21.     The Landfill disposes of non-hazardous waste (municipal solid waste) and has a class II hazardous waste surface impoundment for the storage of landfill leachate. It is a permitted facility to do so. [SS # 7.]

22.     The Highway 59 Landfill was constructed in accordance with all applicable laws in effect at the time. [SS # 10.]

23.     The Landfill is closely regulated by the California Regional Water Control Board. Numerous reports are sent to that and other agencies regarding management as well as gas and water monitoring. [SS #11.]

24.     Monitoring wells are located at numerous locations around the landfill.  [SS # 12.]

25.     The cell closest to Highway 59, Phase 5, was not used from about July 2009 to April 2010. There is a permanent, twelve-foot tall litter barrier along the western side of Phase 5 that was constructed in 1999. The landfill also uses temporary litter barriers to control blowing paper and plastic. Personnel also water down dust and litter to inhibit migration of litter. During the rare storms, the Landfill personnel erect additional temporary litter barriers. The Landfill began participation in the CalTrans Adopt-a-Highway program in 1999. The Landfill staff collects litter along approximately 7 miles of State Route Highway 59 from Olive Avenue to Oakdale Road. The Landfill received an award from CalTrans Adopt-a-Highway program in 2004 for volunteer of the year [SS # 13.]

26.     The Landfill has requirements that prohibit uncovered loads moving to its facility. A surcharge can be imposed for violations. [SS # 15]

27.     The Highway 59 Landfill has had a groundwater monitoring network in place since 1988, when it was first required by the State of California. Since that time, the monitoring well network has

evolved with some wells being replaced because they went dry or had an obstruction, and other wells have been added to further define groundwater conditions around the Landfill. The monitoring well network is in compliance with California Regional Water Control Board requirements and is similar to monitoring well networks at other operating landfills. [SS # 16]

28.     Engineered landfills are the most accepted and common method of municipal solid waste disposal. Highway 59 Landfill meets all location requirements of title 27 CCR and federal subtitle D. The extent of activity, and the Landfill size are consistent with MSW (municipal solid waste) disposal throughout the County. Landfills have long site lives and many are still in operation with some phases lined and other older phases unlined. Lining system requirements for MSW landfills evolved over time with changes in the State of California and federal regulations for MSW landfills. The first lined cells for MSW were required under CCR title 23, subchapter 15 in 1984. Subsequent lining, leachate collection, operations and quota requirements were promulgated under CCR title 14 in 1988 and Code of Federal Regulations 40 CFR 258 subtitle D in 1992. [SS # 20]

29.     LFG monitoring probes have been installed at the Landfill since the late 1980's. Currently, there are 34 LFG monitoring probes located on the Landfill, 22 of which are perimeter monitoring probes.   Although the LFG monitoring network has changed considerably over time, in response to changing State regulations in effect at the time. The network was consistent with the standard of care for LFG probes for LFG probes networks typically used at other landfills in California at those times. [SS # 24.]

30.     For the purposes of the action, Plaintiffs claim the diminution in value area from VOC's is related to where there is potentially some migration of pollution or VOC's from the solid waste facility and Plaintiffs defer to the Geomatrix experts. [SS # 29.]

31.     No one currently lives on any of the land involved in the lawsuit. Other than in 2009 on parcel 21 [well away from the solid waste facility and Castle Dam] no one has ever lived on the property involved in the lawsuit. [SS # 68.]

32.     In August 2002, Bert A. Crane, Mary Crane Couchman, Bert Andrew Crane, Karen Nancy Crane, Bert S. Crane, Nancy Crane and Central Valley Farm Credit signed and recorded a final map of China Cabin Ranch, subdivision application number 98005. The final map was approved and

1   recorded in August, 2002. [SS # 69.]

2       33.    Lots 1 through 3 (APN's 052-150-010, 052-150-012, 052-052-013) of China Cabin Ranch

3   denote a wetland preserve created by virtue of the approval of the final subdivision map and as

4   mitigation. [SS # 70.]

5       34.    The limitations of the wetlands preserve include prohibitions of agricultural activity

6   involving deep tilling within 50 feet of the wetland preserve, plowing, cultivation, leveling, grading, or

7   landscaping. [SS # 71.]

8       35.    Cattle has been, and continues to be, grazed on the area across from the landfill, since

9   about 1924. There has been no break in renting. [SS # 74.]

10      36.    The southeastern portion of the ranch and portions in the Castle Dam are rented for

11  grazing. [SS # 76.]

12      37.    Crane cannot conclude as to whether there is more or less damage to trees or irrigation

13  equipment than anywhere else. [SS # 86.]

14      38.    Contrary to the allegations of the complaint, Bert Crane does not believe there is a danger

15  to people passing on the property west of Highway 59 for working, walking, driving or standing. [SS

16  # 87.]

17      39.    Bert Crane has never cautioned anybody about any kinds of dangers on the properties

18  from pollutants.  [SS # 88.]

19      40.    Mary Crane Couchman is unaware of having to pay any money to remediate

20  contamination to allow agricultural or other commercially productive uses of property. [SS #92.]

21      41.    It had been years since Karen McNab found an offensive smell from the landfill. [SS #

22  93.]

23      42.    The County has not received any complaints regarding odor. [SS # 94.]

24      43.    Wind blows away from the Crane property and towards the solid waste facility the

25  majority of the time, only changing directions with rare storms. [SS # 111.]

26      44.    Mary Crane Couchman has no idea as to how often trash may blow onto her property

27  from the waste facility. [SS # 113.]

28      45.    The landfill has requirements that prohibit uncovered loads moving to its facility a

1   surcharge can be imposed for violations. [SS # 114.]

2   46.   It is not unique for people to simply dump trash out of their windows along the ranch.

3   This is prevalent throughout all rural areas. [SS # 117.]

4   47.   Ninety percent of the traffic comes from the South of the Crane's properties and would

5   therefore turn into the solid waste facility. Coming from the other direction, sometimes trash will swirl

6   out of the garbage trucks if they do not have their flaps. [SS # 118.]

7   48.   The reservoir pool area, that is, the area where the water is generally held, and parts of

8   the dam are owned by other public entities. [SS # 121.]

9   49.   The construction of Castle Dam and Reservoir Unit was authorized by the Flood Control

10   Act of 1970 in accordance with the Chief of Engineers, U.S. Army Corps of Engineers. [SS # 122.]

11   50.   The construction work consisted of construction of zoned earthfill embankment dam,

12   concrete spillway, outletworks, earth dikes and miscellaneous site work. There were modifications to

13   gate turnouts on creeks, including Canal Creek.  [SS # 123.]

14   51.   In order to build the dam and reservoir, the United States Government took certain land

15   for easements by fee, from certain of the Cranes. On March 16, 1993, the United States of America filed

16   an amended complaint in condemnation, case no. CV-F-89-582 REC in the U.S. District Court of the

17   Eastern District of California. [SS # 124.]

18   52.   The case of CV-F-89-582 REC was consolidated with CV-F-89-586 MDC. [SS # 125.]

19   53.   An Amendment to Declaration of Taking was filed the same day as the amended

20   complaint (March 16, 1993) to broaden the area of the taking. [SS # 126.]

21   54.   The taking involved a fee taking of the area of the dam, a permanent mitigation area, a

22   permanent flood easement defined as "permanently to overflow, flood and took certain land for

23   easements by fee, from certain of the Cranes. On March 16, 1993, the United States of America filed

24   an amended complaint in condemnation, case no. CV-F-89-582 REC in the U.S. District Court of the

25   Eastern District of California [SS # 128.]

26   55.   The parties in the eminent domain case stipulated to the total acreage and interests

27   acquired. [SS # 129.]

28   56.   The Cranes' trial brief acknowledged the purpose of the dam was for flood control and

1   that water would divert water onto the Crane property. The Crane's trial brief noted the land could be

2   used to the fullest extent, including to whatever Congress or Executive order might permit, "including

3   recreational uses." [SS # 130.]

4       57.     Crane's trial brief argued and indicated its witnesses would testify, that even flooding of

5   short duration "is devastating on permanent plantings." [SS # 131.]

6       58.     Crane's trial brief stated, they would present testimony that "…no reasonable owner

7   would consider the land for development to permanent plantings when the potential for such flooding

8   exists." [SS # 132.]

9       59.     Crane's trial brief emphasized a buyer would not develop the land to permanent plantings

10   in the occasional flowage easement due to the risk of flooding, and the financial, surveying and

11   regulatory uncertainties in the easement. [SS # 133.]

12       60.     Mary Crane Couchman testified in her deposition for the earlier eminent domain case that

13   the dam was "very unnecessary and it has ruined our property. It will be very hard to operate a cattle

14   operation around it or even to plant any type of orchards around it and the easements." [SS # 134.]

