James N. Fincher, SBN 196837
Merced County Counsel
Roger S. Matzkind, SBN 77331
Chief Civil Litigator
James E. Stone, SBN 197803
Deputy County Counsel
2222 "M" Street, Room 309
Merced, California 95340
Tel - (209) 385-7564
Fax- (209) 726-1337

Attorneys for County of Merced

United States District Court

Eastern District of California

| | |
|---|---|
| Karen Crane-McNab, Bert Crane and Mary Crane Couchman., individuals; Karen Crane-McNab, LLC; Bert Crane Orchards, L.P.; Mary Crane Couchman Trust; and Mary Crane Couchman Family Partnership, L.P.,<br><br>Plaintiffs,<br><br>vs.<br><br>County of Merced, and Does 1 to 20,<br><br>Defendants. | Case No. 1:08-CV-01218-WBS-SMS<br><br>Memorandum of Points and Authorities in Support of Defendant's Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988<br><br><br>Date: April 13, 2011<br>Time: 10:30 a.m.<br>Courtroom: TBA |

///
///
///
///
///
///
///
///
///

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-LJO-SMS

**Table of Contents**

I. Introduction and Facts ........................................................................................ 1

II. Summary Judgment/Adjudication ..................................................................... 4

III. Plaintiffs' Actions During Trial, and the Lack of Evidence Presented, Demonstrates the Frivolous Nature of the Case ................................................. 6

IV. Plaintiffs' Mal-intent ........................................................................................ 11

V. Attorneys Fees Are Authorized Under 42 U.S.C. § 1988 ................................ 12

VI. The Amount of Attorney's Fees Requested is Reasonable .............................. 12

VII. A Section 1988 Fee Award Would Still Be Proper if the Court Were to Determine Some of Plaintiffs' Claims to be Frivolous and Some to be Non-frivolous ................................................................................................... 14

VIII. Conclusion ........................................................................................................ 15

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

i

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-LJO-SMS

**Table of Authorities**

**Constitution**

    U.S. Const. amend. XIV. ................................................................................ 1, 6

**Federal Cases**

    *Christianberg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978) .......................... 8, 12

    *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992) ........................................ 13

    *Grant v. Farnsworth,* 869 F.2d 1149, 1152-1153 (8th Cir. 1989) ........................... 6

    *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983) ..................................................... 13

    *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) ................................................................. 12

    *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) ....................... 13

    *Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) .................................. 13

    *Morales v. City of San Rafael* 108 F.3d 981 (9th Cir. 1997) ................................. 13

    *Neitzke v. Williams* 490 U.S. 319 (1989) ............................................................... 12

    *Quintana v. Jenne*, 414 F.3d 1306 (11th Cir. 2005) ........................................ 14, 15

    *Stewart v. Gates*, 987 F.2d 1450 (9th Cir. 1993) ................................................... 13

    *Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055 (9th Cir. 2006) .............. 14, 15

**Federal Statutes**

    42 USC §1983 ........................................................................................................... 1

    42 U.S.C. § 1988 ........................................................................................ 6, 12, 13, 14

    42 U.S.C. § 1988(b) ................................................................................................. 12

    Fed. R. Civ. P. 11 ................................................................................... 1, 2, 3, 4, 16

    Fed. R. Civ. P. 12(b) (6) ......................................................................... 2, 11, 13, 15

    Fed. R. Civ. P. 26 ....................................................................................................... 6

    Fed. R. Civ. P. 26 (a) (1) ..................................................................................... 3, 16

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

ii

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-LJO-SMS

# I.

## Introduction and Facts

Concurrent with this motion, County of Merced has filed a motion pursuant to Federal Rules of Civil Procedure, rule 11 (hereinafter "Rule 11"). That rule has a "safe harbor" provision and permits recovery of attorney and other fees and costs related to the frivolous causes of action. This motion does not have a "safe harbor" provision, but is limited to attorney fees. The factual predicate for both motions, and therefore, the substance of the motions, are largely the same, distinguished by the citations relevant to the respective bases of the motions. Also, this motion must be based on the 42 U.S. C. § 1983 cause of action, that cause of action incorporates all allegations of the third amended complaint (hereinafter, "TAC").

