1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9                         ----oo0oo----

10

11  KAREN CRANE-MCNAB, BERT CRANE,        NO. CIV. 1:08-1218 WBS SMS
    and MARY CRANE COUCHMAN,
12  individuals, KAREN CRANE-
    MCNAB, LLC; BERT CRANE               MEMORANDUM AND ORDER RE:
13  ORCHARDS, L.P.; MARY CRANE           MOTIONS TO AMEND FINDINGS, FOR
    COUCHMAN TRUST; and MARY CRANE       NEW TRIAL OR TO ALTER OR AMEND
14  COUCHMAN FAMILY PARTNERSHIP,         JUDGMENT, FOR RELIEF FROM
    L.P.,                                JUDGMENT, FOR ATTORNEY'S FEES,
15                                       AND FOR SANCTIONS
              Plaintiffs,
16
         v.
17
    COUNTY OF MERCED, and DOES 1
18  to 20,

19            Defendants.
    _____/
20

21                        ----oo0oo----

22            On February 8, 2011, this court entered judgment in

23  favor of defendant after a four-day bench trial.  (Docket No.

24  193.)  Plaintiffs now move the court to amend its findings or

25  make additional findings pursuant to Federal Rule of Civil

26  Procedure 52(b), for a new trial or to alter or amend the

27  judgment pursuant to Rule 59, and for relief from judgment due to

28  mistake or inadvertence pursuant to Rule 60.  Defendant also

                                1

1  moves the court to amend or clarify its findings pursuant to Rule
2  52(b) and moves for attorney's fees pursuant to 42 U.S.C. § 1988
3  and sanctions pursuant to Rule 11.

4  I.   Factual and Procedural Background

5       This action arises out of a landfill operated by
6  defendant that neighbors plaintiffs' land.  A Caltrans right of
7  way, which includes Highway 59, runs between the landfill and the
8  Crane property.  Plaintiffs alleged that volatile organic
9  compounds ("VOCs") migrated from the landfill onto their
10 property, trash and odor blew from the landfill onto their
11 property, water came through a culvert in the Caltrans right of
12 way onto their property, and debris from creeks allegedly
13 maintained by defendant collected on their property.  After a
14 partial grant of summary judgment on several issues of law and
15 fact (Docket No. 153), the court held, following a bench trial,
16 that plaintiffs had failed to prove by a preponderance of the
17 evidence any of their claims, which included (1) inverse
18 condemnation under federal and state law regarding VOC migration,
19 trash, and creek debris; (2) trespass regarding VOC migration;
20 (3) nuisance regarding VOC migration, trash, and odors; (4)
21 negligence regarding VOC migration; (5) negligent failure to warn
22 regarding VOC migration; (6) violation of the Due Process Clause
23 of the Fourteenth Amendment; and (7) declaratory relief.  (Feb.
24 8, 2011, Mem. of Decision (Docket No. 192).)

25      Plaintiffs have appealed to the United States Court of
26 Appeals for the Ninth Circuit from the judgment on March 7, 2011.
27 (Docket No. 200.)  Federal Rule of Appellate Procedure 4
28 provides:

If a party files a notice of appeal after the court
announces or enters a judgment--but before it disposes of
any motion listed in Rule 4(a)(4)(A) [including a motion
to amend or make additional factual findings under Rule
52(b), to alter or amend the judgment under Rule 59, for
a new trial under Rule 59, or for relief under Rule 60]--
the notice becomes effective to appeal a judgment or
order, in whole or in part, when the order disposing of
the last such remaining motion is entered.

Fed. R. App. P. 4(a)(4).  Thus, this court retains jurisdiction

to decide the Rule 52(b), 59, and 60 motions despite plaintiffs'

appeal.

Similarly, this court retains jurisdiction over

defendant's motions for attorney's fees and sanctions.  See

United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.,

837 F.2d 356, 358 (9th Cir. 1988) (district court retained

jurisdiction to impose sanctions while appeal was

pending); Masalosalo by Masalosalo v. Stonewall Ins. Co., 718

F.2d 955, 957 (9th Cir. 1983) (district court retained

jurisdiction to award attorney's fees after notice of appeal from

decision on merits was filed).

II.  Discussion

A.  Rules 52(b), 59, and 60

Federal Rule of Civil Procedure 52(b) permits a court

to amend findings made after a bench trial.  Rule 52(b) provides:

"On a party's motion filed no later than 28 days after the entry

of judgment, the court may amend its findings--or make additional

findings--and may amend the judgment accordingly."  Fed. R. Civ.

P. 52(b).  Motions under Rule 52(b) are primarily designed to

correct findings of fact which are central to the ultimate

decision; the Rule is not intended to serve as a vehicle for a

rehearing.  Davis v. Mathews, 450 F. Supp. 308, 318 (E.D. Cal.

3

1  1978).

2        Rule 59(a) of the Federal Rules of Civil Procedure
3  provides that a court may grant a new trial "for any reason for
4  which a rehearing has heretofore been granted in a suit in equity
5  in federal court."[1]  Fed. R. Civ. P. 59(a)(1)(B).  After a
6  nonjury trial, a court may also "open the judgment if one has
7  been entered, take additional testimony, amend findings of fact
8  and conclusions of law or make new ones, and direct the entry of
9  a new judgment."  Fed. R. Civ. P. 59(a)(2).  Rule 59 does not
10 specify the grounds on which a motion for a new trial may be
11 granted.  Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035
12 (9th Cir. 2003).  Rather, the court is "bound by those grounds
13 that have been historically recognized."  Id.

14       Rule 59(e) provides that a court may alter or amend a
15 judgment.  Absent "other, highly unusual, circumstances,"
16 reconsideration pursuant to Rule 59(e) is appropriate only where
17 (1) the court is presented with newly discovered evidence; (2)
18 the court committed clear error or the initial decision was
19 manifestly unjust; or (3) there is an intervening change in
20 controlling law.  Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS,
21 Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

22       Federal Rule of Civil Procedure 60(a) allows the court
23 to correct, on its own initiative or on the motion of any party,
24 a clerical mistake in a judgment, order, or other part of the
25 record.  A court may amend its decision under Rule 60(a) so long

26

27       [1]  Plaintiffs do not explain why they move for a new trial
   or the grounds on which the court could grant a new trial.
28 Accordingly, the court need not dignify the motion with any
   discussion or explanation, other than to deny it as groundless.