15       61.     Mary Crane Couchman testified in the earlier eminent domain case that she knew the

16   occasional flowage easement was for when the waters "backed up to a certain point" and denied

17   knowledge as to how often that would occur. [SS # 135.]

18       62.     Mary Crane Couchman testified [in the earlier eminent domain case] flooding in the

19   occasional flood easement would affect cattle movement. [SS # 136.]

20       63.     Mary Crane Couchman testified [in the eminent domain case] she would be "hesitant"

21   to till, plant or cultivate for an orchard because she would need governmental approval. [SS # 137.]

22       64.     Mary Crane Couchman testified a tree could not be flooded for more than a couple of

23   days without suffering damage. [SS # 138.]

24       65.     The only time flood water intruded into a portion of the occasional flood easement was

25   for a two week period in 2006.  [SS # 140.]

26       66.     Bert A. Crane (Bert Jr.) testified in his deposition in the earlier eminent domain case that

27   debris comes down the creek and that more maintenance could be required. [SS # 141.]

28       67.     Bert A. Crane testified in the earlier eminent domain case deposition that the occasional

14

1   flowage easement would "severely impact' the ability to plant and maintain an orchard due to permits

2   and flooding. [SS # 142.]

3       68.     The United States originally deposited the sums of $373,000 for the 1,261.21 case (582)

4   and $67,200 for the second case (586). [SS # 143.]

5       69.     The jury verdict in the eminent domain case awarded $1,030,000.00 for the 1,261.21 acres

6   and $175,000.00 for the 294.10 acres. Plaintiffs were paid. [SS # 144.]

7       70.     In April 1995, the California Reclamation Board accepted work and transferred the

8   completed work to the County of Merced for operation and maintenance in accordance with the local

9   cooperation agreement, Title 33, CFR, part 208-flood control regulations and section of the California

10  Water Code. [SS # 145.]

11      71.     MID uses Canal Creek and Edendale Creek to provide irrigation water to its customers.

12  [SS # 151.]

13      72.     The takings for Castle Dam involve permanent and occasional flood easements as defined

14  [SS # 154.] in the eminent domain pleadings, court filings and China Cabin Ranch maps true copies of

15  which were attached to the motion for summary judgment as Exhibits 15, 27-35 .

16      73.     It is not unique for people to simply dump trash out of their windows along the ranch.

17  This is prevalent throughout all rural areas.  [SS # 160.]

18      74.     Cranes have not picked up any debris along Canal Creek because they do not consider

19  it their responsibility and therefore they have left the material there. [SS # 164.]

20      75.     Some debris drifting in the Canal Creek would be expected whenever there is a rain,

21  regardless of the Dam. In a flood situation, this would be expected to stay at the time the water recedes.

22  Mary Crane Couchman's almond orchard, planted in the easement, is a potential source for debris. [SS

23  # 166.]

24      76.     The water in Canal Creek going to Castle Dam has never left the flood easement.  [SS

25  # 170.]

26      77.     Mary Crane Couchman planted the almond trees away from Buhach Road because of

27  traffic and trying to keep people out of the orchard. From time to time people go into orchards and she

28  wanted to keep equipment away from the public because they will enter the property, play with the

15

1  equipment and steal. Also, the area of Winton nearby is known for drug problems and gangs so the

2  property is a buffer from the public. [SS # 171.]

3     78.     The flood brought debris with it. [SS # 175.]

4     79.     Mary Crane Couchman cannot determine how much of the debris at the Dam from trees,

5  sticks, and garbage debris came from her own land. Plaintiffs took no steps to ensure their debris did not

6  clog the creek. [SS # 176.]

7     80.     Control of the area is not exclusive: Several entities and people have access to the locks

8  at the ranch gates, including, for example, PG&E, MID, each of the Plaintiffs. MID enters to maintain

9  and operate the facility and its ownership of Canal Creek. [SS # 183.]

10     81.     Contrary to the allegations of the complaint, Mary Crane Couchman has no knowledge

11  of any County employee dumping pollutants or debris onto her property.  [SS # 184.]

12     82.     Karen Crane McNab is unaware if any debris on her property is located in the permanent

13  or occasional flood easements [SS # 186.]

14     83.     As to the area along Canal Creek, cattle still graze in the area and there has been no break

15  in such grazing and no reduction in rent: $28/acre per year. [SS # 189.]

16     84.     Along Canal Creek, a tenant grazing cattle permits his cattle to go in areas where they

17  are not supposed to go, but Bert Crane has not told him to stop doing so. [SS # 190.]

18     85.     Mary Crane Couchman understood she was planting the orchard within the flood

19  easement. [SS # 193.]

20     86.     When Mary Crane Couchman replanted almond trees, she did so within the flood

21  easement again, prepared to take the risk of damage. [SS # 195.]

22     87.     A permit to plant an orchard in the easement was required. (23 C.C.R. §6) This would

23  require approval by the County. (23 C.C.R. §7.) However, Plaintiff never obtained County approval. [SS

24  # 197.]

25     88.     The water had never been as high from Canal Creek since the 2006 flood.  [SS # 199.]

26     89.     The California Division of Dam Safety has never express dissatisfaction with the

27  maintenance of the Castle Dam area. [SS # 200.]

28     90.     Mary Crane Couchman does not know what property might have been rendered unfit for

16

agricultural or other commercially valuable uses because of actions of the County, contrary to the allegations to the complaint. [SS # 201.]

91.     Mary Crane Couchman and her entities did not suffer any loss of rental properties.  [SS # 203.]

92.     Any crop losses were in the flood easement. [SS # 204.]

93.     Karen Crane McNab had not been out to the properties along Canal Creek in about 4 years prior to her April, 2010, deposition. [SS # 205.]

94.     MID owns in fee Canal Creek from Oakdale Road to Castle Dam and conveyed flood easements to the federal government for the flood project. [SS# 148 and 149.]

95.     Mr. Reichmuth's rendering generally shows the locations of the flowage easements and takings as well as the 2006 flooding high marks.  (However, the parties agree to later stipulate to a more accurate depiction of these locations.)

**G.     Disputed Facts**

***Plaintiffs' Disputed Facts***

1.     Whether some of the Undisputed Facts listed above are irrelevant and/or admissible.

2.     Whether, through operation of the Highway 59 Landfill, or by any other means, Defendants have discharged pollutants onto or into the soil of Plaintiffs' property.  (Some of the disputed factual issues set forth below necessarily contain mixed issues of law and fact.)

3.     Whether hazardous materials have been released or migrated from the Landfill into Plaintiffs' property.

4.     Whether hazardous materials, including but not limited to volatile organic compounds, have been released from the Landfill in the landfill gas generated at the site, and traveled into Plaintiff Karen Crane-McNab, LLC's property.

5.     Whether debris is blown from waste-hauling trucks and other vehicles en route to the Landfill and onto Plaintiffs' property.

6.     Whether debris, garbage, and rubbish is carried by the wind and other vectors from the Landfill onto Plaintiffs' property.

7.     Whether Defendant's Highway 59 Landfill emits foul odor, generates excessive noises,

creates a large concentration of mosquitoes, flies, and other pests and vermin; and, whether such substances, noise, odor, and pests have and/or will continue to invade Plaintiffs' property.

8.    Whether Defendant has altered the natural drainage patterns, or otherwise directed surface waters from Defendant's property to Plaintiffs' property.

9.    Whether, in operating and maintaining the Edendale Creek and Canal Creek waterways, Defendant has caused to be placed on Plaintiffs' lands debris, dead-fall, and garage from the Canal Creek and Edendale Creek Waterways and possibly other locations, without Plaintiffs' consent, permission, and/or authorization.

10.    Whether Plaintiffs have requested that Defendant discontinue placing dead-fall, debris, and garbage gathered from the aforementioned waterways onto Plaintiffs' property, and whether Defendant has complied with such requests.

11.    Whether Defendant has failed to maintain adequate gates, locks, or other security means in place, which has resulted in third parties entering Defendant's property, as well as Plaintiffs' property, from Defendant's property and/or areas under Defendant's control.

12.    Whether Defendant released a "reportable quantity" of hazardous materials onto or near Plaintiffs' property without authorization under state law; and, whether defendant provided any warning or any requisite "release report" regarding said release of hazardous materials, as required under the California Civil Code and/or the California Health and Safety Code.

13.    Whether landfill gas migrated from the Highway 59 Landfill to Plaintiff Karen Crane-McNab, LLC's adjacent property.

14.    Whether Defendant's alleged disposal of hazardous materials and various volatile organic compounds onto Plaintiff Karen Crane-McNab, LLC's property, and into the soil of said property, has been the actual and proximate cause of damage to said property, including physical damage and diminution in value.