The seventh cause of action of the TAC is styled: "Violation of Due Process Clause of the Fourteenth Amendment of the United States, and Title 42 U.S.C. §1983 against Defendant County of Merced." (Doc.[1] 46, at p. 28.) Paragraph 83 of that cause of action incorporates "…all the factual allegations contained in this Complaint." (Doc 46 at 28:13-14.) The cause of action alleged violations of the Plaintiffs' property interests by the County. Further, the cause of action alleged the "acts and omissions" were done

> "…with full knowledge and intent, and in an illegal and unconscienciable [sic] effort to destroy the rights of Plaintiffs in the subject real property and to procure such property rights for themselves. These Defendants did so with the specific intent and purpose of depriving Plaintiffs of their interest in the subject real property, their statutory rights, and their constitutional [sic] rights all to obtain the property rights for themselves without paying any just compensation to Plaintiffs as required by law."

(Doc 46 at 29:12-18.)

Accordingly, at his deposition, Bert Crane, Jr. was asked and responded:

---

[1] References to "Document" or "Doc." refer to the numbered documents in the court's filings and docket. Documents are referenced instead of yet again providing the evidence already on file with the court.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

1

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

> Q. Do you think the County intentionally acted to destroy your rights on the property and procure the property rights for the County itself?
> …
> A. Probably the issue would be the landfill needed a half mile easement and for us to get the -- and I'm looking at the exhibits, and I don't see what I want here. For us to get the parcel split passed, we had to give up the half mile easement, and I know we've talked about the half mile easement either being in the case or out of the case, and I'm not quite sure where we are with that because you have of been talking. … We were the nexus for the half mile easement and not the landfill, so if the landfill wanted the half mile easement, they should have got it from us instead of saying if you want this subdivision passed, you're going to give it to us.

(Bert Crane Deposition, Doc. 90.1 at 170:21 – 172:2)

Of course, this testimony was well after allegations regarding the ½ mile setback had been eliminated by the County's Fed. R. Civ. P. 12(b)(6) motion. (Doc. 28.)

The TAC was divided into two general parts: allegations pertaining to the Highway 59 Landfill (hereinafter, "Landfill") and allegations pertaining to the Castle Dam/Canal Creek/Edendale Creek waterway (hereinafter sometimes referred to as "Castle Dam"). The allegations pertaining to the Landfill generally pertained to the claim that volatile organic compounds (VOCs) migrated onto the plaintiffs' properties and caused damage. The allegations pertaining to Castle Dam pertained to claims the County of Merced failed to police or maintain Castle Dam and that drift from the creeks was on their property.

**Rule 11 Notice.** County's original Rule 11 motion was served on Plaintiffs on September 17, 2010. (Matzkind Declaration, Ex. A.) County's motion for summary judgment/adjudication was filed on September 7, 2010, and scheduled to be heard October 13, 2010. (Doc[2] 83.) Defendant provided a cover letter with the service of the Rule 11 motion reminding Plaintiffs they had been cautioned long before that Defendants would

---

[2] References to "Document" or "Doc." refer to the numbered documents in the court's filings and docket. Documents are referenced instead of yet again providing the evidence already on file with the court.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

2

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

move for Rule 11 sanctions. (September 17, 2010 Letter, Ex B.[3]) Indeed, counsel so advised the Plaintiffs in open court at the hearing of a motion to compel a more complete statement of damages in accordance with Fed. R. Civ. P. 26 (a) (1) and motion to amend answer, heard on December 18, 2009. (Doc. 59, Motion to Compel; Matzkind Dec., Ex A.) The motion to compel was denied, though the substantial merit of the motion was demonstrated during trial by the lack of evidence regarding damages. (Matzkind Dec., Ex A.) Plaintiffs filed their opposition to the motion for summary judgment on September 29, 2010. (Doc. 120.) Plaintiffs also sent a letter to Defendant withdrawing certain allegations in response to the Rule 11 motion. (J. Campagne's October 8 letter, Ex. B.) Specifically, they "withdrew" the following:

1. That the landfill was owned by Merced County;
2. That hazardous materials were released from the Landfill into the groundwater under Plaintiffs' property. Plaintiffs only conceded "…hazardous materials have not yet migrated into the groundwater below their property."
3. That employees of Merced County trespass onto Plaintiffs' property.
4. That County concealed possible release; and withdrew fraud allegations.[4]
5. That Merced County owned Canal Creek.
6. That County's actions interfered with the rental of property in the dam area, still contending the acts in operating the Landfill interfered with the renter's cattle operations.

Plaintiffs refused to withdraw anything else, contending anything else was "fairly debatable."  (J. Campagne's October 8 letter, Ex. B.) Incredibly, they referred to the Rule

---

[3] Exhibits are authenticated by Matzkind Dec. Ex. A.