1   as the change is consistent with the court's original intent.

2   Harman v. Harper, 7 F.3d 1455, 1457 (9th Cir. 1993).  "The basic

3   distinction between 'clerical mistakes' and mistakes that cannot

4   be corrected pursuant to Rule 60(a) is that the former consist of

5   'blunders in execution' whereas the latter consist of instances

6   where the court changes its mind . . . ."  Blanton v. Anzalone,

7   813 F.2d 1574, 1577 n.2 (9th Cir. 1987) (quoting United States v.

8   Griffin, 782 F.2d 1393, 1396-97 (7th Cir. 1986)).  Rule 60(a) may

9   not be used to correct substantial errors, such as errors of law.

10  Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir.

11  1990).

12      Rule 60(b) allows a court to relieve a party from a

13  final judgment, order, or proceeding for six reasons: (1)

14  mistake, inadvertence, surprise, or excusable neglect; (2) newly

15  discovered evidence; (3) fraud, misrepresentation, or other

16  misconduct by the opposing party; (4) the judgment is void; (5)

17  the judgment has been satisfied, released, or discharged; and (6)

18  any other reason justifying relief.  Fed. R. Civ. P. 60(b).  Mere

19  dissatisfaction with the court's order, or belief that the court

20  is wrong in its decision, are not grounds for relief under Rule

21  60(b).  Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d

22  1338, 1341 (9th Cir. 1981).

23      Plaintiffs request thirteen amendments to the court's

24  findings of fact and also ask the court to amend the judgment to

25  award plaintiffs nominal damages, injunctive relief, and

26  declaratory relief.  Plaintiffs do not specify the rules under

27  which they make these requests, but refer generally to Rules

28  52(b), 59, and 60.  Defendant also requests one amendment to the

findings of fact pursuant to Rule 52(b).

1. Findings of Fact

Plaintiffs request several amendments to the findings of fact that would simply add more background to the court's memorandum of decision without being central to the decision or affecting the judgment. Plaintiffs' proposed amendments include: (1) the dates the government tort claim and the instant suit were filed, (2) a description of the mitigation measures considered by the County, (3) the disclosure requirements for sellers of contaminated real estate, (4) a more complete description of the testimony by plaintiffs' appraiser, Jeffrey Lien, and a further explanation of why the court did not consider his testimony to be credible, (5) the fact that the County issued a request for proposals for a new gas extraction system, (6) the fact that the County then issued a second request for proposals, (7) the fact that the County asked at trial that the court treat extraction as a subsequent remedial measure, (8) an explanation of the conflict in current scientific knowledge regarding whether methane separates from VOCs, and (9) an explanation of the County's argument that Freon must be present when VOC migration occurs. The addition of the proposed amendments would not change the court's opinion, and the court declines to amend its decision simply to articulate the facts in a way that would be pleasing to plaintiffs.

Plaintiffs and defendant each move for one correction to language in the court's decision that they believe to be incorrect. Plaintiffs believe that the court's description of the location of the various landfill cells was inaccurate.

6

However, the court's description was based on the evidence

presented at trial, and the court does not find it to be

inaccurate.  Defendant requests that the court amend its findings

regarding the ownership and operation of the creeks.  The court

finds that its language was accurate based on the evidence

presented and declines to amend its findings on this point.[2]

Finally, plaintiffs request that the court find the

following facts: (1) the landfill contains many of the same

chemicals as those detected on the Crane property, (2) not all

VOCs found on the Crane property came from fuel, and (3) there

was no evidence of a fuel spill on the Crane property.  If

plaintiffs would read the court's decision carefully, they would

discover that the court in fact discussed these three issues.

(See Feb. 8, 2011, Mem. of Decision at 10:18-11:7 (while many of

the same chemicals were detected, there was no "fingerprint

match"), 11:22-27 (many of the chemicals are found in petroleum,

and "the amount found in the soil could have been caused by less

_____

[2]    The Memorandum of Decision states that "[t]he Merced
Irrigation District owns the creeks, and the County is
responsible for maintaining them."  (Feb. 8, 2011, Mem. of
Decision at 17:7-8 (Docket No. 192).)  This reflects the
**undisputed fact,** expressly agreed upon by the parties, that was
"deemed proven without further proceedings," as stated in the
court's Pretrial Order: "Defendant operates and maintains
waterways commonly known as Canal Creek and Edendale Creek, which
flow through or border property owned by Plaintiffs."  (Nov. 18,
2010, Pretrial Order ¶ 6 (Docket No. 162).)

Defendant admits in its reply brief that "the
Operations and Maintenance Manual from the Corps of Engineers
assigned to the County the task of maintaining the flow of Canal
Creek.  This duty was owed to the Corps and also mentioned
contracting with Merced Irrigation District ("MID") certain
portions of the flow maintenance."  (Def.'s Mem. of P. & A. in
Reply to Pls.' Opp'n to Mot. to Amend/Clarify the Findings at
2:7-10 (Docket No. 220).)  Nothing in the court's opinion
contradicts this explanation.

1  than a gallon of petroleum," consistent with vehicles on the

2  highway or the property, not necessarily a fuel spill).)

3        The court need not address every evidentiary issue or

4  fact in its memorandum of decision.  See Nicholson v. Bd. of

5  Educ. Torrance Unified Sch. Dist., 682 F.2d 858, 866 (9th Cir.

6  1982) ("The test in this circuit as to the adequacy of findings

7  of fact is whether they are explicit enough on the ultimate

8  issues to give the appellate court a clear understanding of the

9  basis of the decision and to enable it to determine the grounds

10 on which the trial court reached its decision."); Westside Prop.

11 Owners v. Schlesinger, 597 F.2d 1214, 1216 n.3 (9th Cir. 1979)

12 ("We do not believe that the district court has an obligation to

13 address explicitly every point raised by the parties.").

14        It is for the court, not the parties, to prepare its

15 decision, in the language chosen by the court, not the parties.