15.    Whether, in or about 2006, defendant became aware of a possible release of hazardous materials on its property; whether defendant knew of the hazardous nature and risks that these materials posed to persons and property in the vicinity; and, whether defendant failed to inform neighboring residents and neighboring landowners, such as Plaintiffs, of the release.

16.    Whether the release of hazardous substances and/or volatile organic compounds onto Plaintiff Karen Crane-McNab, LLC's property would pose a health risk to Plaintiff's guests, family members, employees, or invitees who traveled onto the property.

17.    Whether, by releasing hazardous materials onto and around Plaintiff Karen Crane-McNab, LLC's livestock grazing properties, Defendant created a risk that such contaminated livestock would be sold to the public and consumed, posing health risks to consumers and exposing plaintiffs to civil lawsuits.

18.    Whether remedial measures, including but not limited to a landfill gas extraction system on Plaintiff's property, could effectively remove any landfill gas contamination currently present on Plaintiff's property.

19.    Whether a landfill gas extraction system (or similar remedial measures) located on the Landfill property could effectively remove any landfill gas contamination currently present on Plaintiff's property, and/or effectively prevent further future contamination from landfill gas.

20.    Whether the Highway 59 Landfill is currently, and/or recently has been, in violation of any local, state or federal regulations or standards regarding pollution from the Landfill or operation of the Landfill.

21.    Whether the landfill gas extraction system installed on the Highway 59 Landfill in 2002 has been effective in controlling off-site migration of landfill gas to properties adjacent to the Landfill.

22.    Whether volatile organic compounds found in the soil beneath Plaintiffs' property were the result of a "fuel spill" or from transportation and/or farming activities in the area.

23.    To the extent hazardous materials from the Highway 59 Landfill have now polluted Plaintiff's property, whether this has resulted in a partial or complete diminution of the market value of the affected property.

24.    Whether or not the polluted soil gas Plaintiffs allege exists below Lot one has the potential to migrate into the groundwater below that property in the future, and whether this potential migration to groundwater further lessens the value of the property.

25.    Whether the potential for the polluted soil gas mentioned in item 24, above, to migrate into and pollute the groundwater necessitates prompt remedial measures to remove this polluted soil gas,

1   and whether the cost of those remedial measures contribute to Plaintiff's damages.

2       26.     Whether Defendant, and/or its agents or employees, have ever removed any garbage, tires,

3   driftwood or other debris from the Edendale or Canal Creek waterways, so as to remove flow

4   obstructions or otherwise maintain these waterways.

5       27.     Whether any acts or omissions by Defendant or its agents or employees in maintaining

6   the Edendale Creek or Canal Creek waterways has resulted in any damage to Plaintiffs' adjacent

7   properties.

8       28.     Whether the current LFG network is in compliance with current regulatory requirements.

9       29.     Whether Bert Crane disked the wetland preserve preliminary to the sampling; he has

10  disked the area along Highway 59. [SS # 56.]

11      30.     Whether a railroad used to run along the boundary of the CalTrans right of way and the

12  Crane's property.  [SS # 57.]

13      31.     Whether there is also a jeep trail going through the wetland preserve, which is shown on

14  the assessors' map. [SS # 59.]

15      32.     Whether the jeep trail on the property along Highway 59 is used by motor vehicles. [SS

16  # 60.]

17      33.     Whether trucks are parked on the area across from the Highway 59 Landfill in order to

18  conduct cattle round-ups. [SS # 61.]

19      34.     Any back up was a result of a planned dam closure due to rain, as in 2006. Obstructions

20  have never interfered with the proper operation of the dam.  [SS # 158]

21      35.     In 1994, Bert Crane, Jr, Mary Crane Couchman and Karen Couchman obtained a permit

22  from the California Reclamation Board to plant an orchard or vineyard in the flood easements.

23  However, the permit required them to give the State 10 days notice before beginning.  They did not do

24  so.  The permit required them to obtain County of Merced approval to begin.  They did not do so.  The

25  permit required them to maintain the orchard/vineyard in such a manner as to not interfere with the

26  operation of the flood control project.  The permit required them to maintain the area as requested by

27  any agency responsible for its maintenance.  The permit required them to completely remove any

28  accumulations of debris.  They have not done so.  The permit requires them to defend and indemnify the

County for any claim of liability against the County arising out of the failure to perform the obligations under the permit.

36.     Exhibit 16 to the motion for summary judgment, based on assessor's maps, properly shows who owns which properties.

### *The County's Disputed Facts*

1.     Whether there is soil contamination on Karen Crane-McNab, LLC's Lot 1, near the Highway 59 Landfill.

2.     Whether any such soil contamination on Lot 1 caused damage to the property.

3.     Whether any such soil contamination on Lot 1 caused diminution of value of the lot.

4.     Whether any, and if so, how much, such soil contamination emanated from the Landfill to Lot 1.

5.     If soil contamination emanated from the Landfill to Lot 1, when did it do so, and whether it continues.

6.     If soil contamination emanated from the Landfill to Lot 1, was this a result of County's negligence.

7.     Whether trash, odors and refuse blows on Plaintiffs' Highway 59 Landfill lands from the Landfill, and if so, the quantity and if this is constant.

8.     Whether such blowing trash, odors and refuse was the result of a condition created by Defendant that was harmful to health, indecent or offensive to the senses or obstructed the free use of property so as to interfere with the comfortable enjoyment of the property by the Plaintiff.

9.     Whether such blowing trash, odors and refuse was such that a reasonable person would be reasonably annoyed or disturbed by Defendant's conduct.

10.     Whether such blowing trash, odors and refuse was a substantial factor in causing harm to each Plaintiff.

11.     Whether such blowing trash, odors and refuse created harm was so serious as to outweigh the public benefit of Defendant's conduct.

12.     Whether Plaintiffs suffered damages related to the Highway 59 Landfill lands.

13.     Whether County's maintenance of Edendale and Canal Creek waterways have harmed

1    Plaintiffs.

2    14.    Whether such maintenance caused physical damage to property or diminution of property.

3    15.    Whether Plaintiffs suffered damages due to odor from the Highway 59 Landfill.

4    16.    Whether the County's actions were unreasonable.

5    17.    Whether Plaintiffs suffered damages due to alleged altered natural drainage patterns.

6    18.    Whether such maintenance caused any damages, and if so, what damages.

7    19.    Whether Plaintiffs suffered damages due to vermin and such constituted a nuisance.

8    20.    Whether there was a tortious lack of security and resulting damages caused thereby.

9    21.    Whether Plaintiffs suffered damages related to debris, deadfall, garbage and lack of
10   security relating to Edendale and Canal Creek and such constituted a nuisance.

11   22.    Whether defendants altered natural drainage patterns and such caused recoverable
12   damages to plaintiffs.

13   **H.    Special Factual Information**

14   *Plaintiffs' Information*

15   Plaintiffs' version of the special factual information is substantially set forth above.  To wit, as
16   to the allegations involving operation of the Highway 59 Landfill, Plaintiffs allege that the County
17   operates the Highway 59 Landfill (located at 6040 N. Highway 59 in Merced County), and asserts claims
18   based on the County's negligent operation of, and efforts to expand, the Landfill.  Plaintiffs allege that
19   through operation of the Landfill, the County has discharged pollutants into the soil that have migrated
20   onto and under Plaintiffs' adjacent property, causing damage to the property and rendering it
21   economically worthless and unsalable.  Plaintiffs allege that expert testing conducted by Plaintiffs in
22   2008 and 2010 has demonstrated that toxic and hazardous substances have migrated from Defendant's
23   Landfill through soil gas onto and under Plaintiffs' property.  Plaintiffs content that this polluted soil gas
24   has rendered the affected property unsalable, with $0 market value.  Pursuant to the Court's ruling on
25   the County's motion for summary judgment, only Plaintiff Karen Crane-McNab, LLC has standing to
26   assert claims based on soil gas pollution, and only as to the affected lot(s) this Plaintiff owns - i.e. Lot
27   1, APN: APN: 052-150-013.  Thus, Plaintiffs' claims and allegations regarding soil gas pollution and
28   migration from the Highway 59 Landfill will be accordingly limited to this Plaintiff and this parcel.