[4] In their opposition to the motion for summary judgment/adjudication, Plaintiffs again misrepresented to the court, stating they were dropping their cause of action for fraud based on "new information learned during the discovery process." There was nothing "new". They had received information regarding monitoring well studies in response to the Public Records Act requests not only of Bert Crane prior to the filing of the case, but also, their attorneys. (Doc 90.1 and 95.2, in support of motion for summary judgment.) The cause of action was dropped to avoid Rule 11 sanctions.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

3
Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1  11 motion as a "continuation…of …frivolous sanctions motions and threats of such
2  motions…." (Letter, Ex. B.)[5]

3     As the Order on Defendant's Motion for Summary Judgment indicates, the only
4  claims which Plaintiffs told the Court they had conceded were the fraud cause of action
5  (due to information learned during discovery) and the Due Process Clause of the California
6  Constitution cause of action "in light of the Court's prior rulings". (Doc 153 at 5:14-18.)
7  Thus, Plaintiffs did not advise the court they were withdrawing the groundwater claims,
8  even though their own experts concluded they were not valid. Instead, County had to
9  proceed with its motion for summary judgment/adjudication of that claim, and the Court
10 was forced to expend the time and effort to deal with it.

## II.

## Summary Judgment/Adjudication

13     Judge O'Neill granted most of Defendant's motion for summary
14 judgment/adjudication (Document 153, order on motion) finding triable issues as to parts
15 of some causes of action and some of Plaintiffs' allegations. As a result of the motion,
16 numerous facts were established negating the need for proof. The court's conclusions are
17 at pages 27-28 of the order.

18     As a result of the summary judgment, only one plaintiff, Karen Crane McNab,
19 LLC, could claim any damage from the purported migration of VOC's in the soil gas on
20 Lot 1, the southernmost lot. Further, the Court dismissed the claims for fraud, strict
21 liability, California Due Process, and groundwater contamination.

22     As to the Castle Dam area, the court granted summary adjudication as to all claims
23 pertaining to the 2006 flood. In not granting the summary judgment entirely as to the
24 Castle Dam area, the District Court noted it was not clear if all debris of which Plaintiffs

---

[5] This comment evidences the need for deterrence sanctions as the court, but one month earlier, had referred to Plaintiffs' attorneys' declaration regarding a discovery order to not be believable (Doc. 82, Transcript at 8:13-20 and Doc 155 order on motion for sanctions at 2:2-5.) and Plaintiffs' attorneys' conduct regarding production of their appraiser's report to be "unconscionable". (Doc. 82, Transcript at 9:8-14.) The court issued significant sanctions for the attorney misconduct. (Doc 155.)

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

4

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

complained was from the 2006 flood and if all complaints were included within the 1993 eminent domain case. (Doc 153 at 26:26-27:7.) The Plaintiffs had proceeded with the claims regarding flood damages knowing that the crop loss was in the area for which they had been paid over $1 million in the eminent domain case. (Doc 153 at 5:20-7:23.) No reasonable attorney would have asserted crop loss in an area admittedly caused by flooding in a flowage easement for which the Plaintiff had been paid. Plaintiff never presented evidence at trial regarding when any debris appeared on their property.

The court had to decide at summary judgment that only one plaintiff could claim damages from VOC migration. This is significant regarding the frivolous nature of the action since testing was conducted on only one property and the Plaintiffs' experts had already opined it would be speculation that any VOC's existed beyond the 50-100 feet of the testing on Lot 1. Thus, Plaintiffs Bert Crane Orchards, L.P., Mary Crane Couchman Trust and Mary Crane Couchman Family Partnership, L.P. proceeded with the VOC soil gas claims and groundwater contamination claims knowing their own experts would not support them. Defendant had to defend the issue and the Court had to waste its time deciding the issue, then proceeding to trial on the remaining parcel, Lot 1. Similarly the Court had to evaluate and rule on claims the landfill increased coyotes and animals in the area for the summary judgment, yet Plaintiffs did not produce any evidence on such subjects at trial.

After summary adjudication, the remaining claims for trial were:

1. Inverse condemnation as to VOCs (Lot 1 only), trash, and Canal/Edendale Creek;
2. Trespass as to VOCs only (Lot 1 only);
3. Nuisance as to VOCs (Lot 1 only), trash, and odors as to other Landfill related lots;
4. Negligence as to VOCs only (Lot 1 only);
5. Failure to warn regarding VOCs only (Lot 1 only);
6. The 14th Amendment Due Process claim, as limited by the above;

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

5
Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1       7.    The Declaratory Relief claim; and

2       8.    Various fact allegations determined to remain as triable issues.