16 And it is not for the parties to rewrite the court's decision to

17 suit their preferences.  See Delia v. City of Rialto, 621 F.3d

18 1069, 1073 n.2 (9th Cir. 2010) (citing cases disapproving of the

19 practice of courts mechanically adopting the findings of fact and

20 conclusions of law as prepared by counsel); Indus. Bldg.

21 Materials, Inc. v. Interchem. Corp., 437 F.2d 1336, 1339 (9th

22 Cir. 1970) ("This practice has been condemned because of the

23 possibility that such findings and conclusions, prepared by the

24 non-objective advocate, may not fully and accurately reflect the

25 thoughts entertained by the impartial judge at the time of his

26 initial decision.").  The court is satisfied that the decision as

27 written is the appropriate expression of its reasoning.  The

28 court gave much thought to its opinion, and while the parties may

8

have written the decision differently, for better or worse, the court will deny the parties' motions to the extent that they seek amendments to the findings of fact.

### 2.   Nominal Damages and Injunctive Relief

Plaintiffs seek nominal damages and injunctive relief under theories of liability previously rejected by the court: inverse condemnation for trash and nuisance for trash and odor.[3] They also seek injunctive relief regarding future VOC migration, surface water, trash, odor, and creek debris without reference to any theory of liability at all.

A plaintiff seeking a permanent injunction must satisfy a four-factor test. "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The standard for a permanent injunction is essentially the same as for a preliminary injunction, with the exception that the plaintiff must show actual success, rather than a likelihood of success. See Amoco Prod. Co. v. Village of Gambell, 480 U.S.

---

[3]   To the extent that plaintiffs seek nominal damages and injunctive relief on their claims for negligence and trespass relating to trash and odor, they cannot recover.  The court previously granted summary judgment on those claims; they were not part of the trial and plaintiffs cannot attempt to relitigate them now.  (See Oct. 13, 2010, Summ. J. Order at 28:2-3 (Docket No. 153).)

531, 546 n.12 (1987).   Since plaintiffs did not succeed on any of their claims, they are not entitled to a permanent injunction. See Lopez v. Wash. Mut. Bank, F.A., No. 1:09-CV-1838 AWI JLT, 2010 WL 1558938, at *9 (E.D. Cal. Apr. 19, 2010) ("Because an injunction is merely a remedy and is not a cause of action, a cause of action must exist before injunctive relief may be granted.").   Nevertheless, the court will go through each of plaintiffs' requests in turn.

a.   Nuisance

Plaintiffs argue that they are entitled to a permanent injunction and nominal damages because two California Penal Code sections and one Merced County Code section create a claim for nuisance per se for trash and odor.   This argument was not raised in plaintiffs' trial brief or at trial.[4]   A party may not use Rule 52 to "relitigate old issues, to advance new legal theories, or to secure a rehearing on the merits."   Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986).   Similarly, a Rule 59(e) motion "may not be used to raise arguments or present

---

[4]   The Merced County Code section was mentioned in plaintiffs' Third Amended Complaint ("TAC").   (TAC ¶ 31 (Docket No. 46).)

The Penal Code sections were mentioned in plaintiffs' First Amended Complaint ("FAC").   (FAC ¶¶ 26-27 (Docket No. 10).) The court dismissed plaintiffs' trespass claim in the FAC because the Penal Code sections did not "mandate a duty on County to support a tort claim."   (Oct. 28, 2008, Order at 7:19-8:1 (Docket No. 28).)   Plaintiffs again included the Penal Code sections in their Second Amended Complaint ("SAC").   (SAC ¶¶ 26-27 (Docket No. 30).)   However, after defendant moved to strike the references to the Penal Code (Mot. to Strike at 3:7-16 (Docket No. 32)), plaintiffs moved to amend their complaint to correct that and other deficiencies (Mem. in Supp. of Mot. to Amend the Compl. at 2:13-15, 3:1-3 (Docket No. 35)) and filed the TAC without any reference to the Penal Code.

1   evidence for the first time when they could reasonably have been

2   raised earlier in the litigation." <u>Kona Enters., Inc. v. Estate</u>

3   <u>of Bishop</u>, 229 F.3d 887, 890 (9th Cir. 2000).  Plaintiffs cannot

4   now raise new arguments in an attempt to amend the judgment.

5          Even if the argument had been properly raised, it would

6   fail.  Plaintiffs base their nuisance per se argument on

7   California Penal Code section 374.3 (dumping waste matter on

8   private property without consent is unlawful), section 374.4

9   (littering is unlawful), and Merced County Code section 9.16.010

10  ("wilfully or negligently or carelessly" allowing material on

11  one's property to be blown onto the property of another is

12  unlawful).  The latter is inapplicable, as the court already

13  found that defendant did not act negligently and met all

14  standards of care for the state of California.[5]  (Mem. of

15  Decision at 13:7-18).

16         "[A] nuisance per se arises when a legislative body

17  with appropriate jurisdiction, in the exercise of the police

18  power, expressly declares a particular object or substance,

19  activity, or circumstance, to be a nuisance." <u>Beck Dev. Co. v.</u>

20  <u>S. Pac. Transp. Co.,</u> 44 Cal. App. 4th 1160, 1206 (3d Dist. 1996).

21  "[T]o rephrase the rule, to be considered a nuisance per se the

22  object, substance, activity or circumstance at issue must be

23  expressly declared to be a nuisance by its very existence by some

24  applicable law." <u>Id.</u> at 1207.  "[W]here the law expressly

25  declares something to be a nuisance, then no inquiry beyond its

26  ────────────

27        [5]    Plaintiffs conveniently omit the mens rea portion of
    Merced County Code section 9.16.010 in their brief.  (Pls.' Mem.
28  in Supp. of FRCP 52(b) Mot., FRCP 59 Mot., and FRCP 60 Mot. at
    17:2-5 (Docket No. 199).)

1   existence need be made . . . ." Id.   Even if the dumping and

2   littering laws applied to the landfill, an issue that has not

3   been properly briefed,[6] plaintiffs point to no declaration of any

4   legislative body, nor can the court find any, declaring such

5   violations to be a nuisance.  Accordingly, plaintiffs have not

6   shown a nuisance per se.  As this and plaintiffs' theories at

7   trial involving nuisance have failed, they cannot support

8   plaintiffs' request for a permanent injunction.