Plaintiffs also contend that the wind carries debris, garbage, and rubbish from the Landfill onto Plaintiffs' property, causing a continuous source of odor and windblown refuse.  Plaintiffs allege that polluted surface waters drain from the Landfill onto Plaintiffs' property.  The affected parcels are as follows:

1.      Lot 1, APN: 052-150-013

2.      Lot 2, APN: 052-150-012

3.      Lot 3, APN: 052-150-010

4.      Lot 17, APN: 052-150-009

5.      Lot 18, APN: 052-150-011

6.      Lot 59, APN: 052-070-013

7.      Lot 60, APN: 052-070-011

Plaintiffs contend that the doctrine of res ipsa loquitur is applicable in that Defendant County's negligence speaks for itself.  At all relevant times, the County was in full and exclusive control and management of the Landfill, and of the Edendale and Canal Creek waterways.  Had the County managed and operated its Landfill in a responsible, prudent, and non-negligent manner, toxic substances would not have leached from the Landfill and polluted adjacent properties such as Plaintiffs', nor would trash, debris, and odors constantly emanate from the Landfill onto Plaintiffs' property.  Further, had the County maintained its waterways in a responsible, non-negligent manner, Plaintiffs' adjacent properties similarly would not have been damaged by the accumulation of garbage and debris.  Because Defendant had exclusive control and management of the land, equipment, and activities conducted, it possessed superior, if not exclusive, information, and control concerning the precise cause of damage suffered by the Plaintiffs' land and Plaintiffs rely on the negligence of Defendant as inferred from the general situation alleged in the TAC.

Plaintiffs allege and assert that in so engaging in the acts or omissions set forth above, Defendant has violated at least the following statutes, ordinances and/or regulations:  (1) Civil Code § 851 (failure to provide owner of release site with report of release of hazardous materials); (2) Civil Code § 3479 (acts constituting nuisance); (3) Cal. Code of Civ. Proc. § 1021.9 (attorney's fees for trespass on livestock lands); (4) Health & Safety Code § 25189(c) and (d) (negligent and intentional disposal of

23

hazardous waste in an unauthorized manner); (5) Health & Safety Code § 25359.4 (release of reportable quantity of hazardous substances without reporting said release); (6) Penal Code §§ 601, 602 (acts constituting trespass); 42 U.S.C. § 1983 (civil action for deprivation of civil rights); (7) Federal Constitution, Fifth Amendment (inverse condemnation); (8) California Constitution, Art. I, sec. 19 (inverse condemnation).

Plaintiffs seek general and specific damages based on damage done to their property and remediation costs, in an amount subject to proof at trial. Further, Plaintiffs seek attorney's fees and expert witness fees, in an amount subject to proof, for trespass to cattle grazing lands pursuant to Cal. Code of Civil Proc. § 1021.9.

## I.    Claims and Relief Sought

### *First Cause of Action*

1.    Actual damages suffered by each Plaintiff according to proof, as determined by the amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or omissions; damages in an amount sufficient to cover costs associated with remediating the property; with interest thereon at the legal rate from the date of damages.

2.    Reimbursement of reasonable cost disbursements and expenses, including reasonable attorneys' fees, incurred by the Plaintiffs because of the instant proceeding, pursuant to California Code of Civil Procedure Section 1036 and Title 42 U.S.C. Section 1983 and 1988.

### *Second Cause of Action*

1.    Actual damages suffered by each Plaintiff according to proof, as determined by the amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or omissions; damages in an amount sufficient to cover costs associated with remediating the property; with interest thereon at the legal rate from the date of damages.

2.    Reimbursement of reasonable cost disbursements and expenses, including reasonable attorneys' fees, incurred by the Plaintiffs because of the instant proceeding, pursuant to Cal. Code of Civil Procedure §1021.9.

### *Third Cause of Action*

1.    Actual damages suffered by each Plaintiff according to proof, as determined by the

1  amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or

2  omissions; damages in an amount sufficient to cover costs associated with remediating the property; with

3  interest thereon at the legal rate from the date of damages.

4        2.      Reimbursement of reasonable cost disbursements and expenses, including reasonable

5  attorneys' fees, incurred by the Plaintiffs because of the instant proceeding pursuant to Code of Civil

6  Procedure §1021.5 because Plaintiff is seeking enforcement of important rights affecting the public

7  interest, and a significant benefit will be conferred on the general public or a large class of persons, the

8  necessity and the financial burden of private enforcement make an award of attorneys' fees appropriate,

9  and such fees should not, in the interest of justice, be paid out of any recovery Plaintiff may obtain.

10                                  ***Fifth Cause of Action***

11        1.      Actual damages suffered by each Plaintiff according to proof, as determined by the

12  amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or

13  omissions; damages in an amount sufficient to cover costs associated with remediating the property; with

14  interest thereon at the legal rate from the date of damages.

15                                  ***Sixth Cause of Action***

16        1.      Actual damages suffered by each Plaintiff according to proof, as determined by the

17  amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or

18  omissions; damages in an amount sufficient to cover costs associated with remediating the property; with

19  interest thereon at the legal rate from the date of damages.

20                                  ***Seventh Cause of Action***

21        1.      Actual damages suffered by each Plaintiff according to proof, as determined by the

22  amount of diminution in Plaintiffs' property value as a direct or proximate result of Defendant's acts or

23  omissions; damages in an amount sufficient to cover costs associated with remediating the property; with

24  interest thereon at the legal rate from the date of damages.

25        2.      Reimbursement of reasonable cost disbursements and expenses, including reasonable

26  attorneys' fees, incurred by the Plaintiffs because of the instant proceeding, pursuant to Title 42 U.S.C.

27  Section 1983 and 1988.

28  / / /

*Tenth Cause of Action*

1.      For a judicial declaration that the Defendant has no ownership, title, and/or right to use the Plaintiff's property and no right or entitlement to discharge waste, debris, water, garbage or other pollutants onto the Plaintiffs' property, and a declaration as to the parties rights relating thereto.

*As to All Causes of Action*

1.      Injunctive relief:

        a.      For an Order, as specified in the Third Amended Complaint, barring the Defendant, its employees, agents, and other third parties acting on its behalf, and all persons having knowledge of the Order, from trespassing on or under the property, depositing surface water, debris, garbage, toxic or harmful substances and/or any other substance, chemical, gas, or items or effluent on or under the Plaintiffs' property, or otherwise invading, entering, or entering the Plaintiffs' property.

        b.      For an Order requiring Defendant to remediate and remove ("clean-up") all discharge or pollutions or chemicals which previously emitted from the Landfill onto or under Plaintiffs' property.

        c.      For an Order requiring Defendant to institute reasonable preventive measures to keep chemicals, gases, and all other items from migrating or moving from the Landfill onto or under Plaintiffs' property; such as by installing a landfill gas extraction system on the Landfill's property.

**J.      Disputed Evidentiary Issues**

*Plaintiffs' Disputed Evidentiary Issues.*

Plaintiffs anticipate the following evidentiary issues and/or motions in limine.

1.      The County contends that the Court should hold preliminary Daubert or other FRE 104 hearings as to the issue of whether Plaintiffs can prove VOC's migrated from the Landfill to Plaintiff Karen Crane-McNab's property.  However, the County was denied summary judgment on this same issue, and the County's Daubert and FRE objections were already rejected by the Court.  (Doc. 153, 14:20-23.)  Thus, there is no need for preliminary evidentiary hearings.

2.      The County will seek via motion in limine to exclude the testimony of Mr. McGill on the basis that he was allegedly not disclosed to the County prior to the County's motion for summary judgment.  However, Plaintiffs have since made supplemental disclosure of Mr. McGill and the nature

of his testimony under Rule 26(e); said supplements were done at the same time that the County supplementally added two witnesses never previously discussed.  Further, Plaintiffs' counsel discussed Mr. McGill and his potential testimony with defense counsel prior to the initial disclosures and discussed Mr. McGill's testimony (as a tenant on the Plaintiffs' farm) during the Plaintifs' depositions.  Thus, any such failure to formally disclose was "harmless" under FRCP 37(c)(1). Although Mr. McGill's declaration was excluded from the Plaintiffs' opposition brief to the Defendant's motion for summary judgment, those issues remain for trial and defense counsel has Mr. McGill's trial testimony in the declaration.

3.     The County has previously raised certain discovery disputes with the Court which resulted in certain evidence exclusion sanctions being imposed by Magistrate Judge Snyder.  Judge Snyder's evidence exclusion sanctions Order (Doc. 155) limits Plaintiffs' use of certain proffered evidence in the following ways:

a.     Any new opinions, data or analysis contained in Plaintiffs' experts' "third" report (prepared by Messrs. Souther and Ross and provided to Defendant at Mr. Ross' July 9, 2010 deposition) which were not earlier included in any of these experts' earlier reports, is excluded and may not be used for any purpose.

b.     Plaintiffs' expert appraiser Mr. Lien's 55-page report, and any analysis, opinions, or testimony based thereon, which were not included in his earlier 6-page report, is excluded and may not be used for any purpose.

Plaintiffs will seek to limit the evidence presented at trial accordingly.

### The County's Disputed Evidentiary Issues

The County anticipates the following evidentiary issues and motions in limine.

1.     As shown in the motion for summary judgment, Plaintiffs' cannot prove VOC's migrated from the Landfill to Lot 1, and if so, if they caused damages.  These thresholds create significant evidentiary foundational issues for which the court should hold Daubert or other FRE 104 hearings.