3    Thus, of the issues they insisted on keeping in the case, Plaintiffs lost at summary

4 adjudication the following major claims in addition to groundwater:

5     1.    All claims regarding the 2006 flooding in Castle Dam/Canal Creek/Edendale

6         Creek areas.  This was based on the fact the flooding was in the flowage

7         easements for which plaintiffs' predecessors, in other words, the Crane's

8         individually, were paid over $1 million.  (Doc. 153, Order on Motion for

9         Summary judgment at 5:20-7:23.) Such claim was frivolous since they knew

10        the crops damaged had been planted in the flowage easements.

11     2.    Any VOC's on anywhere except Lot 1.  Plaintiffs did not test anywhere else,

12        yet claimed all were affected.  In this regard, Mr. Souther's testimony at trial

13        and deposition were clear that it would be speculation that whatever they

14        found was anywhere beyond a 50-100 foot area where they tested.  As shown

15        at trial, it was frivolous to proceed on this claim at all.

### III.

### Plaintiffs' Actions During Trial, and the Lack of Evidence Presented, Demonstrates the Frivolous Nature of the Case

Of course, part of this motion is directed toward the frivolous nature of the case that was decided in the County's favor on summary adjudication as well as for those claims which the Plaintiffs pursued to trial and were not eliminated by summary judgment. Merely because summary judgment may be denied, or a directed verdict denied, does not preclude a defendant from collecting 42 U.S.C. § 1988 attorneys fees. (*Grant v. Farnsworth,* 869 F.2d 1149, 1152-1153 (8th Cir. 1989).)

The case was tried from January 24-27, 2011, with post trial issue briefs provided the following week.  The court issued its decision and judgment on February 8th (Docs. 192 and 193, respectively.)  The significance of the evidence at trial is that not just that there was a failure of proof, but rather, that either no evidence was presented at all, or Plaintiffs

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

1  knew, or any reasonable attorney would have known, the evidence was not credible and
2  could not support judgment.  Indeed, the Plaintiffs' evidence was so lacking that at one
3  point during Defendant's closing argument regarding the Castle Dam issues, the court
4  asked: "What are they suing you for?" or words to that effect.

5      During the trial, the court repeatedly commented that Plaintiffs' counsel were
6  seemingly changing their theories and evidence with each part of their witnesses'
7  testimony.  It was clear Mr. Crane testified (for the first time at trial) that land along
8  Highway 59 had been flooded.  He had previously testified at deposition that his complaint
9  pertained to water being more muddy.  He was impeached at trial with his prior testimony.
10 As the Memorandum of Decision notes, Mr. Crane's testimony presented " …a new theory
11 of liability at trial." (Doc. 192 Decision, at 15: 24-25.) Thus, Plaintiffs again proceeded
12 with a frivolous [and new] theory.  Nevertheless, defendants had to deal with the issue.

13     Plaintiffs argued in their post trial issue brief (Doc 187) they would incur costs of
14 from $100,000 to $700,000 in the first year for installation and operation of a remediation
15 system.  (Doc 187, at 19:20-20:2.) However, they never presented substantive evidence of
16 such claims at trial.  Indeed, it was clear they could not do so when they had the chance.
17 The court may recall Plaintiffs sought to have their appraiser, Jeffery Lien, provide an
18 opinion of such costs based on an earlier unsubstantiated opinion in a report by Mr.
19 Souther, one of Plaintiffs' experts.  Although Mr. Souther's veracity at trial was certainly
20 put in issue by several prior inconsistent statements at his deposition, Mr. Souther did not
21 go so far as to falsely testify at trial that remediation costs could still be incurred.  He did
22 not address this issue.  Apparently, Mr. Souther, and thus plaintiffs, were aware and agreed
23 that the installation of the Landfill's system closing Cells 1-4 would have resolved all
24 remediation issues anyway, if there were migration.  Apparently, he would have so
25 admitted on examination or cross-examination.  If the contrary were true, Plaintiffs
26 certainly would have presented his substantive testimony.  Nevertheless, Plaintiffs asserted
27 the issue of a lack of value to the property based on remediation costs, knowing there was
28 no evidentiary support.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