9        Plaintiffs have also failed to show why they are

10  entitled to nominal damages for nuisance.  Under California law,

11  "[n]ominal damages are properly awarded . . . [w]here there is no

12  loss or injury to be compensated but where the law still

13  recognizes a technical invasion of a plaintiff's rights or a

14  breach of a defendant's duty . . . ." Avina v. Spurlock, 28 Cal.

15  App. 3d 1086, 1088 (5th Dist. 1972); see Cal. Civ. Code § 3360

16  ("When a breach of duty has caused no appreciable detriment to

17  the party affected, he may yet recover nominal damages.").

18       A nuisance is "[a]nything which is injurious to health

19  . . . or is indecent or offensive to the senses, or an

20  obstruction to the free use of property, so as to interfere with

21  the comfortable enjoyment of life or property . . . ."  Cal. Civ.

22  Code § 3479.  The court found in its decision that there was "a

23  total lack of evidence that trash or odors 'interfere[d] with the

24  enjoyment or use of land or property.'"  (Mem. of Decision at

25  15:9-11 (quoting Stoiber v. Honeychuck, 101 Cal. App. 3d 903, 919

26  (5th Dist. 1980))).  Thus, no nuisance occurred that could

27  ────────────────

28      [6]   This is one good reason why new arguments should not be
    raised in post-trial motions.

                                12

1  entitle plaintiffs to nominal damages.

2              b.  Inverse Condemnation

3          The court explained in its memorandum of decision that

4  an inverse condemnation claim under California law requires as

5  one of its elements that plaintiffs' property suffer damage

6  (Order at 5:19 (quoting Yamagiwa v. City of Half Moon Bay, 523 F.

7  Supp. 2d 1036, 1088 (N.D. Cal. 2007)), and a claim under federal

8  law requires that the government "deprives the owner of all or

9  most of his interest in property" (id. at 6:3-7 (quoting Aris

10  Gloves, Inc. v. United States, 420 F.2d 1386, 1391 (Ct. Cl.

11  1970))).  This requirement that plaintiffs show they have been

12  damaged (in order to prove the claim) is different from proving

13  the amount of actual damages sustained (in order to recover that

14  amount).  Cf. Adams v. Paul, 11 Cal. 4th 583, 589 (1995) ("the

15  fact of damage" and "the amount" are different considerations for

16  statute of limitations purposes).

17          Plaintiffs did not demonstrate that the trash blown

18  onto their property rose to the level of a taking under state or

19  federal law.  It is undisputed that "[w]ind blows away from the

20  Crane property and towards the solid waste facility the majority

21  of the time, only changing directions with rare storms."

22  (Pretrial Order at 12:24-25 (Docket No. 162).)  It may be assumed

23  that most trash blown onto the property is soon blown off of the

24  property.  The issue of a small amount of trash temporarily on

25  plaintiffs' property simply does not fall within any conceivable

26  definition of a taking.  See Yee v. City of Escondido, 503 U.S.

27  519, 527 (1992) ("compelled physical invasion of

28  property"); Loretto v. Teleprompter Manhattan CATV Corp., 458

13

1  U.S. 419, 435 (1982) ("permanent physical occupation of another's
2  property"); <u>id.</u> at 435-36 (destruction of owner's property rights
3  to possess, use, and dispose of property); <u>PruneYard Shopping</u>
4  <u>Ctr. v. Robins</u>, 447 U.S. 74, 82-83 (1980) ("[T]he determination
5  whether a state law unlawfully infringes a landowner's property
6  in violation of the Taking Clause requires an examination of
7  whether the restriction on private property 'forc[es] some people
8  alone to bear public burdens which, in all fairness and justice,
9  should be borne by the public as a whole.' . . .   This
10 examination entails inquiry into such factors as the character of
11 the governmental action, its economic impact, and its
12 interference with reasonable investment-backed expectations."
13 (quoting <u>Armstrong v. United States</u>, 364 U.S. 40, 49 (1960)));
14 <u>Penn. Coal Co. v. Mahon</u>, 260 U.S. 393, 415 (1922) ("[I]f
15 regulation goes too far it will be recognized as a taking.").

16         Under federal law, the award of nominal damages in §
17 1983 cases is mandatory as "symbolic vindication" of a
18 plaintiff's constitutional rights, whether or not he has suffered
19 economic harm.  <u>Schneider v. Cnty. of San Diego</u>, 285 F.3d 784,
20 795 (9th Cir. 2002).  "[N]ominal damages must be awarded <u>if a</u>
21 <u>plaintiff proves a violation of his . . . constitutional rights</u>."
22 <u>Estate of Macias v. Ihde</u>, 219 F.3d 1018, 1028 (9th Cir. 2000)
23 (emphasis added).  Because plaintiffs did not prove a violation
24 of their constitutional rights, they are not entitled to nominal,
25 or any other, damages.

26         Similarly, if no taking exists, no injunction may
27 issue.  <u>See</u> <u>Art Movers, Inc. v. Ni W., Inc.</u>, 3 Cal. App. 4th 640,
28 646 (2d Dist. 1992) ("A permanent injunction is a determination

1  on the merits that a plaintiff has prevailed on a cause of action
2  for tort or other wrongful act against a defendant and that
3  equitable relief is appropriate."). An injunction cannot prevent
4  a non-injury.

5              c.  General Injunctive Relief

6          Without reference to any particular law entitling them
7  to such relief, plaintiffs request an injunction against future
8  VOC migration, surface water, trash, odor, and debris. The court
9  again refers plaintiffs to Lopez, 2010 WL 1558938. See id. at *9
10 ("Because an injunction is merely a remedy and is not a cause of
11 action, a cause of action must exist before injunctive relief may
12 be granted.").

13         Plaintiffs' request for an injunction against the
14 possibility of future VOC migration is misguided. The court
15 found that plaintiffs had not met their burden of showing that
16 VOC migration had occurred. (Mem. of Decision at 11:27-12:2.)
17 Similarly, no evidence was presented to demonstrate that VOC
18 migration was likely to occur in the future. "Injunction issues
19 to prevent existing or presently threatened injuries. One will
20 not be granted against something merely feared as liable to occur
21 at some indefinite time in the future." Connecticut v.
22 Massachusetts, 282 U.S. 660, 674 (1931); see City of Los Angeles
23 v. Lyons, 461 U.S. 95, 101-02 (1983) ("[T]he injury or threat of
24 injury must be both real and immediate, not conjectural or
25 hypothetical.") (internal quotation marks omitted). The court
26 will not issue an injunction against the mere possibility that
27 VOC migration will occur in the future.