2.     Motion to exclude the testimony of Jeffrey Lien for the following reasons:

a.     His original report did not appraise the sole parcel where a plaintiff can claim diminution. His opinion is thus irrelevant.  His subsequent report was excluded as a discovery sanction.

27

1    b.  His testimony is based on the unsupported conclusion of migration and is

2 therefore irrelevant.  A foundation must first be shown.

3    3.  Motion to exclude all evidence regarding risk from VOC migration.  The sole testimony

4 regarding risk was from Mr. Souther.  He testified he was not a toxicologist and did not perform, or have

5 performed, the proper test to determine risk, i.e., the Johnson-Etinger Model.  Instead, he simply

6 compared test results with a CHSLS chart which expressly states is not to be used for risk assessment.

7 Moreover, the chart's presumptions, such as soil types and the depth of the VOC's are different.  It is also

8 for a closed building.  There is no expertise to enable an expert opinion pursuant to FRE's 702 and 703

9 and his opinion is irrelevant.

10    4.  Motion to exclude any opinions regarding landfill gas migration from Mr. Souther or Mr.

11 Ross regarding remediation methods as neither has expertise in the subject.  This was exclusively within

12 Mr. Souther's testimony at deposition.  He testified his company has some experience in the area.  He

13 has no experience in remediation of landfill gas.  Moreover, as his methodology and background are not

14 consistent with accepted scientific or regulatory procedures and should be excluded pursuant to FRE 702

15 and 703, as well as Daubert. This was addressed in the objections to his declarations in the opposition

16 to the motion for summary judgment.

17    5.  Motion to exclude any opinions regarding landfill gas or risk from Mr.  Ross on the

18 following grounds:

19    a.  He expressly testified that Mr. Souther, rather than he, should be questioned

20 regarding gas and he should now be estopped from providing such testimony;

21    b.  His methodology and background are not consistent with accepted scientific or

22 regulatory procedures and should be excluded pursuant to FRE 702 and 703, as well as Daubert.  This

23 was addressed in the objections to his declarations in the opposition to the motion for summary

24 judgment.

25    6.  Motion to exclude any opinions regarding landfill gas migration from Mr. Souther as his

26 methodology and background are not consistent with accepted scientific or regulatory procedures and

27 should be excluded pursuant to FRE 702 and 703, as well as Daubert. The basis for this motion was

28 addressed in the objections to Mr. Souther's declarations in the opposition to the motion for summary

1    judgment.  Among other things, he testified that if he were to have been retained by a public entity to

2    search for VOC migration instead of retained for litigation, he would have performed his tasks

3    differently.  The difference would have been consistent with current science and standards:  more test

4    areas and searching for methane.  The lack of care in performing the tasks is a factor in Daubert

5    exclusion.  See, e.g., Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 942 (7th Cir. 1997).

6          7.     Motion to exclude the testimony of Mr. McGill.  Mr. McGill's declaration was excluded

7    from the opposition of the motion for summary judgment for failure to disclose and because his

8    testimony was contrary to the clear testimony of the Plaintiffs.  It should be similarly excluded from trial.

9    Also, a foundation of relevance should first be presented at an FRE 104 hearing.

10         8.     Motion to exclude all evidence regarding inverse condemnation claims pertaining to

11   Canal Creek/Edendale Creek/Castle Dam without a preliminary showing under FRE 104 of physical or

12   diminution damages, damages beyond the scope of taking in the eminent domain action, causation by

13   the County (as contrasted from Canal Creek, owned by MID, or Plaintiffs being the source) and any lack

14   of reasonableness (Burrows v. State, 260 Cal.App.2d 29 (1968).  Moreover, negligent operation of a

15   project, such as negligence in maintaining a drainage ditch by removing debris, cannot support inverse

16   condemnation.  (Bauer v. County of Ventura, 45 Cal.2d 276, 286-287 (1955).)

17         9.     Exclude all evidence regarding future groundwater contamination, based on the Motion

18   for Summary Judgment Ruling, and such claims would be speculative.

19   **K.     Disputed Legal Issues/Points Of Law**

20         ***First Cause of Action -- Inverse Condemnation under United States Constitution,***

21              ***Fifth Amendment; California Constitution, Article 1, Section 19***

22                        <u>Plaintiffs' Theory of Recovery</u>

23         Through the negligent and otherwise improper operation of its Highway 59 Landfill, and the

24   negligent maintenance of the Edendale Creek and Canal Creek waterways, Defendant County has caused

25   toxic VOC's and other pollutants to migrate into the soil gas below Plaintiff Karen Crane-McNab, LLC's

26   property; trash and debris to constantly blow and accumulate on Plaintiffs' property; and trash, deadfall,

27   and debris to be accumulated on Plaintiffs' properties adjacent to the water ways.  These acts and/or

28   omissions have resulted in a substantial (and in some cases, total) diminution of the value of the affected

29

1   property.  This constitutes an inverse condemnation.  Any invasion of land cognizable to the senses

2   which depreciates its value is damage in the constitutional sense.

3                              ***Second Cause of Action - Trespass***

4                                  Plaintiffs' Theory of Recovery

5          Through the negligent and otherwise improper operation of its Highway 59 Landfill, and the

6   negligent maintenance of the Edendale Creek and Canal Creek waterways, Defendant County has caused

7   toxic VOC's and other pollutants to migrate into the soil gas below Plaintiff Karen Crane-McNab, LLC's

8   property; trash and debris to constantly blow and accumulate on Plaintiffs' property; and trash, deadfall,

9   and debris to be accumulated on Plaintiffs' properties adjacent to the water ways.  These acts and/or

10  omissions have resulted in a substantial (and in some cases, total) diminution of the value of the affected

11  property.  Any intentional, negligent or reckless entry of any kind onto Plaintiffs' property, caused by

12  Defendant, and resulting in damages is a trespass.  "A trespass may be on the surface of the land, above

13  it, or below it.  The migration of pollutants from one property to another may constitute a trespass, a

14  nuisance, or both."  (Martin Marietta Corp. v. Ins. Co. of North America (1995) 40 Cal.App.4th 1113,

15  1132 [internal citations omitted].)  In particular, causing subsurface migration of pollutants into a

16  mineral estate without consent constitutes a trespass.  (Cassinos v. Union Oil Co. of Cal. (1993) 14

17  Cal.App.4th 1770, 1778.)

18                              ***Third Cause of Action - Nuisance***

19                                  Plaintiffs' Theory of Recovery

20         Through the negligent and otherwise improper operation of its Highway 59 Landfill, and the

21  negligent maintenance of the Edendale Creek and Canal Creek waterways, the County has caused toxic

22  VOC's and other pollutants to migrate into the soil gas below Plaintiff Karen Crane-McNab, LLC's

23  property; trash and debris to constantly blow and accumulate on Plaintiffs' property; and trash, deadfall,

24  and debris to be accumulated on Plaintiffs' properties adjacent to the water ways.  These acts and/or

25  omissions have resulted in a substantial (and in some cases, total) diminution of the value of the affected

26  property, and have interfered with Plaintiffs' use and enjoyment of the property.  Anything that is

27  injurious to health, offensive to the senses, or interferes with the use or enjoyment of property is a

28  nuisance.  Cal. Civ. Code § 3479.)  "The migration of pollutants from one property to another may

constitute a trespass, a nuisance, or both." (Martin Marietta, supra, 40 Cal.App.4th at 1132.) "Failure to clean up contamination causing ongoing damage to property has been held to constitute such a nuisance." (Resolution Trust Corp. v. Rossmoor Corp. (1995) 34 Cal.App.4th 93, 99.) "The statutory definition of nuisance appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property."    (Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 919.)

### Fifth Cause of Action - Negligence

#### Plaintiffs' Theory of Recovery

Plaintiffs contend that the County is negligent per se based on violation of at least Cal. Health & Safety Code §§25359.4; 25189(c) and (d); and Civil Code §3479, among other code sections pertaining to the aforementioned acts and omissions regarding the Landfill and the Edendale and Canal Creek waterways.

Further, Plaintiffs may rely on res ipsa loquitur because at all relevant times, the County was in full and exclusive control and management of the Landfill, and of the Edendale and Canal Creek waterways.   Had the County managed and operated its Landfill in a responsible, prudent, and non-negligent manner, toxic substances would not have leached from the Landfill and polluted adjacent properties such as Plaintiffs', nor would trash, debris, and odors constantly emanate from the Landfill onto Plaintiffs' property.

Further, the County's prior statutory and regulatory violations pertaining to the Landfill's pollution of properties to the south of the Landfill demonstrates that the County was not adhering to the ordinary custom and practice in operating a landfill.