7
Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

While not admissible at trial, there is other significant evidence of the frivolous nature of any claims regarding remediation and thus, the claim of VOC migration damages. After the pretrial conference, Thomas Campagne stated to defense attorneys Roger Matzkind, and James Stone that Mr. Souther had opined the system being installed would remedy any intrusion and that because of this, the trial should be 1 ½ days. He asked for a copy of the BAI for the contract to document the work would be done. (Matzkind Dec. Ex. A; Stone Declaration, Ex. C.) The BAI was provided in a letter from Defendant to Plaintiff. (Letter, Ex. D.) Incredibly, Thomas Campagne responded with a cryptic denial that it was his intent and that the conversation was private and confidential. (Letter of December 17, 2010, Ex. E.) This makes it clear why the evidence was not offered through Mr. Souther: he would have denied it. This was further shown when Plaintiffs sought to introduce the claimed remediation costs through Mr. Lien, their appraiser, in support of his opinion that the property had no value. As the court no doubt observed, this was different from the basis of his "zero value" opinion Mr. Lien had given the day before during his testimony. This shows not only the need for deterrence, but also the frivolous nature of the claim.[6]

**Lack of Evidence on VOC issues**. As the Supreme Court explained in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978), a civil rights case,

> …a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

---

[6] This new testimony from Mr. Lien regarding potential costs may have led to the court requesting post-trial issue briefs.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

8

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1    Plaintiffs were provided initial and rebuttal expert reports from Mssrs. Pearce,
2 Sullivan, McCready and [Dr.] Damian in accordance with Fed. R. Civ. P. 26, on May 24,
3 2010, and June 14, 2010, respectively. (Matzkind Dec., Ex. A.) These reports set forth the
4 deficiencies in the testing procedures and opinions of Mssrs. Ross and Souther, as would
5 be presented at trial.[7] Moreover, Plaintiffs were provided this information again in reply to
6 the opposition to the motion for summary judgment in the form of declarations of Mssrs.
7 Sullivan (Doc 147-3) and [Dr.] Damian (Doc. 147-4) as well as objections to the testimony
8 of Plaintiffs' experts (Doc 148). The evidence of the lack of reliability of Plaintiffs'
9 experts was again provided to Plaintiffs in the motions in limine for trial. (Docs 163-164.)
10 It cannot be said Plaintiffs were taken by surprise by the strength of the Defense experts'
11 opinions and the insurmountable deficiencies in the opinions of Mssrs. Ross and Souther.
12 Instead of deposing any of these witnesses, except Mr. Sullivan,[8] Plaintiffs deposed
13 Deidre Kelsey (an elected head of the Board of Supervisors) and Paul Fillebrown (the
14 Public Works department head) regarding matters so irrelevant that Plaintiffs did not
15 bother to introduce these witnesses, or anything about them, at trial. (Matzkind Dec., Ex.
16 A.) Bluntly put, their depositions were taken to harass them. No reasonable attorney
17 would have bothered to depose them, instead of deposing Defendant's experts.
18    At trial, consistent with his earlier reports and the County's limiting objections,
19 Wayne Pearce testified about the numerous defects in the sampling procedures. In effect,
20 his testimony extirpated the Plaintiff's allegations regarding VOC migration. As the
21 Memorandum of Decision stated: "He concluded that the tests performed by plaintiffs
22 were 'indefensible' and could not be relied upon. His testimony on the subject was
23 unimpeached." (Doc 192 at 9:13-15.) This evidences the frivolous nature of the case.
24    Even if the VOC's had been from the Landfill, the only nonfrivolous evidence
25 presented to the court was that there was no health risk. Plaintiffs proceeded to trial

---

[7] As the court may recall, not only did plaintiffs' experts test in only one location, but that location was at the pond end of run-off from the Caltrans right-of-way along Highway 59.

[8] It should be noted that neither side paid for the other's expert depositions.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

9

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

without any expert competent to testify regarding risk. As the Court may recall, Mr. Souther basically testified he looked at a chart that specifically is not supposed to be used to assess human health risk. Of course, Plaintiffs also claimed injury and threat of injury to cattle. (See, e.g., Doc 46, at p. 19.) This was not addressed by Plaintiffs during trial, at all. Nevertheless, County had to expend time and money to have the SCS experts, especially Dr. Damian, address the claimed damage in reports and at trial.

Moreover, as the court found, Plaintiffs failed to show any injury to their property. (Doc 192 at 12:3-9.) There was no interference shown, notwithstanding Plaintiffs' argument and allegations to the contrary.