28         Similarly, the court found that water drained through a

                              15

1  culvert under Highway 59 from the landfill toward the Crane
2  property, but it did not find that the water left the Caltrans
3  right of way, that the water flooded the Crane property, or that
4  it was likely to do so in the future.  (Mem. of Decision at
5  15:24-16:13.)  Plaintiffs did not demonstrate that surface water
6  injured them in any way or even came onto their land.

7         While the court did find that plaintiffs proved that
8  trash and odor blew from the landfill onto the Crane property and
9  that debris from the creeks was deposited on the property (Mem.
10  of Decision at 14:7-13, 16:23-26), the court found that no damage
11  occurred because of the trash, odor, or debris.  (Id. at 14:14-
12  15:22, 16:26-17:6.)  To be entitled to an injunction, plaintiffs
13  must prove an irreparable injury, which they failed to do.
14  See eBay, 547 U.S. at 391.

15         Accordingly, the court will deny plaintiffs' requests
16  for nominal damages and injunctive relief.

17                3.  Declaratory Relief

18         Plaintiffs have failed to show entitlement to
19  declaratory relief.  Declaratory relief is only appropriate when
20  the facts alleged "show that there is a substantial controversy .
21  . . of sufficient immediacy and reality to warrant the issuance
22  of declaratory judgment."  Boeing Co. v. Cascade Corp., 207 F.3d
23  1177, 1192 (9th Cir. 2000).  Plaintiffs have provided no
24  explanation as to what they wish the court to declare in light of
25  the court's previous decision in defendant's favor or why such
26  relief would be appropriate.  Accordingly, the court will deny
27  plaintiffs' motion to the extent that it seeks declaratory
28  relief.

B.   <u>Attorney's Fees</u>

Section 1988(b) of Title 42 of the United States Code authorizes the court, in its discretion, to award a "reasonable" attorney's fee to the prevailing party in a case brought under 42 U.S.C. § 1983. A "prevailing party" is one who succeeds on any significant issue in litigation, achieving some of the benefit sought in bringing the suit, and resulting in a "material alteration of the legal relationship of the parties." <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792-93 (1989).

While § 1988 makes no such distinction, courts have interpreted the statute to treat a prevailing defendant differently from a prevailing plaintiff; fees are not awarded routinely or simply because the defendant succeeded. <u>See</u> <u>Patton v. Cnty. of Kings</u>, 857 F.2d 1379, 1381 (9th Cir. 1988). To be awarded fees, a prevailing defendant must demonstrate that the "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 421 (1978). This standard is "stringent," <u>Hughes v. Rowe</u>, 449 U.S. 5, 14 (1980), and the Ninth Circuit repeatedly has recognized that attorney's fees in civil rights cases "should only be awarded to a defendant in exceptional circumstances." <u>Saman v. Robbins</u>, 173 F.3d 1150, 1157 (9th Cir. 1999) (quoting <u>Barry v. Fowler</u>, 902 F.2d 770, 773 (9th Cir. 1990)) (internal quotation mark omitted); <u>see also</u> <u>Herb Hallman Chevrolet, Inc. v. Nash-Holmes</u>, 169 F.3d 636, 645 (9th Cir. 1999); <u>Brooks v. Cook</u>, 938 F.2d 1048, 1055 (9th Cir. 1991). "An action becomes frivolous when the result

17

1  appears obvious or the arguments are wholly without merit."

2  Galen v. Cnty. of Los Angeles, 477 F.3d 652, 666 (9th Cir. 2007)

3  (citing Christiansburg, 434 U.S. at 422).  A court must "resist

4  the understandable temptation to engage in post hoc reasoning by

5  concluding that, because a plaintiff did not ultimately prevail,

6  his action must have been unreasonable or without foundation."

7  Christianburg, 434 U.S. at 421-22.

8      Courts should be cautious when considering an award to

9  a prevailing defendant where the lawsuit was initiated by a party

10  with limited financial resources or one who is appearing pro se.

11  See Miller v. L.A. Cnty. Bd. of Educ., 827 F.2d 617, 620 (9th

12  Cir. 1987).  However, courts have expressed more willingness to

13  award attorney's fees against "corporate-type plaintiffs who

14  present meritless civil rights claims," because "[s]aid group of

15  plaintiffs is certainly well equipped to finance a civil rights

16  suit."  Goldrich, Kest & Stern v. City of San Fernando, 617 F.

17  Supp. 557, 564 (C.D. Cal. 1985); see Wal-Mart Stores, Inc. v.

18  City of Turlock, 483 F. Supp. 2d 1023, 1028 (E.D. Cal. 2007).

19      1.  Entitlement to Fees

20      Plaintiffs' first cause of action, for inverse

21  condemnation, was brought under the Fifth Amendment to the United

22  States Constitution, § 1983, and the California Constitution.

23  (Third Am. Compl. ("TAC") ¶¶ 36-43.)  Their seventh cause of

24  action, for "Violation of Due Process Clause of the Fourteenth

25  Amendment of the United States, and Title 42 U.S.C. § 1983," was

26  brought under § 1983, and incorporated by reference all other

27  allegations in the TAC.  (Id. ¶¶ 83-91.)

28      As the court explained in its Memorandum of Decision:

18

Plaintiffs' allegations can be separated into four distinct allegations: (1) volatile organic compounds ("VOCs") have migrated through the soil from the landfill onto Lot 1; (2) trash and odors are blown onto the Crane property from the landfill by the wind; (3) runoff water from the landfill floods Lot 1; and (4) debris from the creeks accumulates on the Crane property.

(Mem. of Decision at 4:6-12.)