### Sixth Cause of Action - Negligent Failure To Warn

#### Plaintiffs' Theory of Recovery

Health & Safety Code §25359.4 requires the County to have warned Plaintiffs of any release of "reportable quantities" of toxic substances from the Landfill. "Reportable quantities" includes any amount sufficient to pose a threat to human health or risk to the environment. (Health & Safety Code §25359.4(c)(2).) Plaintiffs' experts' evidence is that the pollution under Plaintiffs' property exceeds target thresholds, and is therefore both a human health risk and a risk to the environment. Section

25359.4 also specifically provides for enforcement by a civil cause of action.  (See, Health & Safety Code §25359.4(e).)

***Seventh Cause of Action - Violation of Due Process Clause of the Fourteenth Amendment of the United States, and Title 42 U.S.C. §1983.***

<u>Plaintiffs' Theory of Recovery</u>

In engaging in the acts and/or omission set forth above pertaining to operation of its Highway 59 Landfill, the County deprived Plaintiffs of valuable property rights without due process or just compensation.  Title 42 U.S.C. §1983 expressly provides that the County shall be liable in an action at law or equity to Plaintiffs for such deprivation of any rights secured by the federal constitution. Furthermore, Plaintiffs are entitle to attorney's fees for said civil rights violation pursuant to 42 U.S.C. §1988.

***Tenth Cause of Action - Declaratory Relief***

<u>Plaintiffs' Theory of Recovery</u>

Declaratory relief is appropriate whenever the facts alleged "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment. A case is ripe where the essential facts establishing the right to declaratory relief have already occurred."  (Boeing v. Cascade Corp. (9th Cir. 2000) 207 F.3d 1177, 1192.)  Here, the facts alleged demonstrate a substantial and immediate controversy regarding the legal interests of the parties, the essential facts having already occurred.  Thus, declaratory relief is appropriate.

***Plaintiffs' Points of Law Expected To Be In Controversy***

1.      Trash from the Landfill often blows onto and accumulates on Plaintiffs' adjacent property. This constitutes an inverse condemnation.  Any invasion of land cognizable to the senses which depreciates its value is damage in the constitutional sense. (Yamagiwa v. City of Half Moon Bay (2007) 523 F.Supp.2d 1036, 1090.)

2.      Testing by both Plaintiffs' and Defendant's experts detected the presence of toxic volatile organic compounds (VOC's) in the soil vapor on at least Lot 1 of Plaintiffs' property.  This constitutes both a compensable trespass and a nuisance. (Martin Marietta Corp. v. Ins. Co. of North America (1995)

40 Cal.App.4th 1113, 1132; Cassinos v. Union Oil Co. of Cal. (1993) 14 Cal.App.4th 1770, 1778; Resolution Trust Corp. v. Rossmoor Corp. (1995) 34 Cal.App.4th 93, 99; Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 919.)

3.　Soil pollution on Plaintiff's property has resulted in a diminution of all of the potentially effected area's market value, such that it has no market value and is unsalable since the presence of such pollution must be disclosed to any potential purchasers and those purchasers would have other, unpolluted grazing properties to choose from.  Under both state and federal inverse condemnation law, compensable takings "damages" are measured by depreciation in market value caused by the government's acts or omissions - i.e. the difference between the fair market value of the property before and after the taking.  (Yamagiwa, supra, 523 F.Supp.2d at 1090, 1100.)  Any definite physical injury to land depreciating its market value is damage in the constitutional sense requiring compensation.  (Id. at 1090.)

4.　Government Code § 815 does not bar nuisance actions against public entities.  (Nestle v. City of Santa Monica (1972) 6 Cal.3d 920, 932-936.)

5.　The County's act of operating the Landfill without cell liners, without an effective landfill gas extraction system to prevent migration of pollution to Plaintiffs' property, and without mitigating past pollution, is conduct the public benefit of which does not outweigh the harm to Plaintiffs.  (San Diego Gas & Elec. v. Sup. Ct. (1996) 13 Cal.4th 893, 938.)

6.　Even if Plaintiffs continue to use the property for grazing, and even if there are no "lost rents" due to the pollution, there is still a taking.  (Yamagiwa, supra, 523 F.Supp.2d at 1090, 1100.)

7.　Where a party, such as the County, brings foreign substances onto his land, he must take care that they are not released, and if they are, he is absolutely liable for all damages proximately caused thereby, even in the absence of negligence.  (Nola v. Orlando (1932) 119 Cal.App. 518, 519-520; see also, Shields v. Wondries (1957) 154 Cal.App.2d 249, 255; Leslie Salt Co. v. San Francisco Bay Conservation Comm. (1984) 153 Cal.App.3d 605, 622.)

8.　Cal. Health & Safety Code §§25359.4; 25189(c) and (d) apply to the County because sections 25359.4  and 25189 apply to any "person," which is defined at Health & Safety Code §25118 to include any "county" and/or any "agency thereof."

9.      The County violated Health & Safety Code §25359.4, and Civil Code § 851, by releasing a "reportable quantity" of hazardous materials from its Landfill without properly reporting said release. A "reportable quantity" includes any quantity that may pose a significant risk to human health or to the environment. (Health & Safety Code §25359.4(c)(2).) Plaintiffs will provide evidence that the pollution under Lot 1 exceeds target thresholds, and thus is both a human health risk and damaging to the environment.

10.     The County violated Civil Code §3479 by creating a nuisance on Plaintiffs' properties, as described above.

11.     The County violated Penal Code §§ 601, 602 by trespassing on Plaintiffs' properties, as described above.

12.     The County is negligent per se based on its violation of (1) Civil Code § 851 (failure to provide owner of release site with report of release of hazardous materials); (2) Civil Code § 3479 (acts constituting nuisance); (3) Cal. Code of Civ. Proc. § 1021.9 (attorney's fees for trespass on livestock lands); (4) Health & Safety Code § 25189(c) and (d) (negligent and intentional disposal of hazardous waste in an unauthorized manner); (5) Health & Safety Code § 25359.4 (release of reportable quantity of hazardous substances without reporting said release); (6) Penal Code §§ 601, 602 (acts constituting trespass).

13.     Plaintiffs may rely on the doctrine of res ipsa loquitur as to the County's negligence in that the County's negligence speaks for itself.  At all relevant times, the County was in full and exclusive control and management of the Landfill, and of the Edendale and Canal Creek waterways.  Had the County managed and operated its Landfill in a responsible, prudent, and non-negligent manner, toxic substances would not have leached from the Landfill and polluted adjacent properties such as Plaintiffs', nor would trash, debris, and odors constantly emanate from the Landfill onto Plaintiffs' property, as these are the types of injuries that do not normally occur absent negligence.  Further, had the County maintained its waterways in a responsible, non-negligent manner, Plaintiffs' adjacent properties similarly would not have been damaged by the accumulation of garbage and debris.  Because Defendant had exclusive control and management of the land, equipment, and activities conducted, it possessed superior, if not exclusive, information, and control concerning the precise cause of damage suffered by

1    the Plaintiffs' land and Plaintiffs rely on the negligence of Defendant as inferred from the general

2    situation alleged in the TAC.  (Brown v. Poway Unified School Dist. (1993) 4 Cal.4th 820, 825-826.)

3    　　　　14.    The scope of immunity conferred by Cal. Gov. Code § 820.2 is narrow, and applies only

4    to "basic policy decisions."  Immunity does not attach to any activity undertaken at the operational level.

5    (Wheeler v. County of San Bernardino (1978) 76 Cal.App.3d 841, 848.)

6    　　　　15.    The County is supposed to maintain the Edendale and Canal Creek waterways, and it has

7    contracted with the Madera Irrigation District ("MID") to perform these duties, including removal of any

8    debris causing any flow obstructions.  Yet, according to the County, MID has "never" removed any

9    debris, never removed any driftwood (with the possible exception of once in 1998), never removed any

10   garbage, and never removed any tires.  It was not a "foreseeable and natural consequence" of the federal

11   government's 1992-1993 eminent domain action (in which the Corp of Engineers purchased certain

12   permanent and occasional flood easements for flood control purposes) that the County, and its agent

13   MID, would fail to perform its maintenance duties, thereby causing damage to the Plaintiffs' property.

14   (Reinking v. County of Orange (1970) 9 Cal.App.3d 1024, 1030.)

15   　　　　16.    Plaintiffs' property has been forced to bear a "direct, substantial and peculiar burden"

16   from the County's Landfill in the form of blowing trash, odors, vermin, and migrating pollutants, which

17   entitles Plaintiffs to compensation.  (Varjabedian v. City of Madera (1977) 20 Cal.3d 285, 297-299.)

18   　　　　17.    Title 42 U.S.C. section 1983 provides a remedy in damages for any actions of state and

19   local government that result in a "deprivation of any rights, privileges, or immunities secured by the

20   [federal] Constitution." (42 U.S.C. § 1983.)  State action that damages or destroys private may violate

21   the due process clause of the Fourteenth Amendment of the federal constitution. Such unconstitutional

22   state action thus gives rise to liability under section 1983 as the "deprivation of [a] right[] . . . secured

23   by the Constitution."  (Customer Co. v. City of Sacramento (1995) 10 Cal.4th 368, 402.)