Although Plaintiffs proceeded to trial on the theory that there was trespass and negligent operation of the Landfill, they presented no expert testimony regarding negligence, even though they alleged lengthy causes of action for negligence. There was no witness or testimony to oppose Ambrose McCready, County's witness. Indeed, as the Court concluded, Mr. McCready was "unimpeached in his testimony that the landfill met all standards of care for the state of California; plaintiffs have not demonstrated that any waste was disposed of in an unauthorized manner, much less negligently or intentionally." (Doc 192 at 13:7-12.) Although Plaintiffs proceeded with a trespass theory requiring proof of intentional or negligent acts, Plaintiffs did not produce "…any evidence that the County knew that it was releasing a reportable quantity of hazardous substances or that the County did release such substances." (Doc 192, at 13: 10-15.) It is frivolous to proceed to trial with no evidence to support key and material allegations. The People of Merced County had to bear the cost of such frivolous action by the payment of experts, costs and attorney time.

**Trash and Odors**. Here, again, the issue is not just that Plaintiffs failed to convince the court by preponderance of evidence, but rather, that they failed to "…provide the court with any evidence concerning damages." (Doc 192 at 15-1.) Indeed, in finding for the defense on nuisance regarding this issue, the court referred to a "total lack of evidence…." (Doc 192 at 15:9-13.) Again, the People of Merced County

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

10

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

had to bear the cost of such frivolous action by the payment of experts, costs and attorney time.

**Flooding.** As the court noted, Plaintiffs apparently devised a new theory of liability at trial regarding flooding. (Doc 192 at 15:24-27.) As shown by trial impeachment of Mr. Crane, previously testified only about some mud, not flooding. This "new theory" was unsupported by any photographs and was rebutted by testimony that there is less water than before the expansion and that the source is largely property other than the landfill, but rather, Crane and other property.

**Creeks.** Again, Plaintiffs completely failed to present any evidence of any interference, depreciation or harm to property value. There was no showing of a taking.

## IV.

## Plaintiffs' Mal-intent

The Plaintiffs rationale for this action was clear: the action was intended to harass the county due to the ½ mile residential set back the Board had approved for the area from the Landfill. This intent is further evidenced by the original versions of the complaint which alleged takings in this regard. These allegations were eliminated from the action via Fed. R. Civ. P. 12(b) (6) motions.[9] (Doc. 28.) Yet, in their Pretrial Brief, Counsel for Plaintiffs again raised the set back issue (Doc 172, p. 1-2, fn 1) with no relevance, except perhaps to placate the individual Plaintiffs.

Plaintiffs' mal-intent toward Merced County is further evidenced by whom they did not sue, considering the nature of their causes of action. Although they claimed migration and other harms from the Landfill, they chose not to sue the JPA owning the landfill, but rather, only the County. Although they claimed interference with their

---

[9] As further evidence of the intent to harass by alleging claims without evidentiary basis, the court may note that the complaint alleged the entity plaintiffs suffered emotional distress. When County filed a 12 (b)(6) against this with the obvious argument that an entity cannot suffer emotional distress, Bert Crane Jr (the only Crane to testify at trial), Karen Crane McNab and Mary Crane Couchman, alleged they individually suffered such distress. This was dismissed by Fed. R. Civ. P. 12 (b)(6) since no claim had been filed. (Doc. 53.) None of these people ever lived on the relevant properties. (Doc 90.1 at 119:9-120:3.) The point is that Plaintiffs have demonstrated a pattern of alleging whatever they deem necessary regardless of factual support.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

11

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

property pertaining to Canal Creek around the Castle Dam, they did not sue the Corps of Engineers, California or Merced Irrigation District the latter actually maintaining and owning Canal Creek.  They did not mention their own legal obligations pursuant to a permit to plant requiring them to maintain the flow in the area, as explained by witness Steve Dawson at trial.  (Joint Exhibit JX-237 at trial.)  As the testimony showed at trial, Mr. Crane could not limit the scope of his legal obligations to his application, along.  The legal obligations were defined by the permit.

## V.
### Attorneys Fees Are Authorized Under 42 U.S.C. § 1988

42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981-1983, 1985, 1986], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

It is well-settled that a plaintiff may be liable for attorney's fees under Section 1988 when the court "finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so." (*Hughes v. Rowe*, 449 U.S. 5, 15 (1980), quoting *Christianberg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).)