Plaintiffs' allegations that VOCs from the landfill migrated onto their property were completely groundless. Plaintiffs tested for VOCs at only one location on the Crane property: the bottom of the Caltrans right of way drainage area, on Lot 1.  Most of the contaminants found were petroleum-related. (Mem. of Decision at 11:23-27.)  Plaintiffs' expert himself concluded that the area of influence from which one could deduce similar results was only 50 to 100 feet.  (Summ. J. Order at 11:2-28.)  Plaintiffs then tested twice more without giving notice to defendant of the testing, in direct contravention of the court's orders.  (Tr. of Proceedings on Def.'s Mot. for Sanctions at 7:17-8:12 (Docket No. 82).)  On one occasion, plaintiffs' expert even asked if defendant should be notified of the testing, and was explicitly told by plaintiffs' counsel not to inform defendant.  (Id. at 8:21-9:2.)  At summary judgment, plaintiffs withdrew their allegations concerning groundwater contamination after it was pointed out that even their expert testified that no VOCs were found in the groundwater.  (Summ. J. Order at 7:25-8:6.)

Plaintiffs knew or should have known that their allegations regarding VOCs in the soil were similarly flawed.  At trial, plaintiffs' experts' opinions and their testing techniques

1  were conclusively disproved.  (See Mem. of Decision at 8:20-

2  12:2.)  Plaintiffs cannot have been taken by surprise by their

3  own lack of evidence and the insurmountable deficiencies in their

4  experts' opinions, particularly given that they were provided

5  with initial and rebuttal expert reports by defendant's experts

6  explaining those deficiencies in May and June of 2010.  At trial,

7  defendant's expert E. Wayne Pearce, who plaintiffs never

8  attempted to depose despite his disclosure as an expert,

9  testified that the tests performed by plaintiffs were

10  "indefensible."  (Id. at 9:11-15.)  His testimony was completely

11  unimpeached by plaintiffs.  While a court should not find a claim

12  to be frivolous just because the evidence presented in support of

13  that claim was discounted because of a credibility problem or a

14  weighing of the evidence, plaintiffs' VOC evidence was not just

15  incredible; the "evidence" had no basis in fact.

16          This conclusion is bolstered by several other defects

17  in plaintiffs' case.  Plaintiffs' expert Timothy Souther, while

18  not an expert on anything health-related, testified that he

19  looked at a chart that was not intended to be used to assess

20  human health risk and made certain assumptions about the health

21  risk involved.  Similarly, plaintiffs' appraiser Jeffrey Lien's

22  testimony that the property value must have depreciated to zero

23  was based on these assumptions regarding damage and health risk,

24  without any basis in fact.[7]  Plaintiffs did not attempt to

25

26          [7]    Plaintiffs request in their motion to amend the
    judgment that the court explain why it discounted Mr. Lien's
27  testimony.  While it would be inappropriate to amend the decision
    for that purpose, such a discussion is relevant in determining
28  that plaintiffs' VOC allegations were frivolous.  Mr. Lien was
    not fully certified as an appraiser and made his findings without

contest testimony by defendant's witnesses Ambrose McCready, who

testified that the landfill met all standards of care, or Paul

Damian, who testified that even assuming conditions far worse

than those present on the Crane property, such as an enclosed

building in which people lived, and even taking the faulty data

presented by plaintiffs as true, no health risk could exist.

(See Mem. of Decision at 13:7-13, 14 n.7.)

        Simply put, plaintiffs had no evidence that VOCs

actually migrated from the landfill to the Crane property or even

that VOCs existed on the Crane property.  Forcing defendant to

defend against sham evidence and to incur expenses presenting

evidence that plaintiffs did not even attempt to rebut is the

very definition of frivolity.  Plaintiffs' citation to R.P. ex

rel. C.P. v. Prescott Unified School District, 631 F.3d 1117 (9th

Cir. 2011), is unavailing.  That case noted that "so long as the

plaintiffs present evidence that, if believed by the fact-finder,

would entitle them to relief, the case is per se not frivolous."

Id. at 1126.  Surely the Ninth Circuit did not mean that a

plaintiff could present completely false or nonsensical

"evidence" and avoid paying attorney's fees because, if believed,

that evidence would entitle the plaintiff to relief.

        Furthermore, the evidence must be such that it would

"entitle [plaintiffs] to relief," not simply support one element

of a claim.  Id.  As the court explained in its decision and in

consulting any lenders or following the Appraisal Institute
ethical standards.  Furthermore, it does not take an expert to
speculate that, starting from the assumption that a piece of
property has no value, no one will want to buy the property.  The
issue was not Mr. Lien's credibility so much as it was his
failure to provide helpful testimony.

1  discussing plaintiffs' motion to amend the judgment, plaintiffs
2  did not demonstrate entitlement to relief on their constitutional
3  claim, and the court cannot conceive how plaintiffs could have
4  believed they would be entitled to relief.  Because no facts
5  supported a finding that VOCs migrated to the Crane property or
6  that any constitutional violation occurred, there was no
7  realistic chance of success on any constitutional claims arising
8  from the VOC issue.

9          In contrast, the court found that plaintiffs proved
10 that trash, odors, and creek debris were found on their property.
11 However, as explained in detail regarding plaintiffs' motion to
12 amend the judgment, plaintiffs did not even attempt to present
13 evidence that the trash, odors, or creek debris affected them in
14 any way.  Particularly given that plaintiffs were represented and
15 advised by highly qualified and competent counsel, the court
16 cannot see how they could have thought they could prove a
17 constitutional violation without any legal foundation.

18         Finally, as the court explained in its decision,
19 plaintiffs presented a new theory of liability at trial by
20 presenting the testimony of Bert Crane, Jr., that water from the
21 landfill flooded the Crane property.  No evidence was presented
22 to support the claim, and the only pictures presented to the
23 court showed the land in a non-flooded state.  (Mem. of Decision
24 at 15:24-16:13.)  While the claim was admittedly minor and few
25 fees would have resulted from its inclusion, there was no
26 rational basis to believe it had any chance of success.

27         Because plaintiffs knew or should have known that their
28 § 1983 claims lacked merit at the outset of litigation, defendant

1  is entitled to recover attorney's fees under § 1988.