24   　　　　18.    Cal. Gov. Code §895.2 provides that whenever public entities enter into a joint powers

25   agreement, each individual agency remains jointly and severally liable for damages caused by any

26   negligent or wrongful acts or omissions of either the other agencies or of any artificial entity created by

27   the JPA itself.  (See also, ACCEL v. City of Los Altos (2006) 136 Cal.App.4th 1207, 1212-1213.) Thus,

28   even if a JPA owns the Landfill, the County (as a member of the JPA) remains individually and severally

1    liable for any damages caused by the Landfill.

2        19.    Ownership of a public project is not a prerequisite for a takings claim engendered by it.

3    Rather, the County need only have "substantially participated in the planning, approval, construction,

4    or operation" of the Landfill.  (Yamagiwa v. City of Half Moon Bay, supra, 523 F.Supp.2d at 1088.)

5        20.    Inverse condemnation is a constitutional remedy permitting recovery of consequential

6    damages arising from public projects.  Foreseeability is not required (Albers v. County of Los Angeles

7    (1965) 62 Cal.2d 250, 263-264), and tort concepts like fault or negligence are not applicable.  (Bunch

8    v. Coachella Valley Water Dist. (1997) 15 Cal.4th 432, 436.)  Instead, the government is strictly liable

9    for any injury to property substantially caused by a public improvement.  (Id.; Pacific Bell v. City of San

10   Diego (2000) 81 Cal.App.4th 596, 602.)

11       21.    Plaintiffs are entitled to attorney's fees incurred in this action pursuant to Cal. Code of

12   Civil Procedure §1021.9, as this action involves trespass to cattle grazing lands.

13                        ***The County's Points of Law***

14       1.    As to the Canal Creek/Edendale Creek/Castle Dam area, Plaintiffs were paid by the 1993

15   eminent domain action for the type of damages they claim, regardless of when they occur.  All damages

16   are within the scope of the taking.  The things about which they complain are foreseeable aspects of the

17   taking.  Thus, they have already been paid.  Reinking v. County of Orange, 9 Cal.App.3d 1024, 1030

18   (1970).  The issue may be defined as estoppel by judgment from getting damages that could reasonably

19   be expected to result from the ordinary use of the project for which the Plaintiffs were paid in the

20   eminent domain action.  (Cox v. State, 3 Cal.App.3d 301, 309 (1970).)

21       2.    Defendant will argue inverse condemnation claims, such as blowing trash or maintenance

22   of Canal Creek, cannot be supported by mere operational negligence, such as is alleged here.  (Bauer v.

23   County of Ventura, 45 Cal.2d 276, 286-287 (1955).)  Moreover, Canal Creek is owned in fee, and

24   maintained by, MID.

25       3.    Factually, Plaintiffs' predecessors obtained a permit to plant in the easement, subject to

26   conditions.  They did not complete the conditions, but planted anyway. The permit requires the Plaintiffs'

27   officers/members/predecessors to maintain the easement area from any debris.

28       4.    Defendant believes Plaintiffs' claims are not factually supportable as to damages or

                                       36

liability.  Defendant's legal defenses are otherwise set forth in the motion for summary judgment.  None of the claimed damages rise to the level of a "taking" as there was no substantial interference with property rights.  (Richmond Elks Hall Assoc. v. Richmond Redevelopment Agency, 561 F.2d 1327, 1330 (9th Cir 1977).)

5.       Defendant also asserted the affirmative defenses of the two year statute of limitations (e.g., Cal. Code Civ Proc. §338 (j) and discretionary immunity (Cal. Gov, Code §820.2).

**L.       Abandoned Issues**

Plaintiffs dismissed the Fourth Cause of Action for Fraud and Deceit and the Ninth Cause of Action for Violation of Due Process under the California Constitution.  The Court dismissed those causes of action in the Order (Doc. 153) on the County's motion for summary judgment.

**M.       Amendments – Dismissals**

The parties point to neither anticipated amendments to their pleadings nor dismissals.

**N.       Bifurcation and Order of Trial**

With a court trial, the parties point to no bifurcation of issues.

**O.       Further Discovery or Motions**

The parties anticipate no further discovery or motions, except motions limine.

**P.       Stipulations**

The parties agree to later stipulate to a list of ownership of individual lots by each individual Plaintiff entity, and to agree to an accurate map rendering of said ownership.  Also, the parties agreed to stipulate to a more accurate rendering of the locations of the flowage easements and takings as well as the 2006 flooding high marks.  Finally, the parties may stipulate to entry of exhibits to be discussed on "admission/objections chart" when all counsel meet and confer and deposit exhibits with the Trial Court.

**Q.       Agreed Statements**

The parties offer no agreed statements.

**R**.       **Settlement**

This Court ORDERS the parties to confer regarding potential settlement of the entire action or particular issues.  If the parties agree to participate in a settlement conference, they are to contact the

1  chambers of U.S. Magistrate Judge Sandra Snyder to set a settlement conference.

2  **S.     Witnesses**

3      Only witnesses listed in this pretrial order (including "rebuttal" and/or "impeachment" witnesses)

4  shall be allowed to testify at trial, except as may otherwise be provided by this Court's order after a

5  showing of good cause, or by stipulation of the parties and this Court's order thereon. No later than

6  **January 14, 2011**, each party shall file and serve a final witness list, including the name of each witness

7  along with the business or home address of each witness, to the extent known, and omitting witnesses

8  listed herein which the parties no longer intend to call.  Only witnesses listed in this pretrial order may

9  appear on the final witness list, and no additional witnesses will be allowed to testify.

10     During trial, the parties' counsel are obligated to provide the Court and the other party's counsel,

11  no less than one court day before a witness is called, with the name of the witness.  If evidentiary

12  problems are anticipated, the parties' counsel are required to notify the Court immediately that a hearing

13  will be required.

14                              *Plaintiffs' Witnesses*

15      1.      Karen Crane-McNab c/o the Law Firm of Campagne, Campagne &Lerner. (559)

16  255-1637.

17      2.      Bert Crane c/o the Law Firm of Campagne, Campagne & Lerner. (559) 255-1637.

18      3.      Mary Crane Couchman c/o the Law Firm of Campagne, Campagne & Lerner. (559)

19  255-1637.

20      4.      John McGill, 13343 Hainline Avenue, Le Grand, CA 95333. (209) 631-0845.

21      5.      Philip Ross, 1281 E. Alluvial Avenue, Fresno, CA 93720. (559) 264-2535.

22      6.      Timothy G. Souther, 1281 E. Alluvial Avenue, Fresno, CA 93720.  (559) 264-2535.

23      7.      Jeffrey Lien, 8408 N. Lander Ave., Hilmar, CA 95324. (209) 634-9484.

24      8.      Deidre Kelsey c/o Merced County Counsel, 2222 M Street, Merced, CA 95340. (209)

25  385-7564.

26      9.      Paul Fillebrown, Director, Public Works, c/o Merced County Counsel, 2222 M Street,

27  Merced, CA 95340. (209) 385-7564.

28      10.     Kellie Jacobs, Administrative Engineer, Creeks Services and Resources, Department of

1   Public Works, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209) 385-7564.

2   11.   Jerry Lawrie, Solid Waste Manager, Solid Waste Division, Department of Public Works,

3   c/o Merced County Counsel, 2222 M Street, Merced,        CA 95340, (209) 385-7564.

4   12.   John S. Reichmuth c/o Merced County Counsel, 2222 M Street, Merced, CA 95340.

5   (209) 385-7564.

6   13.   Patrick Sullivan c/o Merced County Counsel, 2222 M Street, Merced, CA 95340. (209)

7   385-7564.

8   14.   Scott Johnston c/o Merced County Counsel, 2222 M Street, Merced, CA 95340. (209)

9   385-7564.

10                          ***The County's Witnesses***

11   1.   Paul Fillebrown, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209)

12   385-7564.

13   2.   Curt Royer, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340,(209)

14   385-7564.

15   3.   Kellie Jacobs, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209)

16   385-7564.

17   4.   Jerry Lawrie, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209)

18   385-7564.

19   5.   Rod Andrews, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209)

20   385-7564.

21   6.   Bill Nicholson, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209)

22   385-7564.

23   7.   Marty Yerrick, c/o Merced County Counsel, 2222 M Street, Merced, CA 953430; (209)

24   385-7564.

25   8.   Kent Christensen or Andrew Banuelos [Authentication of Assessor's Maps used as Ex.

26   17 to Plaintiffs' Depositions], c/o Merced County Counsel, 2222 M Street, Merced, CA 953430; (209)

27   385-7564.