An action is frivolous, and, therefore, subject to fee-shifting against a losing plaintiff under Section 1988, if it lacks an arguable basis in law or in fact. (*Neitzke v. Williams* 490 U.S. 319, 325 (1989) superseded in part by statute on other grounds.) Here, the instant action lacked an arguable basis in fact.  As such, it was frivolous.

## VI.
### The Amount of Attorney's Fees Requested is Reasonable

The County of Merced has been sorely affected by this very expensive case to defend.  More than one thousand attorney hours were expended on the case.  (Matzkind Dec, Ex. A; Stone Dec, Ex. C, Greene Dec., Ex. F.)  Defendant was forced to expend a

12

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1  large number of hours, not only for trial, but also in dealing with 12(b)(6) motions, the
2  summary judgment/adjudication motion, and the motion for sanctions.
3      In setting the amount of an attorney's fees award under § 1988, a district court must
4  utilize the "lodestar" method of calculating the award, which is accomplished by
5  multiplying the number of hours reasonably expended on the litigation by a reasonable
6  hourly rate. (*Hensley v. Eckerhart*, 461 U.S. 424, 433(1983).)  The Supreme Court has
7  established "a strong presumption that the lodestar represents the reasonable fee." (*City of*
8  *Burlington v. Dague,* 505 U.S. 557, 562 (1992).)
9      "The 'reasonable hourly rate' must be determined by reference to the prevailing
10  market rates in the relevant legal community." (*Stewart v. Gates*, 987 F.2d 1450, 1453
11  (9th Cir. 1993).)  As shown in defendant's counsel's affidavit, the prevailing rate in Fresno,
12  California is $350-375 per hour.  (Matzkind Dec., Ex. A.)
13      "After making that computation, the district court then assesses whether it is
14  necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr v.*
15  *Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) factors." *(Morales v. City of San*
16  *Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (internal citation omitted), *amended by* 108
17  F.3d 981 (9th Cir. 1997).)  Those factors are:  (1) the time and labor required, (2) the
18  novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal
19  service properly, (4) the preclusion of other employment by the attorney due to acceptance
20  of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
21  limitations imposed by the client or the circumstances, (8) the amount involved and the
22  results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the
23  'undesirability' of the case, (11) the nature and length of the professional relationship with
24  the client, and (12) awards in similar cases. (*Morales*, 96 F.3d at 364 n.8 *(citing Kerr*, 526
25  F.2d at 70).)  In the instant case, however, no adjustment to the presumptively reasonable
26  lodestar figure need be made.
27
28

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

13

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1  County leaves lodestar hourly amount to the discretion of the court within the range
2  of $300 - $375 per hour for Roger S. Matzkind, and $200 - $250 per hour for James E.
3  Stone and Marianne M. Greene.
4  As such the requested sum of $345,875 to $432,343.80 is a reasonable amount of
5  attorney's fees. This is calculated at 924.25 hours at $300 - $375 an hour for Roger
6  Matzkind, 200 hours at $200 to $250 an hour for James Stone, and 143 hours at $200 -
7  $250 an hour for Marianne Greene.

## VII.

### A Section 1988 Fee Award Would Still Be Proper if the Court Were to Determine Some of Plaintiffs' Claims to be Frivolous and Some to be Non-frivolous

In *Quintana v. Jenne*, 414 F.3d 1306 (11th Cir. 2005), the court affirmed a district court's award of attorney's fees for defending against a claim it found frivolous, while reversing the district court's award of fees for the defense against a claim that was not frivolous. (*Id.* at 1312.)  The court explained that it would "undermine the intent of Congress to allow plaintiffs to prosecute frivolous claims without consequences merely because those claims were joined with unsuccessful claims that were not frivolous." (*Id.*) Although the court recognized that the plaintiff's claims arose from a common set of facts, it reasoned that the plaintiff's claims were not intertwined because the plaintiff had distinguished the claims in his complaint and had advanced sufficiently distinct arguments. (*Id.)*  Accordingly, the court remanded the case to the district court so that it could "weigh and assess the amount of attorney's fees attributable exclusively to [plaintiff's frivolous claim]." (*Id.*)

In *Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055 (9th Cir. 2006), the court stated, "We find the Eleventh Circuit's reasoning in *Quintana* persuasive.  Here, Tutor's constitutional and statutory claims were distinct and the merits of each claim could easily be evaluated separately. Throughout the district court proceedings, from the complaint through the summary judgment briefing, the constitutional and statutory claims were argued separately. The fact that Tutor's claims arose from the same basic set of facts does