2         2.  <u>Award Calculation</u>

3         To determine a reasonable attorney's fee in this case,

4  the court must first calculate the "lodestar" amount by taking

5  the number of hours reasonably expended on the litigation and

6  multiplying it by a reasonable hourly rate.  <u>Fischer v. SJB-P.D.</u>

7  <u>Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing <u>Hensley v.</u>

8  <u>Eckerhart</u>, 461 U.S. 424, 433 (1983)).  There is a strong

9  presumption that the lodestar amount is reasonable.  <u>Fischer</u>, 214

10 F.3d at 1119 n.4.  The district court may exclude from the

11 initial fee calculation hours that were "excessive, redundant, or

12 otherwise unnecessary."  <u>Hensley</u>, 461 U.S. at 434.  The court may

13 then adjust the lodestar amount based on an evaluation of the

14 factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526

15 F.2d 67 (9th Cir. 1975), that are not subsumed under the lodestar

16 calculation.[8]  The fee applicant bears the burden of documenting

17 the appropriate hours expended in the litigation and must submit

18 evidence in support of those hours worked.  <u>Hensley</u>, 461 U.S. at

19 437.

20         Defendant proposes a lodestar figure of $345,875.00 to

21

22        [8]  The factors articulated by the Ninth Circuit in <u>Kerr</u>
   are: (1) the time and labor required, (2) the novelty and
23 difficulty of the questions involved, (3) the skill required to
   perform the legal service properly, (4) the preclusion of other
24 employment by the attorney due to acceptance of the case, (5) the
   customary fee, (6) whether the fee is fixed or contingent, (7)
25 time limitations imposed by the client or the circumstances, (8)
   the amount involved and the results obtained, (9) the experience,
26 reputation, and ability of the attorneys, (10) the
   "undesirability" of the case, (11) the nature and length of the
27 professional relationship with the client, and (12) awards in
   similar cases.  <u>Kerr</u>, 526 F.2d at 70.  The factor regarding the
28 contingent nature of the fee agreement has been rejected by the
   Supreme Court.  <u>City of Burlington v. Dague</u>, 505 U.S. 557 (1992).

1  $432,343.80.  This amount accounts for the hours expended by

2  Roger Matzkind, James Stone, and Marianne Greene, all attorneys

3  with the Merced County Counsel's office.

4                    a.  Reasonable Hourly Rate

5          A reasonable rate is typically based upon the

6  prevailing market rate in the community for "similar work

7  performed by attorneys of comparable skill, experience, and

8  reputation."  Chalmers v. City of Los Angeles, 796 F.2d 1205,

9  1211 (9th Cir. 1986); see also Blum v. Stenson, 465 U.S. 886, 895

10 n.11 (1984) ("[T]he burden is on the fee applicant to produce

11 satisfactory evidence . . . that the requested rates are in line

12 with those prevailing in the community . . . .").  The relevant

13 community is generally the forum in which the court sits.  Barjon

14 v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

15         Here, defendant seeks hourly rates of $300.00 to

16 $375.00 for Mr. Matzkind and $200.00 to $250.00 for Mr. Stone and

17 Ms. Greene.  (Matzkind Decl. ¶¶ 11-12 (Docket No. 205-1).)  Mr.

18 Matzkind represents in his declaration that these rates are

19 reasonable hourly fees for chief attorneys and junior attorneys,

20 respectively, in the Central Valley.  Plaintiffs neither objected

21 to the hourly rates defendant requested nor disputed the

22 representations Mr. Matzkind made in his declaration.

23         Recent cases in the Fresno Division of the Eastern

24 District of California have determined that hourly rates of

25 $300.00, $315.00, and $350.00 were reasonable for "experienced

26 and competent counsel."  Jadwin v. Cnty. of Kern, --- F. Supp. 2d

27 ----, ----, 2011 WL 240695, at *47 (E.D. Cal. 2011).  Given Mr.

28 Matzkind's experience as an attorney practicing for more than

                              24

thirty years (Matzkind Decl. ¶ 10), the court will take the
average of these rates and use a rate of $325.00 for Mr.
Matzkind.   Mr. Stone and Ms. Greene have thirteen and twenty
years of experience respectively.  (Stone Decl. ¶ 2 (Docket No.
205-3); Greene Decl. ¶ 4 (Docket No. 205-6).)  <u>Jadwin</u> found that
a reasonable hourly rate for an attorney performing primarily
research attorney services with twenty years of experience was
$295.00.  <u>Jadwin</u>, 2011 WL 240695, at *50.  Accordingly, the court
will use a rate of $250.00, the upper end of the range requested
by defendant, for Mr. Stone and Ms. Greene.

b.   <u>Reasonable Number of Hours</u>

Defendant has submitted detailed billing for the work
associated with this action, which totals 925.25 hours for Mr.
Matzkind, 200 hours for Mr. Stone, and 143 hours for Ms. Greene.
(Mem. of P. & A. in Supp. of Def.'s Mot. for Att'y Fees Exs. A,
C, F (Docket No. 205).)  The work in this case for which
defendant requests fees was related primarily to a motion to
dismiss the Third Amended Complaint, discovery issues, a summary
judgment motion, and trial.  After carefully reviewing the
documents, and noting no objection from plaintiffs, the court
finds no need to exclude any of the reported hours as "excessive,
redundant, or otherwise unnecessary."  <u>Van Gerwen v. Guarantee</u>
<u>Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000).  Given the
complexity of the case, the court finds that the hours spent were
reasonable.

Plaintiffs argue that defendant can only recover for
time spent related to the § 1983 claims and not for any state law
claims.  The Ninth Circuit recently held that:

25

the only fees that may be awarded are those incurred for
work performed exclusively in order to provide a defense
against claims for which fees are permissible.  If
defendants do not demonstrate that the work would not
have been performed in order to defend against the
nonfrivolous civil rights, or to put it differently, but
for the need to defend against the frivolous claims, fees
associated with that work cannot be awarded, even in
part.

Harris v. Maricopa Cnty. Super. Ct., 631 F.3d 963, 973 (9th Cir.
2011).  In that case, involving several different federal civil
rights claims, the district court had found that most of the
civil rights claims were nonfrivolous and only a few were
frivolous.  The court then divided the fees on a pro rata basis,
awarding a percentage of fees equivalent to the percentage of
civil rights claims that were frivolous.  The Ninth Circuit
reversed, holding that it was inappropriate to award fees to a
prevailing defendant where the fees would have been incurred to
defend against the nonfrivolous federal civil rights claims
whether or not frivolous civil rights claims were present.  Id.