28   9.   Thomas Cavallero c/o Merced County Counsel, 2222 M Street, Merced, CA 953430;

1  (209) 385-7564.

2  10.  Ronald Scott Johnston, 5518 Appaloosa Way, Atwater, CA 95301, (209) 385-7564.

3  11.  Jeff Palsgaard, 2616 Piedmont Drive, Merced, CA 95340, (209) 383-3005.

4  12.  Chris Reinheimer, Senior Project Manager, Alisto Engineering Group, 2737 North Main

5  St., Suite 100, Walnut Creek, CA.

6  13.  Hiram Cueto, Lab Manager, Argon Laboratories, 2905 Railroad Avenue, Ceres, CA.

7  14.  Mark Johnson, Operations Manager, Air Technology, 18501 E. Gale Avenue, Suite 130,

8  City of Industry, CA.

9  15.  Bert Andrew Crane Jr., c/o Campagne, Campagne & Lerner, 1685 N. Helm Avenue,

10  Fresno, CA 93727

11  16.  Karen N. Crane-McNab c/o Campagne, Campagne & Lerner, 1685 N. Helm Avenue,

12  Fresno, CA 93727

13  17.  Mary Crane Couchman, c/o Campagne, Campagne & Lerner, 1685 N. Helm Avenue,

14  Fresno, CA 93727

15  18.  Rodney Meyer, Central Valley Flood Protection Board, 3310 El Camino Avenue, Suite

16  151, Sacramento, California 95821, (916) 574-0608.

17  19.  Len Marino, P.E., Central Valley Flood Protection Board, 3310 El Camino Avenue, Suite

18  51, Sacramento, California 95821, (916) 574-0608.

19  20.  Charles S. Dawson, Central Valley Flood Protection Board, 3310 El Camino Avenue,

20  Suite 151, Sacramento, California 95821, (916) 574-0608.

21  21.  Herman Phillips, Department of Water Resources, Department of Water Resources, 1416

22  9th Street, Sacramento, CA 95814, (916) 653-5791.

23  22.  Richard Willoughby, Department of Water Resources, Department of Water Resources,

24  1416 9th Street, Sacramento, CA 95814, (916) 653-5791.

25  23.  Bob Acker, 1304 Cameron Ln, Merced, CA 95340 , 209-383-0810

26  24.  Hicham Eltal, Merced Irrigation District, 744 West 20th Street, Merced, CA 95340,

27  (209) 722-5761.

28  25.  Chris Hainey, SCS Engineers, 3117 Fite Circle, Suite 108, Sacramento, CA.

40

***The County's Retained Experts***

26.     Ambrose A. McCready, P.E., Project Manager, SCS Engineers, 3117 Fite Circle, Suite 108, Sacramento, CA.

27.     E. Wayne Pearce, SCS Engineers, 3117 Fite Circle, Suite 108, Sacramento, CA.

28.     Patrick S. Sullivan, SCS Engineers, 3117 Fite Circle, Suite 108, Sacramento, CA.

29.     Paul Damian, Ph.D, SCS Engineers, 3117 Fite Circle, Suite 108, Sacramento, CA.

30.     Robert Arnold, Arnold Realty & Associates, P.O. Box 272, Merced, California, 95341.

***The County's Non-Retained Experts***

31.     Randolph Bardini, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209) 385-7564.

32.     Steve Reichmuth, c/o Merced County Counsel, 2222 M Street, Merced, CA 95340, (209) 385-7564.

**T.     Trial Exhibits**

**1.     Duty to Pre-Mark Exhibits**

No later than **January 4, 2011**, the parties shall exchange their proposed exhibits to the extent they have not done so.  The parties' counsel shall meet and conduct an exhibit conference no later than **January 10, 2011** to pre-mark and examine trial exhibits and to prepare exhibit lists.  All joint exhibits (i.e., any documents which the parties agree should be introduced into evidence) shall be pre-marked with the prefix "JX" and numbered sequentially starting with JX-1.  All Plaintiffs' exhibits (not jointly agreed upon) shall be pre-marked with the prefix "PX" and numbered sequentially starting with PX-500. All of the County's exhibits (not jointly agreed upon) shall be pre-marked with the prefix "DX" and numbered sequentially starting with DX-1000.

**2.     Exhibit Lists**

No later than **January 14, 2011**, the parties shall file and serve their lists of respective pre-marked exhibits which the parties seek to introduce into evidence.

**3.     Submission of Trial Exhibits**

No later than **January 19, 2011**, the parties shall submit to the clerk's office all pre-marked trial exhibits.  The parties' counsel should note that, pursuant to Local Rule 281(b)(11), only those exhibits

41

listed in the parties' pretrial statement will be permitted to be offered into evidence.  Therefore, any exhibits submitted which are not listed in the pretrial statement will not be admitted.

### 4.  Objections

This Court will address objections to exhibits as they arise during the course of trial.  Counsel shall specify the precise legal objection to a particular exhibit at that time.

### 5.  Discovery Documents

Only specifically-designated discovery documents will be eligible for admission into evidence.  Therefore, the parties shall file and serve no later than **January 14, 2011** a list of all discovery documents intended to be used at trial, identifying the discovery by set number and indicating whether the original discovery document has been previously lodged with the Court.  If a discovery document intended to be used at trial has not been previously lodged, the parties shall also submit the original of such document along with a copy for the Court's use.  Discovery documents (or relevant portions thereof) may be either separately marked and indexed as a trial exhibit (as part of the exhibit marking process described above) or, if admissible, read directly into evidence.

### 6.  Deposition Testimony

Deposition testimony shall be designated by page and line number, with such designation to be filed and served no later than **January 14, 2011**.  Any counter-designation as to the same deposition (also set out by page and line number) shall be filed and served no later than **January 15, 2011**.  The original certified transcript of any deposition identified in a designation or counter-designation shall be lodged with the clerk's office no later than **January 19**, **2011**, if not previously lodged with the Court.

This Court will address objections to deposition designations as they arise during the course of trial.  Counsel shall specify the precise legal objection to particular portions of a deposition at that time.

### 7.  Duty of the Parties' Counsel

During the course of trial, the parties' counsel shall meet with the Court each morning to advise as to which items of evidence will be used that day and which have not already been admitted into evidence.  The Court will rule on any objections to the extent possible prior to the commencement of trial each day.  If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence.  If evidentiary problems are anticipated,

1   the parties' counsel are required to notify the Court immediately that a hearing will be required.

2       **8.     Post-Trial Exhibit Retention**

3       The party's counsel who introduced exhibits at trial shall retrieve the original exhibits from the

4   courtroom deputy following the decision in the case.  The parties' counsel shall retain possession of and

5   keep safe all exhibits until final judgment and all appeals are exhausted.

6   **U.     Trial Briefs**

7       Any trial briefs shall be filed and served no later than **January 14,  2011** and otherwise pursuant

8   to this Court's Local Rule 285.

9   **V.     Motions in Limine**

10      At the pretrial conference, the parties' counsel agreed that given the court trial, motions in limine

11  have limited value, and defense counsel mentioned potential *Daubert* motions.  U.S. District Judge

12  Shubb prefers to handle *Daubert* motions and motions in limine at the time of trial.  As such, this Court

13  sets no hearing on such motions, which if filed, will be addressed at the time of trial.

14      As such, *Daubert* motions and motions in limine, if any*,* shall be filed and served no later than

15  **November 24, 2010**.  Responses to such motions shall be filed and served no later than **December 14,**

16  **2010**.  The Court will neither accept nor consider reply papers, unless otherwise ordered.

17  **W.     Attorney Fees**

18      Plaintiffs believe they are entitled to attorney's fees pursuant to California Code of Civil

19  Procedure Sections 1021.9 and 1036, and Title 42 U.S.C. Section 1983 and 1988.

20      Defendant believes it is entitled to attorney fees based on FRCP 11 as to some or all causes of

21  action, as well as 42 USC § 1988.

22      Pursuant to L.R. 281(b)(20) and L.R. 293, the parties indicate that the time and manner in which

23  to ascertain whether attorneys' fees are awardable, and (if so) the amount to be awarded, should be

24  ascertained by the Trial Judge, after trial, by duly noticed motion to be filed within twenty-eight (28)

25  days after entry of judgment as provided within L.R. 293.

26  **X.     Compliance with This Order**

27      Strict compliance with this order and its requirements is mandatory.  Counsel and parties are

28  subject to sanctions for failure to fully comply with this order and its requirements.  This Court will

1   modify this order "only to prevent manifest injustice."  F.R.Civ.P. 16(e).

2       IT IS SO ORDERED.

3  **Dated:**   **November 16, 2010**         **/s/ Lawrence J. O'Neill**

                              UNITED STATES DISTRICT JUDGE