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

14
Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1  not alter our assessment of the distinctive nature of his claims. . . we conclude that because
2  Tutor's constitutional claims were sufficiently distinct from his statutory claims, the district
3  court was in a position properly to weigh and assess the amount of fees attributable to
4  Tutor's frivolous claims. We thus hold that the district court did not err in awarding
5  defendants fees for defending against Tutor's frivolous constitutional claims." (*Tutor-*
6  *Saliba* at 1064.)
7      In the instant case, like *Quintana* and *Tutor-Saliba*, Plaintiffs' claims were separate
8  and distinct.  As such, should the court determine that some of Plaintiffs claims were non-
9  frivolous, the court could still properly award attorney's fees to Defendant for the claims
10 determined to be frivolous.

## VIII.

## Conclusion

13     As has been repeatedly set forth, the case involved separate plaintiffs owning
14 separate parcels of land, all of which made the same claims.  Each cause of action
15 alleged all of the allegations of the other causes of action.  Nevertheless, the case may
16 generally be divided into two general areas:  the landfill portion and the Castle Dam
17 portion.  An award of attorney fees and costs could be issued against all or individual
18 plaintiffs and on some or all of the claims.
19     The frivolous nature of the case is not based in issues of law, but rather, the
20 complete lack of evidence to support the allegations.
21     Plaintiffs did not test for VOC's until after the action was filed.  They tested in
22 only one location and admitted it would be speculation that whatever they found was
23 somewhere other than within a 50-100 feet area.  They tested at the end of a Caltrans
24 drainage and detected petroleum related products.  There was no evidence of damages.
25 Plaintiffs knew this from the start.  Without damages there can be no causes of action.
26     More than 1000 attorney hours have been spent on the case.  The court was
27 forced to expend a large number of hours, not only for trial, but also in dealing with the
28

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

15

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

12(b)(6) motions, the motion for sanctions, and the summary judgment/adjudication motion.

Plaintiffs filed the complaint before any testing was conducted. Of course, Plaintiffs' counsel signed each version of the complaint, leading to the Third Amended Complaint repeating the same baseless allegations. It is therefore interesting to note Magistrate Judge Snyder's comment in granting earlier sanctions against the Plaintiffs' counsel. Plaintiffs' Counsel had falsely represented to Defense Counsel that Mssrs Souther and Ross had signed the initial report. Magistrate Judge Snyder commented: "…in the old days, if a lawyer put a slash-initial-slash on a document, especially we who practiced here in the Central San Joaquin Valley, we would accept that as the lawyer's word that her or his client had authored the report." (Doc 82 at 5:25-6:4.)

In September of 2010 when the Rule 11 motion was served, County advised it had already incurred over $120,000 in costs. That amount went up more than $100,000, plus hundreds of hours of attorney and staff time to defend the People's scarce money. (Matzkind Dec., Ex. A.) Nevertheless, Plaintiffs continued with the action.

The case was patently false. The evidence known to be false would have been known to be such by Plaintiffs themselves. This includes the evidence regarding the eminent domain action which was obtained from the National Archives by Defense Counsel and used in support of the County's summary judgment motion[10] as well as their obligations to maintain their permitted area along Canal Creek. There was no evidence at trial presented sufficient to conclude the action was anything other than frivolous. This is further supported by the earlier sanctions, the history of Plaintiffs' failure to provide damages information pursuant to Fed. R. Civ. P. 26 (a)(1), the nature of the pleadings and the manner in which the case was presented. The People of Merced

---

[10] Further, as was shown at trial through the testimony of Kellie Jacobs and Steve Dawson, as a result of the action, County learned that the individual Cranes were granted a state permit to plant in the flood easements, but were required to maintain the flow of the Creek by picking up debris. Thus, they were obligated to the state and County to pick up the very debris about which they complained. The Plaintiffs were obviously aware of this.

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

16

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS

1  County should not be required to bear the cost of defending this frivolous case and
2  should be reimbursed attorney fees.

3  Dated: March 8, 2011                         James N. Fincher
4                                               Merced County Counsel

5
6                                      By:     s/ Roger S. Matzkind
                                               Roger S. Matzkind
7                                              Chief Civil Litigator
                                               Attorneys for County of Merced
8

Merced Co. Counsel
2222 M Street
Merced, CA 95340
Tel: (209) 385-7564

17

Memorandum of Points and Authorities in Support of Motion for Attorney's Fees Pursuant to 42 U.S.C. Section 1988
Case No. 1:08-CV-01218-WBS-SMS