     This is not such a case.  Because there were no
nonfrivolous claims here, Harris is inapplicable.  The proper
question in this case, instead, is whether fees are available for
"pendant state law claims (in addition to [] federal civil rights
claims) under [§ 1988] because these state law claims arose from
a common nucleus of operative fact with a substantial federal
claim."  Id. at 976 n.6.  Harris explicitly stated that the issue
was "an open question in our Circuit."  Id.  In Harris, the
district court had answered the question positively, awarding
fees even for the interrelated state law claims, but because the
plaintiff did not challenge the district court's decision on that

26

1  point, the Ninth Circuit did not reach the issue.   Id.

2          Thus, this court must decide for itself whether to

3  award fees for both the frivolous federal civil rights claims and

4  the interrelated frivolous state law claims, when separating out

5  the fees attributable to each would be futile.   The Ninth Circuit

6  has held that "when the <u>plaintiff</u> in a civil rights action

7  prevails on a pendent state claim based on a common nucleus of

8  operative fact with a substantial federal claim, fees may be

9  awarded under § 1988." <u>Carreras v. City of Anaheim</u>, 768 F.2d

10  1039, 1050 (9th Cir. 1985) (emphasis added).   The Seventh Circuit

11  has applied this reasoning to a prevailing <u>defendant</u> in the

12  context of a § 1988 fee award.   <u>Munson v. Milwaukee Bd. of Sch.</u>

13  <u>Dirs.</u>, 969 F.2d 266 (7th Cir. 1992).   In <u>Munson</u>, the plaintiff

14  brought a § 1983 claim and three pendent state law claims, which

15  arose from the same course of conduct.   <u>Id.</u> at 268.   The Seventh

16  Circuit held that when the federal and pendent state law claims

17  are factually and legally related, and when both the federal and

18  state claims are found to be frivolous, they should be treated as

19  one for purposes of fee awards under § 1988.   <u>Id.</u> at 272.   The

20  <u>Munson</u> court reasoned that:

21          If a plaintiff can be awarded fees for work done on an
           <u>unsuccessful</u> pendent state claim which is factually or
22          legally related to a successful civil rights claim, then
           defendants likewise should be entitled to fee awards for
23          defending frivolous pendent claims factually or legally
           related to frivolous civil rights claims.   Separating out
24          the legal services rendered for the federal and pendent
           claims would be futile in both circumstances.

25

26  <u>Id.</u>

27          While <u>Munson</u> is not binding on this court, the

28  reasoning is persuasive.   <u>See</u> <u>McAnally v. Clark Cnty.</u>, No.

0204CV01220, 2006 WL 240896, at *1 (D. Nev. Jan. 27, 2006)

(citing <u>Munson</u> and awarding attorney's fees for § 1983 and state

law claims when those claims were dismissed for the same reason

and all lacked legal foundation).   Here, all of plaintiffs' state

law claims arose from the same set of facts as their § 1983

claims.   Indeed, the court found the issues to be so intertwined

that it was more effective to write the Memorandum of Decision in

terms of the four distinct factual issues than in terms of each

cause of action.   Thus, attorney's fees may properly be awarded

for the entire case because plaintiffs' frivolous § 1983 claims

are inseparable from their frivolous state law claims.

        The court finds that no adjustment to the lodestar

figure is necessary.

        Accordingly, the court will award defendant fees for

the following hours:[9]

---

[9]     Defendant also moves for an award of attorney's fees
under Federal Rule of Civil Procedure 11.   Rule 11 gives the
court authority to issue sanctions against an attorney or
unrepresented party who signs a "pleading, written motion, or
other paper" that is brought for any improper purpose or is not
well grounded in fact, warranted by existing law, or made in good
faith, and provides that sanctions for violations of the Rule may
include "part or all of the reasonable attorney's fees and other
expenses directly resulting from the violation."   Fed. R. Civ. P.
11(c)(4).   In addition to asking for attorney's fees under Rule
11, defendant seeks costs for expert witnesses and other
miscellaneous costs totaling $247,587.48.   (Supplemental Mem. of
P. & A. in Supp. of Def.'s Mot. for Rule 11 Sanctions Ex. A-2 at
4 (Docket No. 208).)

        The court has determined an award of attorney's fees
under § 1988 is appropriate and thus the court need not address
attorney's fees under Rule 11.   As for costs, defendant would
have to show that the costs directly resulted from one of the
eleven specific allegations in the Third Amended Complaint that
it argues violated Rule 11, a question that would require
extensive further briefing.   The court will not allow the Rule 11
to prolong this litigation any further.   <u>See</u> <u>Jensen Elec. Co. v.</u>
<u>Moore, Caldwell, Rowland & Dodd, Inc.</u>, 873 F.2d 1327, 1330 (9th

| Name | Hours | Hourly Rate | Lodestar Amt. |
|------|-------|-------------|---------------|
| Matzkind | 924.25 | $325.00 | $300,381.25 |
| Stone | 200 | $250.00 | $50,000.00 |
| Greene | 143 | $250.00 | $35,750.00 |
| TOTAL | 1267.25 | | $386,131.25 |

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion that the trial court amend its findings or make additional findings, for new trial or to alter or amend the judgment, and for relief from judgment due to mistake or inadvertence be, and the same hereby is, DENIED;

(2) Defendant's motion to amend or clarify the findings be, and the same hereby is, DENIED;

(3) Defendant's motion for attorney's fees be, and the same hereby is, GRANTED, and fees of $386,131.25 are awarded to defendant; and

(4) Defendant's motion for Rule 11 sanctions be, and the same hereby is, DENIED.

(5) Defendant shall file a supplemental declaration detailing its fees incurred after the filing of the instant motions within ten days of the date of this Order.

DATED:  April 27, 2011

_William B. Shubb_ _____

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

Cir. 1989) ("Rule 11 can lead to costly and aimless satellite litigation having nothing to do with the dispute between the parties.  Here indeed the sanctions tail is wagging the dog.") (Schroeder, J., concurring).  Accordingly, the court will exercise its discretion and deny the Rule 11 motion.